22

1

2

3

4

5

6

7

8

**FILED**

JUL 18 2022

*Tracey M. Slagle*
*YAKIMA COUNTY CLERK*

9    **SUPERIOR COURT OF WASHINGTON FOR YAKIMA COUNTY**

10   MICHAEL SCOTT BRUMBACK, an
     individual; and GIMME GUNS, a sole         **No.    22-2-01446-39**
11   proprietorship,

12                    Plaintiffs,

13          vs.

14
     ROBERT W. FERGUSON, in his official         **PLAINTIFFS' MEMORANDUM IN**
15   capacity as Washington State Attorney       **SUPPORT OF MOTION FOR**
     General; JOHN R. BATISTE, in his official   **INJUNCTIVE AND DECLATORY**
16   capacity as Chief of the Washington State   **RELIEF**
     Patrol; ROBERT UDELL, in his official
17   capacity as Sheriff for Yakima County,
     Washington; and JOSEPH A. BRUSIC, in his
18   official capacity as County Prosecutor for
     Yakima County.
19

20                    Defendants.

21

22                    **I.   INTRODUCTION**

23          "[T]he Court recognized in *Heller* at least one way in which the Second

24   Amendment's historically fixed meaning applies to new circumstances: Its reference to 'arms'

25   does not apply 'only [to] those arms in existence in the 18th century.'"[1]

26

27   _____

     1 *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 2022 U.S. LEXIS 3055, *4, 142 S. Ct. 2111, 29 Fla. L. Weekly Fed. S
28   440, 2022 WL 2251305, construing *District of Columbia v. Heller*, 554 U.S. 570 at 582, 128 S. Ct. 2783, 171 L. Ed.
     2d 637.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF -  1

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

The fundamental question for this Court in this action is whether Engrossed State Senate Bill ("ESSB") 5078 and its effective amendments to Revised Code of Washington ("RCW") section 9.41,[2] to any degree, impairs and/or infringes upon the right of Washington citizens to keep and/or bear arms. If it does, the law is unconstitutional and therefore is unenforceable.  It must be enjoined and declared unfit for enforcement in Washington state because it violates our citizens rights.

ESSB 5078 modifies an ages-old (since 1787 in the US and 1889 in WA) constitutionally-protected right of citizens to bear arms[3] that includes the ability to buy, possess, manufacture, repair, import and/or distribute ammunition magazines.  ESSB 5078's ban of ammunition magazines in Washington is unprecedented and violates two constitutions.

Citizens have the right to ammunition magazines as part of their right to bear arms as these activities are "intimately connected." *Jones v. Bonta*, No. 20-56174, at *19-20 (9th Cir. May 11, 2022) citing *Jackson v. City of San Francisco*, 746 F.3d 966, 967 (9th Cir. 2014). Citizens are not unruly and untrustworthy children to be put in their place by an overbearing government; rather, citizens **are** the rightful employer of their public servants and must be treated with respect. Additionally, these magazines have been legal (i.e., not illegal) since our nation and state's founding and have been in common use for a century or more.

The first commonly used detachable magazine for a rifle was used on the British Lee-Metford .303 caliber rifle in 1888.[4]   The US Henry Model 1860 was the first American rifle manufactured with a magazine.[5]   Pistols even had 20 round magazines back in 1893.[6]   John Browning patented

---

2 While the impact of ESSB 5078 is amendments to RCW 9.41, this action will use the term ESSB 5078 to comprehensively address both, the Bill and the changes to the RCW.
3 The Washington Constitution was ratified October 1, 1889.
4 https://www.militaryrifles.com/british/leemetford
5 https://www.worthpoint.com/dictionary/p/firearms-and-accessories/parts/ammunition-magazine
6 https://www.americanrifleman.org/content/in-the-beginning-semi-automatic-pistols-of-the-19th-century/

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - 2

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

a .45 caliber rifle with detachable magazine in 1891.[7]   Browning also created the famous Colt

1911 that has been in use continuously by civilians, law enforcement and military personnel since

1911, and it too has a detachable magazine.[8]   Plaintiff Brumback was first issued an M1911 in the

US Army and has this model in his private collection.   The M14 rifle, outfitted with a 20 round

detachable magazine and chambered in 7.62x51mm[9], was first produced in 1958 and is a common

rifle owned by US citizens.[10]   Even the AR/AK rifles that anti-gun activists on the left love to hate

and that are capable of accommodating 5, 10, 20 and 30 round magazines have been around for

nearly 70 years.[11]

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. **To justify its regulation, the government may not simply posit that the regulation promotes an important interest**. Rather, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command."[12]

The government, here, simply cannot justify its regulation (i.e., ESSB 5078's magazine ban)

neither under the facts, nor under the United States Supreme Court's analysis set forth, above.

The purchase, sale, and utilization of these "prohibited" magazines are protected by the US

Constitution's 2nd Amendment and Washington's Article I, Sec. 24 as these magazines are

intimately connected with the use of legal firearms.   The government's only justification for

denying law-abiding citizens ability to purchase, possess, sell, repair, etc., these magazines boils

down to spurious claims of anti-gun activists that public safety is somehow enhanced; however,

---

7 https://armourersbench.com/2019/08/11/browning-prototypes-detachable-box-magazine-lever-action-rifle/
8 https://en.wikipedia.org/wiki/M1911_pistol#Current_users_in_the_U.S.
9 Larger and more powerful than the AR-15's 5.56mm/.223 caliber.
10 https://www.historynet.com/a-brief-history-of-the-m14-rifle/
11 https://www.thetruthaboutguns.com/what-does-ar-stand-for-in-ar-15/
12 *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 2022 U.S. LEXIS 3055, *1, 142 S. Ct. 2111, 29 Fla. L. Weekly Fed. S 440, 2022 WL 2251305.  Emphasis added.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - 3

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

the ban actually makes people less safe. McKnight Aff., ¶¶ 32-40.[13] This "justification" by these activists, both in and out of government, while clothed in nobility, is a biased, emotion based illusion devoid of fact.  Furthermore, this "public safety" argument is inconsistent with our nation and state's "historical tradition of firearm regulation" because ammunition magazines have been in wide circulation for decades.  The only reason that ESSB 5078 is "law" is because some activists who occupy positions of power in government want to ban these magazines for largely personal reasons.  The law, for sure, is not a consideration, but is rather, for them, an impediment.

Recently, the United States Supreme Court reaffirmed that the constitutionally-protected right to keep and/or bear arms is not limited to a backwards looking view that only a musket bearing militia enjoys the right to bear arms.[14]  The right to keep and bear arms is undeniably an individual right, a position validated by Article I, Section 24 of the Washington Constitution:

**"[t]he right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired."**

The Washington Constitution became law in 1889, about 100 years after the US Constitution was established.  The Washington Constitution's right to bear arms provision in Article I, Section 24 uses modern language to define what is essentially the same right protected by the US Constitution in the 2nd Amendment as adopted in 1791.  That the individual citizen has the right to bear arms, and that the Washington and US Constitutions protect this right to defend himself, his family and his state, there just is simply no doubt.

It should be noted that the right is to bear "arms" (plural), which means a few things of import.  First, it doesn't say "arms of the government's choice."  The presumption in the law is that the

---

13 See also Larosiere, Matthew. Cato Institute. *Losing Count: The Empty Case for "High-Capacity" Magazine Restrictions.* Available at: https://www.cato.org/legal-policy-bulletin/losing-count-empty-case-high-capacity-magazine-restrictions. Last accessed: July 15, 2022.
14 *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 2022 U.S. LEXIS 3055, *1, 29 Fla. L. Weekly Fed. S 440, __ S.Ct. __, 2022 WL 2251305.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - 4

1  citizen, not the government, decides which arms are to be possessed. See, e.g., *Heller*, at 627-28.[15]

2  Second, the term "arms" is plural, which necessarily means the citizen has a right to possess

3  multiple firearms of his choosing and, ostensibly, of various types, calibers and capabilities.

4  Third, the individual right is not only for personal defense, but also a right to bear arms in defense

5
6  of the "state."  This part of our Constitution is almost universally ignored, although the import is

7  clear; this is a right that also protects a citizen's right to bear arms used in the defense of a state.

8  It is in this context that certain firearms and their accessories (such as ammunition magazines

9  holding over 10 rounds) have direct application to our constitutionally-right to bear arms.

10      The right to (keep and) bear arms is not to be mistaken as a mere privilege; it is not despite the

11  efforts of anti-gun activists who wish to circumvent the WA and US Constitutions' right to bear

12
13  arms.   Our right to (keep and) bear arms cannot, may not, shall not, be diminished or extinguished

14  by the whims and caprices of activists cloaked with official titles and grants of power and authority.

15      The first article and section of our Washington Constitution mandates that government exists,

16  not to control and regulate, but to protect our liberties and rights.   Thus, government is not

17  empowered to take our rights or our liberties or to impair or infringe upon either.

18      **"All political power is inherent in the people, and governments derive their just**
19  **powers from the consent of the governed and are established to protect and maintain**
20  **individual rights."[16]**

21      The right to bear arms pre-dates our republic and is seen more accurately as an ancient right

22  incident to fundamental concepts of freedom and liberty.   This position is borne out by history.

23

24
─────────────────────
25  15 "But as we have said, the conception of the militia at the time of the Second Amendment's ratification was the
    body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at
26  home to militia duty. It may well be true today that a militia, to be as effective as militias in the 18th century, would
    require sophisticated arms that are highly unusual in society at large. Indeed, it may be true that no amount of small
27  arms could be useful against modern-day bombers and tanks. But the fact that modern developments have limited
    the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right."
    *Heller*, at 627-28.
28  16 Washington Constitution, Art. I Sec. 1.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - 5

History is important not only to understand our rights and where they come, but also as a lesson so we don't repeat the mistakes of history.

A. History of oppression supports the individual's absolute right to lawfully bear arms.

History is full of oppression and tyranny, and over time We, the People, learned that a hedge or deterrent to tyrants, oppressors and killers is for the citizen to be armed. Perhaps the anti-gun (i.e., anti-Constitution) activists haven't learned history. Tyranny is why courts must step in: to protect We, the People.

> "We looked to history because '**it has always been widely understood that the Second Amendment . . . codified a *pre-existing* right**.' *Ibid.* The Amendment 'was not intended to lay down a novel principle but rather codified a right inherited from our English ancestors.' *Id.*, at 599, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (alterations and internal quotation marks omitted)."[17]

The US Supreme Court was clear that this time-tested right applied in modern times, just as the 1st Amendment would, of course, apply to the internet:

> "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. Thus, even though the Second Amendment's definition of arms is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense."[18]

Plaintiffs file this action to challenge ESSB 5078[19] because it clearly impairs and/or infringes upon the constitutionally protected rights of Washingtonians to bear arms (with ammunition in sufficient quantify) to defend themselves, their families, their communities, and the state of Washington.

ESSB 5078, upon the heels of I-1639, I-594 and a myriad of anti-gun legislation jammed

---

17 *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 2022 U.S. LEXIS 3055, *23-24, 29 Fla. L. Weekly Fed. S 440, __ S.Ct. __, 2022 WL 2251305. (Emphasis added.)
18 *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 2022 U.S. LEXIS 3055, *1, 29 Fla. L. Weekly Fed. S 440, __ S.Ct. __, 2022 WL 2251305
19 ESSB was signed into law by Governor Inslee, March 23, 2022, with an effective date of July 1, 2022.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - 6

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

before the legislature by Attorney General Ferguson as part of a well-coordinated effort by anti-gun activists to highly regulate the firearms industry and, more importantly, impair the citizens' right to bear arms.   This agenda includes ESSB 5078 to severely restrict the commerce, sale, distribution, manufacture and/or importation of certain ammunition magazines contrary to constitutional law.

The activists' agenda to deny law-abiding citizens (who pose no danger or threat to public safety) is revealed by their various radical views and actions, to include labeling magazines as "high capacity magazines" knowing that an unsuspecting public would have an emotional response that then results in a political advantage to the anti-gun activists.

**Change comes from power, and power comes from organization. In order to act, people must get together.**[20]

In Washington, power is consolidated, in all branches of government, in a far-left ideology. Governor Inslee, Attorney General Ferguson, the Democrat-controlled legislature and their allies are committed, not to the constitutions, but rather to an ideological agenda that includes an incremental disarmament of our citizenry.

To this activist cabal, an ammunition magazine holding 11 rounds of ammunition is "high capacity," but a 10 round magazine is not.   To this crowd, an 18 year old can be trusted to enter the military and use heavy weapons, including nuclear, but is not to be trusted with a .22 caliber rifle that has been in circulation for 100 years because these activists succeeded in designating this as a "semiautomatic assault rifle."[21]   They know the psychological effect is to scare people into compliance.   And like Saul Alinsky said, if they have the power (as do Washington's governor, AG, and legislature), change happens. Problematically, the change proposed by

---

20 Saul Alinsky, page 113 - <u>Rules for Radicals: A Practical Primer for Realistic Radicals</u> (1971)
21 Ruger .22 caliber rifle. https://www.ruger.com/products/1022/overview.html

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF -  7

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Attorney General Ferguson and adopted by the Washington Legislature and the Governor, violates the Washington and United States Constitutions (which each has sworn to uphold). This violation of the Constitutions is this reason that Plaintiffs, law abiding citizens, call upon the court to uphold the Constitutions and affirm that we are a state (and nation) of laws, not one ruled by political activists.

The United States Constitution protects the right as follows:

> **A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed.**[22]

The Washington Constitution protects the right as follows:

> **The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men.**[23]

The United States Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n*, and its reference to "[a]ll instruments that constitute bearable arms," includes detachable ammunition magazines over 10 rounds.   ESSB 5078 regulates these magazines without looking at history or legal precedent; this activist whim in written form unquestionably fails the approach to analyzing Second Amendment issues set forth in *N.Y. State Rifle & Pistol Ass'n*.

The answer for the Defendants is quite simple, if you don't like our constitutionally-protected right to bear arms, do what our founders insisted we do and amend the constitutions.   The instruction are "in the box."[24]

Plaintiffs respectfully move this Court, in the exercise of its discretion and pursuant to its equitable powers to do justice in accordance with the law, for the entry of an Order enjoining

---

22 United States Constitution, Second Amendment.
23 Washington Constitution Article I, Section 24.
24 Washington Constitution, Article XXIII, Amendments.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

1   Defendants from enforcing ESSB 5078 (and its amendments to RCW Chapter 9.41) and

2   declaring the same to be unconstitutional impairments and/or infringements upon Plaintiffs' right

3   to keep and/or bear arms as protected by the US and Washington Constitution.   This motion is

4   based upon the authority of CR 65(b), LCR 7, RCW 7.40.020, and the equitable powers of this

5   Court. Plaintiff further moves this Court for an Order to Show Cause why the Defendants should

6   not appear and show cause, if any, why the requested restraints should not continue for the

7   pendency of the action through the entry of the Preliminary Injunction.

8

9                       **II.    STATEMENT OF FACTS**

10   A.  History of SB/ESSB 5078 (2021 and 2022 Washington Legislative Sessions).

11        Senate Bill ("SB") 5078 was pre-filed for introduction in the 2021 legislative session on

12   January 6, 2021 by Senators: Liias, Kuderer, Darneille, Hunt, Nguyen, Pedersen, C. Wilson, and

13   Lovelett; **by request of Attorney General**.[25] (Emphasis added to demonstrate Attorney General

14   Ferguson's involvement in the Bill.) *Id.* On January 21, 2021, the Senate Law & Justice

15   Committee held a hearing, where Yasmin Trudeau of the Attorney General's Office testified

16   PRO (i.e., in favor of the Bill).[26] The Bill was not adopted in the 2021 Session.

17

18        SB 5078 was reintroduced in the 2022 Session on January 10, 2022. On February 9,

19   2022, the Bill was adopted with floor amendments and passed with a third reading in the Senate

20   and was referred to the House for a first reading in the Civil Rights & Judiciary Committee on

21   February 12, 2022. *Id.* On February 16, 2022, ESSB 5078 went to a committee hearing, where

22   Kristin Beneski, the First Assistant Attorney General, testified PRO (in favor of) on ESSB 5078,

23

24

25   _____

26   25 Washington State Legislature "Bill Information" page for SB 5078 – 2021-22.available at:
     https://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/Senate%20Bills/5078.pdf#page=1. Last accessed: July 5,
     2022.

27   26 Senate Bill Report, SB 5078.
     https://app.leg.wa.gov/committeeschedules/Home/Document/225995#toolbar=0&navpanes=0 Last accessed: July 5,
28   2022.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - 9

| Silent Majority Foundation |
| 5238 Outlet Dr. |
| Pasco, WA 99301 |

stating, in part, "The Attorney General's office strongly supports this legislation..."[27] Ms.

Beneski testified to the dangers of these "military style weapons," and noted that "only 2.2

rounds are fired in self defense according to NRA data..." *Id.*

Plaintiff's expert, William McKnight offered evidence to the contrary as he testified that

the time required for a trained police officer to draw and fire a single shot (1.5 seconds), is

sufficient to allow an attacker to "launch 7.5 rounds." McKnight Aff., ¶¶ 10-14. More

importantly, the "well-trained" shooting civilian requires 4-5 seconds to draw and fire the first

shot, and for the inexperienced shooter, that time may increase up to 20 seconds. McKnight Aff.,

¶¶ 35-6. This slowed response for the civilian could allow an attacker to fire between 20 and 200

rounds while the civilian is reloading. McKnight Aff., ¶ 37.

On February 22, 2022, ESSB 5078 was referred to the Rules committee, and it received a

second reading on March 2, 2022.   On March 4, 2022, ESSB 5078 received a reading and

passed with a 55 (yea) – 42 (nay) – 1 (excused) vote.[28] The President of the Senate signed ESSB

5078 on March 7, 2022; the Speaker of the House signed the Bill the following day, and the next

day (March 9, 2022), ESSB was delivered to the Governor, where he signed it on March 23,

2022.   ESSB 5078 became effective on July 1, 2022.[29] Commencing July 1, 2022, Plaintiff was

unable to purchase a 30-round magazine from either of his local retailers as the sales of such

magazines were prohibited by ESSB 5078. Brumback Decl. ¶ 20.

B. Plaintiffs' Have Standing under the UDJA or to Request Injunctive Relief.

"Standing under the Uniform Declaratory Judgments Act 'is not intended to be a

particularly high bar. Instead, the doctrine serves to prevent a litigant from raising another's legal

---

27 ESSB 5078 Hearing February 16, 2022. Available at: https://tvw.org/video/house-civil-rights-judiciary-committee-2022021244/?eventID=2022021244. Last accessed: July 5, 2022.
28 *Supra*, FN2.
2929 *Id.*

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

1   right.'" *Bass v. City of Edmonds*, No. 99596-6, at \*4 (Wash. Apr. 21, 2022) citing *Wash. State*

2   *House. Fin. Comm'n*, 193 Wn.2d 704, 712 (2019). Each Plaintiff has submitted an Affidavit or

3   Declaration , each replete with information that demonstrates his standing through ownership of

4   a "high capacity magazine" and his continued interest in purchasing the same. To wit, ¶ 23 of the

5   Complaint discussed Plaintiff's present ownership of "high capacity magazines," and ¶ 31,

6   addresses Plaintiff's desire to purchase additional "high capacity magazines."   Paragraph's 17 -

7

8   20 of Brumback's Declaration notes that he attempted to purchase "a 30 round AR-15 rifle

9   magazine" at Bestway Pawn Mar, Inc. and "The Range" on July 1, 2022. Each business is

10  located in Yakima, Washington, and each business refused to sell Mr. Brumback such a

11  magazine as it would violate the recently enacted requirements of ESSB 5078. *Id.* Each business

12  had such magazines available for sale and in stock prior to July 1, 2022. *Id.* Plaintiff Gimme

13  Guns has testified that it has been prohibited from selling such magazines since July 1, 2022.

14  Gilroy Aff., ¶ 9. The denial of each Plaintiff's Second Amendment right to bear arms through the

15  implementation of ESSB 5078 grants standing to each Plaintiff. Barring a reversal of ESSB

16

17  5078, Plaintiff's will continue to be denied these rights each time Brumback attempts to purchase

18  and Gimme Guns attempts to sell a "high capacity magazine."

19

20              **III. ISSUES PRESETNED**

21      1. Does the plain text of the US Constitution's 2nd Amendment and WA Constitution's

22          Article I, Sec. 24 presumptively protect Plaintiffs' right to keep and/or bear arms?

23      2. Given Defendants' failure to show that their firearm regulation via ESSB 5078,

24          adopted as RCW 9.41(36), *et. seq.*, is, as required by law,[30] consistent with our

---

25  30 "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively

26  protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather**, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation**. Only if a firearm regulation is consistent with the Nation's historical

27  tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 2022 U.S. LEXIS 3055, \*1, 142 S. Ct. 2111, 29 Fla. L. Weekly

28  Fed. S 440, 2022 WL 2251305.   (Emphasis added.)

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

nation's and/or state's historical tradition, must this Court declare this law null, void, unenforceable and/or an unconstitutional impairment and/or infringement and thus enjoin its enforcement?

3. Does ESSB 5078, adopted as RCW 9.41(36), *et. seq.*, violate the United States or Washington Constitution as infringing or impairing the individual right to bear arms?

## IV. ARGUMENT AND AUTHORITY

A. Standard for Injunctive and/or Declaratory Relief.

Injunctive relief is issued under Washington Civil Rule ("CR") 65 and under the Under Declaratory Judgments Act, RCW 7.24.   Under either, the inquiry is three-pronged; a person must establish:

(1) That he or she has a clear legal or equitable right (Courts throughout Washington have employed this element under the question of the complaining party's likelihood of "ultimately prevailing on the merits." *Tyler Pipe Indus. v. Dep't of Revenue*, 96 Wn. 2d 785, 793 (Wash. 1982),

(2) That he or she has a well-grounded fear of immediate invasion of that right by the one against whom the injunction is sought, and

(3) That the acts complained of are either resulting in or will result in actual and substantial injury.[31]

As a general matter, "a suit for an injunction is an equitable proceeding with considerable inherent discretion vested in the trial court."   *City of Bellingham v. Chin*, 98 Wash.App. 60, 72, 988 P.2d 479, 486 (1999). Generally, a temporary restraining order "issued without notice to the adverse party, requires a showing of irreparable harm, CR 65(b), neither the injunction statute

---

31 RCW 7.24.020; CR 65; See: CR 65 Injunctions, 4 Wash. Prac., Rules Practice CR 65 (6th ed.) (March 2020)(Author's Comment 16); and *Washington Federation of State Employees, Council 28, AFL-CIO v. State*, 99 Wash. 2d 878, 665 P.2d 1337 (1983)).

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - 12

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

nor the civil rules require a showing of irreparable harm to obtain an injunction where the adverse party is given notice." *Spokane v. AFSCE*, 76 Wn.App. 765, 769, 888 P.2d 735 (1995). Thus, where Plaintiffs provide notice to opposing party in advance of their request for a Temporary Restraining Order a Plaintiff need only meet the lower threshold of "actual and substantial injury." Here, Plaintiff has provided such notice and he need only meet the actual and substantial injury" threshold.

  B. Elements of a TRO/Declaratory Relief Applied to Plaintiff.

    (1) Mr. Brumback has a clear legal right to purchase a "high capacity magazine;" Gimme Guns has the same right to sell such magazines. ESSB's prohibition of selling such magazines infringes in each Plaintiff's Second Amendment rights.

Mr. Brumback owns several "high capacity magazines." Brumback Decl., ¶ 25. On July 1, 2022, Mr. Brumback attempted to purchase, and was denied the right, additional high capacity magazines in two locations in Yakima, WA. Brumback Decl., ¶¶ 17-20. Until ESSB 5078 was enacted, Mr. Brumback had the ability to purchase these magazines; in fact, just days prior to July 1, 2022, he had seen such magazines for sale (i.e., in inventory/stock) at one of the two locations where he was denied such purchase. Brumback Decl., ¶ 17. Similarly, Gimme Guns, as a firearms and firearms accessory retailer, sold such magazines up until July 1, 2022, when it ceased such sales due to the ESSB 5078 and its amendments to RCW 9.41. Gilroy Aff., ¶ 9.More importantly, ESSB does not prohibit the ownership of such magazines; rather, it prohibits the "manufacture, importation, distribution, offer for sale, or sale" of such magazines. ESSB 5078, Section 3, (1)(a); RCW 9.41.010. Nonetheless, by prohibiting the sale of the magazines, the Legislature has regulated the ability to purchase and own them, violating the constitutional rights of every individual seeking to purchase a high capacity magazine in the State of Washington. Thus, the Legislature has impaired Plaintiffs' ability to sell or purchase otherwise legal tools (i.e., high-capacity magazines).

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - **13**

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

The question of whether Plaintiffs' likelihood of success on the merits weighs in Plaintiffs' favor.   As discussed below, under the new US Supreme Court analysis of the Second Amendment, the lone question for this court is: whether, under the textual history of the Second Amendment, Plaintiffs' constitutional rights have been impaired. *New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843, (June 23, 2022). Moreover, the State bears the burden of demonstrating that the legislation is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at *20. While the Ninth Circuit has upheld similar high capacity magazine regulations (see following section), it did so under a separate two-step analysis involving intermediate scrutiny—the very test that US Supreme Court dismissed in *New York State Rifle & Pistol Assn. Id.* The lone question under the Supreme Court's Second Amendment analysis as applied to this matter is: whether the Second Amendment and its history would limit magazines to 10 rounds or less. The answer is unquestionably NO! See: *District of Columbia et al. v. Heller*, 554 U.S. 570, 622 (2008). Thus, the limitation on sales of high capacity magazines infringes each Plaintiff's Second Amendment rights.

      (2) Each Plaintiff has a well-grounded fear of immediate invasion of its Second Amendment and Washington Constitutional right to bear arms.

      Under the circumstances, Brumback's fear has been realized as he was denied the purchase of the forbidden magazine twice on ESSB 5078's effective date and subsequently by Plaintiff Gimme Guns. Brumback Decl. ¶¶ 17-20. Similarly, Gimme Guns has been prohibited from selling such magazines since July 1, 2022. Gilroy Aff., ¶ 9. Thus, neither Plaintiff fears the invasion of its Second Amendment right; rather, the rights of each Plaintiff has been impaired, and each Plaintiff has suffered "specific and perceptible harm." *Leavitt v. Jefferson County*, 74 Wn. App. 668, 679 (Wash. Ct. App. 1994) Thus, the "well-grounded" fear exists, or existed, prior to the infringement and impairment of each Plaintiff's Second Amendment rights.

      (3) The denial of Plaintiffs' attempt to transact business involving the purchase and sales

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

of high capacity magazines **is** an actual and substantial injury.

Like the second element, above, this third element needs no additional analysis.   Mr. Brumback's **rights** **were** **denied** on July 1, 2022, when he was informed that he could not purchase a "high capacity magazine at two locations in Yakima as such a sale would violate ESSB 5078 and subsequently by Plaintiff Gimme Guns. Brumback Decl. ¶¶ 17-20. These retailers cited the newly enacted (ESSB 5078) limitations on selling or transferring high capacity magazines. *Id.* Similarly, Gimme Guns' rights have been infringed and impaired as it has been prohibited from selling "high capacity" magazines since July 1, 2022. Gilroy Aff., ¶ 9.   Thus, Plaintiffs have met all three prongs required for Injunctive Relief.

C. Application of Uniform Declaratory Judgement Act Elements to the Present Issue.

A quick note must be entered on the application of the Uniform Declaratory Judgment Act (RWC 7.24, "UDJA") as Plaintiffs are seeking declaratory judgment. The UDJA requires a justiciable controversy, meaning (1) one presenting an actual, present, and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) involving interests that are direct and substantial, rather than potential, theoretical, abstract, or academic, and (4) of which a judicial determination will be final and conclusive. *Alim v. City of Seattle*, 14 Wn.App.2d 838, 847 (Wash. Ct. App. 2020) citing *Diversified Indust. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973).

The test under the UDJA is not whether a party intends to violate the law being challenged; rather, it is whether the party's rights are adversely affected by the decision. A party seeking a judgment that a statute or ordinance is unconstitutional must show that enforcement of the law will directly affect him. *Crane Towing, Inc. v. Gorton*, 89 Wn.2d 161, 172, 570 P.2d 428 (1977). "The rationale for this rule is quite simple. If a plaintiff is not directly affected by the

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

1    enforcement of a statute, the declaratory judgment action becomes, in effect, an advisory opinion

2    because of the lack of the necessary adversarial atmosphere." *Id.* at 172-73. One cannot simply

3    state that the action is brought on behalf of all people of the State of Washington because that

4    does not "produce the element of conflict necessary to elevate the decision from being merely an

5    advisory opinion on the constitutional rights [at stake]." *Id.* at 173.

6

7        To establish standing under the UDJA, a party must demonstrate that: (1) the interest they

8    seek to protect is within the zone of interests regulated by the ordinance in question, and (2) they

9    have suffered or will suffer an "injury in fact." *Alim*, 14 Wn. App. 2d at 851-52 (citing

10    *Lakehaven Water and Sewer Dist. v. City of Federal Way*, 195 Wn.2d 742, 769, 466 P.3d 213

11    (2020). "A party meets the 'injury in fact' prong of standing by showing that the injury will be

12    immediate, concrete, and specific, even though the allegations may be speculative and

13    undocumented." *Kucera v. Dep't of Tramp.*, 140 Wn.2d at 213 (2000); See: *Leavitt v. Jefferson

14    County*, 74 Wn. App. at 679 (1994). Here, all justiciability factors and both standing factors

15    under the UDJA are met as described above. Thus, Plaintiff is entitled to a favorable ruling either

16    under the TRO standard or under the UDJA; alternatively, this Court may issue both.

17

18        As Division I of the Washington Court of Appeals has held: "The entitlement to an

19    injunction should be clear; a court will not issue an injunction in a doubtful case." *Speelman v.

20    Bellingham/Whatcom Cnty. Hous. Authorities*, 273 P.3d 1035, 1039 (Wash. Ct. App. 2012).

21    Here, there is no doubt: Mr. Brumback's Second Amendment rights were violated when he

22    sought to purchase a high capacity magazine and he was unable to as retailers are prohibited

23    from selling such magazines pursuant to ESSB 5078. Moreover, Plaintiff Gimme Guns' Rights

24    have been impaired each day it's had to deny potential purchasers of "high capacity" magazines

25    that Gimme Guns would otherwise sell. Every Defendant has been vested authority to punish

26    violators of ESSB 5078 with a gross misdemeanor.   Thus, there is no doubt—an injunction must

27

28

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

1  be issued as there is no "plain, complete, speedy and adequate remedy at law." *Tyler Pipe Indus.*,

2  at 791. Moreover, these facts demonstrate that declaratory relief is also appropriate for this case

3  and that this Court should issue the requested declaratory relief.

> D. United States Supreme Court's Framework for Analyzing Second Amendment Violations Requires the Government to Demonstrate that the Regulation Fits within the Historical Tradition of the Second Amendment.

In June 2022, the United States Supreme Court reviewed a New York gun licensing statute to

determine its constitutionality *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 2022 U.S. LEXIS 3055,

*1, 29 Fla. L. Weekly Fed. S 440, ___ S.Ct. ___, 2022 WL 2251305. The New York statute

criminalized possession of "a firearm without a license, whether inside or outside the home." *Id.,*

at *7-8. The Court reviewed the regulation and concluded that it violated the Second

Amendment and the Fourteenth Amendment. *Id.*

In reviewing the New York law, the Supreme Court noted that recent Second Amendment

cases require a "two-step" analysis to determine whether a regulation of firearms violates the

Second Amendment. The two-step process first looked to the history of the Second Amendment

to determine whether the proposed regulation was aligned with the history.   Under the second

step, the court would review the regulation under a "means-end" test. *Id.* at 13, 15. By dispensing

of the two-step approach, the Court effectively ended the "means-end scrutiny" (i.e., strict,

intermediate, rational basis scrutiny) review of Second Amendment questions. *Id.* at 15. Under

the Court's new test, the single step inquiry/burden falls squarely on the government to prove

that the regulation was "consistent with this Nation's historical tradition of firearm regulation."

*Id.* As the Court held, "[d]espite the popularity of this two-step approach, it is one step too

many." *Id.* To summarize the new/present Second Amendment constitutionality test, the Court

held:

> To justify its regulation, the government may not simply posit that the regulation

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

1  promotes an important interest. Rather, the government must demonstrate that the
2  regulation is consistent with this Nation's historical tradition of firearm regulation.
   Only if a firearm regulation is consistent with this Nation's historical tradition may
3  a court conclude that the individual's conduct falls outside the Second
   Amendment's 'unqualified command.'" *Id.*, at * 20 citing: *Konigsberg v. State Bar*
4  *of Cal.,* 366 U. S. 36, 50, n. 10 (1961).

5  Thus, this Court's inquiry will be limited to a single-step inquiry, which hinges on the question

6  of whether ESSB 5078 "is consistent with this Nation's historical tradition."

7      1. Analysis of the "historical tradition" of Protecting United States Gun Ownership under
8         the Second Amendment or the Washington State Constitution.

9      Important to the Court is the notion that "the Founders created a Constitution—and a Second

10 Amendment— 'intended to endure for ages to come, and consequently, to be adapted to the

11 various crises of human affairs.'" *Id.* at *19, citing *McCulloch* v. *Maryland,* 4 Wheat. 316, 415

12 (1819) (emphasis deleted).   It is under this view that "the government must affirmatively prove

13 that its firearms regulation is part of the historical tradition that delimits the outer bounds of the

14 right to keep and bear arms." *New York State Rifle & Pistol Assn., Inc. v. Bruen,* No. 20-843, at

15 *15 (June 23, 2022). Moreover, under this view, "[w]hen the Second Amendment's plain text

16 covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.*, at *20

17 Citing *Konigsberg,*366 U.S., at 50, n. 10. Thus, inherent in the Second Amendment is the right to

18 bear arms, and inherent in the Washington constitution is the right to defend oneself.   These two

19 statements clearly grant individual rights to possess, purchase, and sell high capacity magazines

20 without government interference.

21

22     a. Pre- *N.Y. State Rifle & Pistol Ass'n v. Bruen,* the Ninth Circuit Analyzed State and
23        Municipal Ordinances Regulating Large Capacity Magazines under Intermediate
24        Scrutiny. Under *N.Y. State Rifle & Pistol Ass'n,* the Intermediate Scrutiny Analysis is No
25        Longer Valid for Second Amendment Inquiries.

26     The Ninth Circuit presently applies the two-step approach to Second Amendment questions

27 that the US Supreme Court employed prior to *N.Y. State Rifle & Pistol Ass'n.* See *Jones v. Bonta,*

28

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF - 18

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

2022 US Appl LEXIS 12657 (9th Cir. 2022). This two-step evaluation was employed in 2015 in a challenge to a municipal ordinance that banned "large capacity" (10 rounds or more) magazines: "To evaluate post-*Heller* Second Amendment claims, the Ninth Circuit, consistent with the majority of our sister circuits, employs a two-prong test (1) the court 'asks whether the challenged law burdens conduct protected by the Second Amendment"; and (2) if so, what level of scrutiny should be applied." *Fyock v. City of Sunnyvale*, 779 F.3d 991, 996 (9th Cir. 2015) citing *United States v. Chovan*,735 F.3d 1127, 1136 (9th Cir.2013). See also: *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021).

The Ninth Circuit's prior analysis hinged on the connection between the right to bear arms and the right to use them. In *Jones v. Bonta*, the court held that the "right to obtain arms" and ammunition are implicit in "the right to keep and bear arms," which would become "meaningless" as these actions (bearing arms and possessing ammunition to use such arms) are "intimately connected." *Jones v. Bonta*, at citing *Jackson v. City of San Francisco*, 746 F.3d 966, 967 (9th Cir. 2014), which upheld the right to obtain ammunition as implicit within the Second Amendment "without bullets, the right to bear arms would be meaningless...Thus 'the right to possess firearms for protection implies a corresponding right" to obtain the bullets necessary to use them."") See also: *Luis v. United States,* 136 S.Ct. 1083, 1097: "There comes a point . . . at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." (Thomas, J., concurring in the judgment). The Court concluded: "[f]or this reason, the right to keep and bear arms includes the right to purchase them. And thus laws that burden the ability to purchase arms burden Second Amendment rights." *Jones v. Bonta*, No. 20-56174, at *19-20 (9th Cir. May 11, 2022)

Notwithstanding the strong language regarding the intertwined nature of the gun and the ammunition, the Ninth Circuit applied intermediate scrutiny under the two-step Second

1  Amendment review regime. In *Fyock v. City of Sunnyvale*, where the Court reviewed a

2  municipal ordinance that banned high capacity magazines (10 rounds or more), the Court noted

3  that such regulation is "appropriate if the regulation at issue does not implicate the core Second

4  Amendment right *or* does not place a substantial burden on that right." *Fyock v. City of*

5  *Sunnyvale*, 779 F.3d 991, 998-99 (9th Cir. 2015) citing *Jackson v. City and Cnty. of San*

6  *Francisco*, 746 F.3d 953, 970 (9th Cir.2014). The Ninth Circuit concluded that while the

7  regulation of high capacity magazines "likely reaches the core Second Amendment right, [] its

8  resulting impact on that right is not severe." *Fyock v. City of Sunnyvale*, 779 F.3d 991, 999 (9th

9  Cir. 2015). More recently, the Ninth Circuit held that "large-capacity magazines provide

10  significant benefit to soldiers and criminals who wish to kill many people rapidly. But the

11  magazines provide at most a minimal benefit for civilian, lawful purposes." Under this analysis,

12  the Court applied intermediate scrutiny. *Duncan v. Bonta*, 19 F.4th 1087, 1106 (9th Cir. 2021).

13  Of course, Plaintiff's expert notes that this is not the case; rather, the ability to quickly reload can

14  be life preserving in a matter of seconds. McKnight Aff., ¶¶ 10-4; 35-7. Such protection may be

15  required at any time, but especially in time of calamity or other mass disaster as Mr. Brumback

16  stated in his declaration. See Brumback Decl., ¶¶ 37-40 (discussing Cascadia Subduction Zone

17  event where a mass earthquake event occurs at the Cascadia Subduction Zone, resulting in mass

18  chaos and a potential scenario replete with criminal activity while the police presence no longer

19  exists).

20  It appears that the Ninth Circuit cases were decided on the premise that civilians need not

21  possess "military" weapons, which the Court broadly construed without clear definition. (see

22  generally: *Bonta v. Jones*, at *36-7; see also: *Heller*, at 622) discussing the ownership of short-

23  barreled shotguns, noting: "it is not within judicial notice that this weapon is any part of the

24  ordinary military equipment or that its use could contribute to the common defense.") However,

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

1  as noted under *Heller* and *N.Y. State Rifle & Pistol Ass'n*, history dictates that the civilian need

2  not only protect itself from harmful intruders, but that the civilian may find itself defending

3  against government overreach: "The importance of [the Second Amendment] will scarcely be

4  doubted by any persons who have duly reflected upon the subject. The militia is the natural

5  defence of a free country against sudden foreign invasions, domestic insurrections, and domestic

6  usurpations of power by rulers..." (*Heller*, at 667 quoting 2 J. Story, *Commentaries on the*

7  *Constitution of the United States* § 1897, pp. 620–621 (4th ed. 1873)).

8

9  With the new US Supreme Court ruling in *N.Y. State Rifle & Pistol Ass'n*, the Ninth Circuit's

10  analysis will be modified to review Second Amendment cases in line with the Supreme Court.

11  Additionally, the Washington Supreme Court will need to adopt the US Supreme Court's

12  modified review, where the analysis is limited to a single step to determine whether the

13  regulation follows the historical suit of the Second Amendment or the Washington Constitution.

14  Because the Washington Constitution is more individual-oriented, there is no reason to believe

15  that the State's approach will vary from the Supreme Court's approach. This matter is an

16  appropriate starting place for the Washington Supreme Court to adopt the single-inquiry standard

17  employed in *N.Y. State Rifle & Pistol Ass'n*. Such analysis will provide the Court with the basis

18  for issuing the injunctive and/or declaratory relief requested by Plaintiffs and demanded by the

19  United States and Washington Constitutions and the historical application of the protective

20  provisions in each, which prohibit "infringement" or "impairment" of one's right to bear arms.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

## V.  <u>CONCLUSION AND RELIEF SOUGHT</u>

For the foregoing reasons, Plaintiff respectfully requests this Court to enter an order of temporary injunction to prevent Defendants from enforcing ESSB 5078 as implemented through RCW 9.41 and declare the same invalid as unconstitutional.

DATED this 18ᵀᴴ day of July, 2022.

SILENT MAJORITY FOUNDATION

Simon Peter Serrano, WSBA No. 54769
5238 Outlet Dr.
Pasco, WA 99301
(530) 906-9666
pete@silentmajorityfoundation.org

Counsel for Plaintiffs

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND DECLARATORY RELIEF -  **22**

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301