Simon Peter Serrano, WSBA No. 54769
Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301
(509) 567-7083
pete@silentmajorityfoundation.org
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT YAKIMA

| | |
|---|---|
| MICHAEL SCOTTT BRUMBACK, an individual; and GIMME GUNS, a sole proprietorship, | NO. 1:22-cv-03093-MKD |
| Plaintiffs, | PLAINTIFFS' MOTION FOR INJUNCTIVE AND DECLARATORY RELIEF |
| v. | |
| ROBERT W. FERGUSON, in his official capacity as Washington State Attorney General; JOHN R. BATISTE, in his official capacity as Chief of the Washington State Patrol; ROBERT UDELL, in his official capacity as Sheriff for Yakima County, Washington; and JOSEPH A. BRUSIC, in his official capacity as County Prosecutor for Yakima County, | November 23, 2022 With Oral Arguments 11:00 AM |
| Defendants, | |
| ALLIANCE FOR GUN RESPONSIBILITY, | |
| Defendant-Intervenor. | |

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

# I. **INTRODUCTION**

"[T]he Court recognized in *Heller* at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances: Its reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.'"[1] *N.Y. State Rifle & Pistol Ass'n v. Bruen*.

The question before this Court is whether Engrossed State Senate Bill ("ESSB") 5078 and its effective amendments to Revised Code of Washington ("RCW") section 9.41,[2] impairs and/or infringes upon the right of Washington citizens to keep and/or bear arms. If so, it is unconstitutional and unenforceable, and it must be enjoined and declared invalid as a violation of our citizens rights.

ESSB 5078 modifies and violates centuries old constitutionally (Washington and US) protected right of citizens to bear arms,[3] which includes the ability to buy, possess, manufacture, repair, import, or distribute ammunition magazines.

Citizens have the right to ammunition magazines as part of their right to bear arms as they are "intimately connected" with gun ownership. *Jones v. Bonta*, No.

---

1 *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 2022 U.S. LEXIS 3055, *4, 142 S. Ct. 2111, construing *District of Columbia v. Heller*, 554 U.S. 570 at 582 (2008).

2 ESSB 5078 amends RCW 9.41; this Motion uses the term ESSB 5078 to comprehensively address the Bill and modifications to the RCW.

3 US Constitution since 1787; Washington Constitution, ratified October 1, 1889.

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

# I. **INTRODUCTION**

"[T]he Court recognized in *Heller* at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances: Its reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.'"[1] *N.Y. State Rifle & Pistol Ass'n v. Bruen*.

The question before this Court is whether Engrossed Substitute Senate Bill ("ESSB") 5078 and its effective amendments to Revised Code of Washington ("RCW") section 9.41,[2] impairs and/or infringes upon the right of Washington citizens to keep and/or bear arms. If so, it is unconstitutional and unenforceable, and it must be enjoined and declared invalid as a violation of our citizens rights.

ESSB 5078 modifies and violates centuries old constitutionally (Washington and US) protected right of citizens to bear arms,[3] which includes the ability to buy, possess, manufacture, repair, import, or distribute ammunition magazines.

Citizens have the right to ammunition magazines as part of their right to bear arms as they are "intimately connected" with gun ownership. *Jones v. Bonta*, No.

---

1 *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 2022 U.S. LEXIS 3055, *4, 142 S. Ct. 2111, construing *District of Columbia v. Heller*, 554 U.S. 570 at 582 (2008).

2 ESSB 5078 amends RCW 9.41; this Motion uses the term ESSB 5078 to comprehensively address the Bill and modifications to the RCW.

3 US Constitution since 1787; Washington Constitution, ratified October 1, 1889.

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 1
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

20-56174, at *19-20 (9th Cir. May 11, 2022) citing *Jackson v. City of San Francisco*, 746 F.3d 966, 967 (9th Cir. 2014). These magazines have been legal since our nation and state's founding and have been in common use for a century or more.

As early as 1888, a detachable magazine was commonly used with the British Lee-Metford .303 caliber rifle.[4] The US Henry Model 1860 was the first American rifle manufactured with a magazine.[5] Pistols had 20 round magazines as early as 1893.[6] John Browning patented a .45 caliber rifle with a detachable magazine in 1891.[7] Browning also created the famous Colt 1911 that has been in use continuously by civilians, law enforcement and military personnel since 1911; it has a detachable magazine.[8] Plaintiff Brumback was first issued an M1911 in the US Army and has this model in his private collection. The M14 rifle, outfitted with a

---

4 https://www.militaryrifles.com/british/leemetford.

5 https://www.worthpoint.com/dictionary/p/firearms-and-accessories/parts/ammunition-magazine.

6    https://www.americanrifleman.org/content/in-the-beginning-semi-automatic-pistols-of-the-19th-century/.

7    https://armourersbench.com/2019/08/11/browning-prototypes-detachable-box-magazine-lever-action-rifle/.

8 https://en.wikipedia.org/wiki/M1911_pistol#Current_users_in_the_U.S.

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 2
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

20 round detachable magazine and chambered in 7.62x51mm,[9] was first produced in 1958 and is a common rifle owned by US citizens.[10] The AR/AK rifles commonly mislabeled as "assault rifles"[11] have been around for nearly 70 years.[12]

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. **To justify its regulation, the government may not simply posit that the regulation promotes an important interest**. Rather, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command."[13]

The government cannot justify ESSB 5078's magazine ban legally or factually. The purchase, sale, and utilization of these "prohibited" magazines are protected by the US Constitution's 2nd Amendment and Washington's Article I, Sec. 24 as they are intimately connected with the use of legal firearms.  The government's only

---

9 Larger and more powerful than the AR-15's 5.56mm/.223 caliber.

10 https://www.historynet.com/a-brief-history-of-the-m14-rifle/.

11 AR stands for "Armalite Rifle," named after the company that first produced these rifles. https://www.nssf.org/articles/ar-stands-for-armalite/. Last accessed: September 27, 2022.

12 https://www.thetruthaboutguns.com/what-does-ar-stand-for-in-ar-15/.

13 *Bruen*, at *1.  Emphasis added.

PLAINTIFFS' MOTION FOR
INJUNCTION AND
DECLARATORY RELIEF- 3
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

justification for denying law-abiding citizens' ability to purchase, possess, sell, repair, etc., these magazines boils down to spurious claims of anti-gun activists that public safety is somehow enhanced; however, the ban actually makes people less safe. McKnight Aff., ¶¶ 32-40.[14] This "justification" by these activists, both in and out of government, while clothed in nobility, is a biased, emotion-based illusion devoid of fact. This "public safety" argument is inconsistent with our nation and state's "historical tradition of firearm regulation" as ammunition magazines have been in wide circulation for decades. The only reason that ESSB 5078 is "law" is due to the activists who occupy positions of power in government wanting to ban these magazines. The law, for sure, is not a consideration, but is rather, for them, an impediment.

Recently, the United States Supreme Court reaffirmed that the constitutionally protected right to keep and/or bear arms is not limited to a backwards looking view that only a musket bearing militia enjoys this right.[15] This is an undeniably individual right, as confirmed by Article I, Section 24 of Washington's Constitution:

---

14 See also Larosiere, Matthew. Cato Institute. *Losing Count: The Empty Case for "High-Capacity" Magazine Restrictions*. Available at: https://www.cato.org/legal-policy-bulletin/losing-count-empty-case-high-capacity-magazine-restrictions. Last accessed: July 15, 2022.

15 *Bruen*, at *1.

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 4
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

**The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired**.

That the individual citizen has the right to bear arms, and that this protects the individual's right to defend himself, his family, and his state, there just is no doubt.

It should be noted that the Constitution protects the right to bear "arms" (plural), which means a few things of import.  First, the right is not limited to the "arms of the government's choice."  The presumption in the law is that the citizen, not the government, decides which arms are to be possessed. See, e.g., *Heller*, at 627-28.[16] Second, the term "arms" is plural, which necessarily means the citizen has a right to possess multiple firearms of his choosing and, ostensibly, of various types, calibers and capabilities.  Third, the individual right is not only for personal defense, but also

---

16 "But as we have said, the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty. It may well be true today that a militia, to be as effective as militias in the 18th century, would require sophisticated arms that are highly unusual in society at large. Indeed, it may be true that no amount of small arms could be useful against modern-day bombers and tanks. But the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right." *Heller*, at 627-28.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

a right to bear arms in defense of the "state." This part of our Constitution is almost universally ignored, although the import is clear; this is a right that also protects a citizen's right to bear arms used in the defense of a state. It is in this context that certain firearms and their accessories (such as ammunition magazines holding over 10 rounds) have direct application to our constitutional-right to bear arms.

A. History of oppression supports the individual's absolute right to lawfully bear arms.

History is full of oppression and tyranny; over time We, the People, learned that a deterrent to tyrants, oppressors and killers is to arm the citizen. It is with this history in view that the Supreme Court in *Bruen* analyzed our right to bear arms:

> "We looked to history because '**it has always been widely understood that the Second Amendment . . . codified a** *pre-existing* **right**.' *Ibid.* The Amendment 'was not intended to lay down a novel principle but rather codified a right inherited from our English ancestors.' *Id*., at 599, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (alterations and internal quotation marks omitted)."[17]

The US Supreme Court was clear that this time-tested right has a modern application, just as the 1st Amendment applies to the internet:

> "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. Thus, even though the Second Amendment's definition of arms is fixed according to its historical understanding, that general definition covers modern

---

17 *Bruen*, at *23-24. (Emphasis added.)

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

instruments that facilitate armed self-defense."[18]

ESSB 5078[19] clearly impairs and/or infringes upon the constitutionally protected rights of Washingtonians to bear arms to defend themselves, their families, their communities, and the state of Washington. ESSB 5078 is simply an extension of previous infringements of law-abiding gun owner's rights. See: I-1639 and I-594. Problematically, none of these proposed regulations was based in logic or reason, but on activism as evidenced by the arbitrary decision that an 11 round magazine is distinguishable as a "high capacity" from a 10-round magazine. The fundamental flaw with ESSB 5078 is that it violates the Washington and United States Constitutions (which drafters, including Defendant Ferguson, and adopting legislators have sworn to uphold). This violation of the Constitutions and the individual's violation of oath of office is one of the reasons that Plaintiffs, law abiding citizens, call upon the court to uphold the Constitutions and affirm that we are a state (and nation) of laws. As a California District Court recently held regarding a challenge to a statewide ban on AR-15 rifles:

> This case is not about extraordinary weapons lying at the outer limits of Second Amendment protection.…the firearms deemed 'assault weapons' are fairly ordinary, popular, modern rifles. This is an average case about average guns used in average ways for average purposes.

---

18 *Bruen*., at *1.

19 ESSB 5078 was signed into law by Governor Inslee, March 23, 2022, with an effective date of July 1, 2022.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

> One is to be forgiven if one is persuaded by news media and others that the nation is awash with murderous AR-15 assault rifles. The facts, however, do not support this hyperbole, and facts matter. Federal Bureau of Investigation murder statistics do not track assault rifles, but they do show that killing by knife attack is far more common than murder by any kind of rifle. In California, murder by knife occurs seven times more often than murder by rifle. For example, according to F.B.I. statistics for 2019, California saw 252 people murdered with a knife, while 34 people were killed with some type of rifle – not necessarily an AR-15. A Californian is three times more likely to be murdered by an attacker's bare hands, fists, or feet, than by his rifle. In 2018, the statistics were even more lopsided as California saw only 24 murders by some type of rifle. The same pattern can be observed across the nation. *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1015 (S.D. Cal. 2021)

As in *Miller*, this Court must look beyond "safety" hyperbole used to pass ESSB 5078 in violation of Washingtonians' constitutional right to bear arms, which is protected under the United States Constitution protects, as follows:

> **A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed.**[20]

The Washington Constitution protects the right as follows:

> **The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men.**[21]

---

20 United States Constitution, Second Amendment.

21 Washington Constitution Article I, Section 24.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

The United States Supreme Court's decision in *Bruen*, and its reference to "[a]ll instruments that constitute bearable arms" includes detachable ammunition magazines over 10 rounds.  ESSB 5078 regulates these magazines without looking at history or legal precedent; this activist whim in written form fails the approach to analyzing Second Amendment issues set forth in *Bruen*.

Plaintiffs respectfully move this Court, in the exercise of its discretion and pursuant to its equitable powers to do justice in accordance with the law, for the entry of an Order enjoining Defendants from enforcing ESSB 5078 (and its amendments to RCW Chapter 9.41) and declaring the same to be unconstitutional impairments and/or infringements upon Plaintiffs' right to keep and/or bear arms as protected by the US and Washington Constitution.  This motion is based on Federal Rules of Civil Procedure CR 65(b) and the equitable powers of this Court.

## II.    STATEMENT OF FACTS

A. History of SB/ESSB 5078 (2021 and 2022 Washington Legislative Sessions).

Senate Bill ("SB") 5078 was pre-filed for introduction in the 2021 legislative session on January 6, 2021 by Senators: Liias, Kuderer, Darneille, Hunt, Nguyen, Pedersen, C. Wilson, and Lovelett; **by request of Attorney General**.[22] (Emphasis

---

22 Washington State Legislature "Bill Information" page for SB 5078 – 2021-22. available at:  https://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/Senate%20Bills/5078.pdf#page=1. Last accessed: July 5, 2022.

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 9
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

added to demonstrate Attorney General Ferguson's involvement in the Bill.) *Id.* On January 21, 2021, the Senate Law & Justice Committee held a hearing, where Yasmin Trudeau of the Attorney General's Office testified PRO (i.e., in favor of the Bill).[23] The Bill was not adopted during the 2021 Session.

SB 5078 was reintroduced in the 2022 Session on January 10, 2022. On February 9, 2022, the Bill was adopted with floor amendments and passed with a third reading in the Senate and was referred to the House for a first reading in the Civil Rights & Judiciary Committee on February 12, 2022. *Id.* On February 16, 2022, ESSB 5078 went to a committee hearing, where Kristin Beneski, the First Assistant Attorney General, testified PRO on ESSB 5078, stating, in part, "The Attorney General's office strongly supports this legislation…"[24] Ms. Beneski testified to the dangers of these "military style weapons," and, in support of limiting personal firearm magazine capacity, noted that "only 2.2 rounds are fired in self-defense according to NRA data…" *Id.*

---

23 Senate Bill Report, SB 5078.

https://app.leg.wa.gov/committeeschedules/Home/Document/225995#toolbar=0&navpanes=0 Last accessed: July 5, 2022.

24 ESSB 5078 Hearing February 16, 2022. Available at:

https://tvw.org/video/house-civil-rights-judiciary-committee-2022021244/?eventID=2022021244. Last accessed: July 5, 2022.

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 10
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Plaintiff's expert, William McKnight offered evidence to the contrary as he testified that the time required for a trained police officer to draw and fire a single shot (1.5 seconds), is sufficient to allow an attacker to "launch 7.5 rounds." McKnight Aff., ¶¶ 10-14. More importantly, the "well-trained" shooting civilian requires 4-5 seconds to draw and fire the first shot, and for the inexperienced shooter, that time may increase up to 20 seconds. McKnight Aff., ¶¶ 35-6. This slowed response for the civilian could allow an attacker to fire between 20 and 200 rounds while the civilian is reloading. McKnight Aff., ¶ 37.

On February 22, 2022, ESSB 5078 was referred to the Rules committee, and it received a second reading on March 2, 2022. On March 4, 2022, ESSB 5078 received a reading and passed with a 55 (yea) – 42 (nay) – 1 (excused) vote.[25] The President of the Senate signed ESSB 5078 on March 7, 2022; the Speaker of the House signed the Bill the following day, and the next day (March 9, 2022), ESSB was delivered to the Governor, where he signed it on March 23, 2022. ESSB 5078 became effective on July 1, 2022.[26] Commencing July 1, 2022, Plaintiff Brumback was unable to purchase a 30-round magazine from his local retailers as the sales of such magazines were prohibited by ESSB 5078. Brumback Decl. ¶ 20.

B. Plaintiffs Have Standing to Request Injunctive Relief.

---

25 *Supra*, FN2.

2626 *Id.*

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 11
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Article III standing minimally consists of: (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." *Novak v. United States*, 795 F.3d 1012, 1017-18 (9th Cir. 2015) citing *Lujan v. Defenders of Wildlife,*504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Each Plaintiff has submitted an Affidavit or Declaration replete with facts that demonstrate his/its standing through denial of the purchase or sale of a "high capacity magazine." To wit, ¶ 23 of the Complaint discussed Plaintiff Brumback's present ownership of "high capacity magazines," and ¶ 31, addresses his desire to purchase additional "high capacity magazines." Paragraph's 17 - 20 of Brumback's Declaration notes that he attempted to purchase "a 30 round AR-15 rifle magazine" at Bestway Pawn Mar, Inc. and "The Range" on July 1, 2022 and was refused the purchase as the sale would violate ESSB 5078. *Id.* Each business had such magazines available for sale and in stock prior to July 1, 2022. *Id.* Plaintiff Gimme Guns testified that it has been prohibited from selling such magazines since July 1, 2022. Gilroy Aff., ¶ 9. The denial of these transactions violates Plaintiffs' Second Amendment rights granting standing to each Plaintiff to challenge ESSB 5078.

## III.  <u>ISSUES PRESETNED</u>

1. Does the plain text of the US Constitution's 2nd Amendment and of WA Constitution's Article I, Sec. 24 presumptively protect Plaintiffs' right to keep and/or bear arms?

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 12
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

2. Given Defendants' failure to show that their firearm regulation via ESSB 5078, adopted as RCW 9.41(36), *et. seq.*, is, consistent with our nation's and/or state's historical tradition,[27] must this Court declare this law null, void, unenforceable and/or an unconstitutional impairment and/or infringement and thus enjoin its enforcement?

3. Does ESSB 5078, adopted as RCW 9.41(36), *et. seq.*, violate the United States or Washington Constitution as infringing or impairing the individual right to bear arms?

## IV.    ARGUMENT AND AUTHORITY

A. Standard for Injunctive and/or Declaratory Relief.

Pursuant to Federal Rule of Civil Procedure 65, the Court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65 (b)(1)(A). To obtain a preliminary injunction, Plaintiffs must show that they

---

27 "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, **the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation**. Only if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, at *1 (Emphasis Added).

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 13
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

meet four factors: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of harm tips in the movant's favor; and (4) that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9thCir. 2011). "When a party seeks a preliminary injunction against the government, the balance of the equities and public interest factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Furthermore, where a "serious question" is involved, the balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met" insofar as the plaintiff has a "a fair chance of success on the merits." *Id.* at 1085; *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1069 (S.D. Cal. 2021).

To obtain a permanent or final injunction, Plaintiffs must show actual success and actual harm and "that the public interest would not be disserved by a permanent injunction." *Slidewaters LLC v. Wash. Dep't of Labor & Indus.*, No. 2:20-CV-0210-TOR, at *6-7 (E.D. Wash. July 14, 2020). Plaintiffs meet all factors for both a preliminary and a permanent injunction.

B. Elements of a TRO/Declaratory Relief Applied to Plaintiff.

   (1) **Plaintiffs have a clear legal right to purchase or sell "high capacity magazines." The prohibition of the sales such magazines infringes on Plaintiffs' Second Amendment rights, leading to a likelihood of success that Plaintiffs will prevail.**

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 14
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Mr. Brumback owns several "high capacity magazines" and attempted to, but was denied purchase of, additional "high capacity magazines" on July 1, 2022 in two locations in Yakima, WA. Brumback Decl., ¶¶ 17-20, 25. Just days prior to July 1, 2022, the enactment of ESSB 5078, he had seen such magazines for sale at one of the two locations where he was denied such purchase. Brumback Decl., ¶ 17. Similarly, Gimme Guns, as a firearms and firearms accessory retailer, sold such magazines up until July 1, 2022, when it ceased such sales due to the ESSB 5078 and its amendments to RCW 9.41. Gilroy Aff., ¶ 9. While ESSB 5078 does not prohibit the ownership of such magazines, its prohibition on the sales or "offer[s] of such magazines violating the constitutional rights of every individual seeking to legally purchase a high capacity magazine in the State of Washington, including Plaintiff Brumback, whose right to purchase such a magazine has been impaired as he cannot legally purchase such a magazine in Washington. Plaintiff Gimme Guns cannot sell an item that was previously a portion of its regular sales.

The prohibition of the sales of "high capacity magazines" violates Plaintiffs' constitutional rights; in addition to the *Bruen* decision, this conclusion is supported by case law out of a the Northern District of California, where, under the *Heller* two-prong analysis, the court denied to enjoin an ordinance that banned the possession of magazines having a capacity to accept more than ten rounds. *Fyock v. City of Sunnyvale,* 25 F. Supp. 3d 1267, 1276-77 (N.D. Cal. 2014). The court provided two clarifying statements that demonstrate the harm Plaintiffs have suffered: (1) "The

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

court finds that magazines having a capacity to accept more than ten rounds are in common use and are therefore not dangerous and unusual;" and (2) "In sum, Sunnyvale's ban on possession of magazines having a capacity to accept more than ten rounds implicates the Second Amendment's protections." *Id.* at 175-77.

The court denied the injunction under the second prong of the *Heller* analysis, reviewing the case under intermediate scrutiny. *Id.* at 1278. Under the *Bruen* standard, the lone inquiry is whether the challenged regulation is "consistent with this Nation's historical tradition of firearm regulation," and the level of scrutiny is not an issue. *Id.* at *20. With the single question in mind, this Court should follow suit with the *Fyock* court and conclude that SB 5078 reaches into, and usurps, Plaintiff's Second Amendment rights, and conclude that the Plaintiffs have been harmed and are likely to succeed on the merits, warranting the grant of a preliminary or permanent injunction.

**(2) The denial of Plaintiffs' right to buy or sell high capacity magazines was actual harm.**

Mr. Brumback's **<u>rights</u>** **<u>were</u>** **<u>denied</u>** on July 1, 2022, when he was informed that he could not purchase a "high capacity magazine at two locations in Yakima as such a sale would violate ESSB 5078 and when he was subsequently denied such a purchase by Plaintiff Gimme Guns. Brumback Decl. ¶¶ 17-20. Gimme Guns' rights have been infringed and impaired as it has been prohibited from selling "high capacity" magazines since July 1, 2022. Gilroy Aff., ¶ 9. Moreover, as an outright

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

prohibition, ESSB 5078 offers no exception to the prohibition on selling "high capacity magazines," resulting in Plaintiff Gimme Guns no longer being able to legally sell these magazines and Plaintiff Brumback no longer being able to legally purchase such magazines in Washington. Thus, each Plaintiff has suffered actual harm, warranting Injunctive Relief.

**(3) The Balance of the Harm Weighs in Plaintiffs' Favor.**

The harm at interest in this matter is a violation of Plaintiffs' (and other law abiding, gun loving Washingtonians) State and US Constitutional right to bear arms and is weighed against *potential* public safety, which is a smoke and mirrors approach to regulating these magazines. ESSB 5078 claims that "gun violence is a threat to the public health and safety of Washingtonians" and was enacted to promote safety. ESSB 5078, Sec. 1. However, relevant statistics include: **roughly 197 Washingtonians die annually from gun-related homicides**; no distinction is made to the magazine capacity for the firearm used in these deaths.[28] This number should be compared to the **517 traffic fatalities** that occurred in 2019[29] or the **1,759 drug**

_____

28 https://everystat.org/#Washington; See also, Intervenor's Fact Sheet:

https://gunresponsibility.org/wp-content/uploads/2021/12/GV-Fact-Sheet.pdf. Last accessed: September 25, 2022.

29 *Washington State Traffic Safety Annual Report, 2020*, at 12. Available at:

http://wtsc.wa.gov//wp-

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 17
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

**overdose deaths** that occurred in 2019.[30] Annual cancer deaths are roughly 150,[31] and the 2019 influenza season took 114 lives.[32] 58,297 Washingtonians died in 2019.[33] The facts are clear: gun related homicides are closer to the flu or cancer death rates, are less than one quarter of the traffic related fatalities, and are roughly 12%

---

content/uploads/dlm_uploads/2020/08/FFY2020WashingtonAnnualReport12.17.20.pdf. Last accessed September 25, 2022.

30 *Washington State Drug Overdose: Monthly Updates (updated 6-27-22), Chart 1.2.1*, Death By Residence of the Decedents. Available at: https://doh.wa.gov/sites/default/files/2022-02/wa_lhj_quarterly_report_18_1_2_pub.html#3_README_Notes. Last accessed: September 25, 2022.

31 American Cancer Society, Washington at a Glance data. Available at: https://cancerstatisticscenter.cancer.org/#!/state/Washington. Last accessed September 25, 2022.

32 Washington State Influenza Summary, 2019-20 season. Available at: https://doh.wa.gov/sites/default/files/legacy/Documents/5100//420-100-FluUpdateSeason2020.pdf. Last accessed September 25, 2022.

33 Washington Department of Health, Washington Tracking Network, All Cause Mortality. Available at:  https://fortress.wa.gov/doh/wtn/WTNPortal/#!q0=1026. Last accessed September 25, 2022.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

of the rate that drug overdoses—none of these other statistics implicates a constitutionally protected right as does ESSB 5078. Weighing the "public safety" concerns ESSB 5078 claims to address against its implications of a constitutionally protected right, especially in light of *Bruen*, the balance of harm favors Plaintiffs.

### (4) Protecting Constitutional Rights is in the Public Interest.

In *Fyock*, the court noted that "because constitutional rights are at issue, any infringement on the Second Amendment naturally harms the public." *Fyock*, at 1282. The court weighed that factor against the legislation's intent to cease gun violence (weighted in the public's favor), the 66% voter approval of the ordinance, and the public interest in protecting the City's police force and held that the public interest weighs in against an injunction. *Id.* at 1283. Notably, the court found that had Plaintiffs succeeded in proving a Second Amendment infringement, "the Court would necessarily invoke the Second Amendment to protect the minority against the ordinance's infringement on their rights. In that case, the consideration that a 66 percent majority passed the law would not weigh against an injunction." *Id.*

Of consideration is the fact that ESSB 5078 was adopted by the Washington legislature without vote of the People. Additionally, curbing the sales of certain firearms accessories cannot alone stop gun violence. Finally, because ESSB 5078 implicates the Second Amendment "this case involves serious questions going to the merits, a temporary stay is in the public interest." *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1069 (S.D. Cal. 2021). Thus, this Court should grant Plaintiffs' request to

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 19
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

enjoin ESSB 5078 at least throughout the pendency of this litigation, if not, through the issuance of a permanent injunction.

C. United States Supreme Court's Framework for Analyzing Second Amendment Violations Requires the Government to Demonstrate that the Regulation Fits within the Historical Tradition of the Second Amendment.

In June 2022, the United States Supreme Court substantially modified Second Amendment analysis in *Bruen*, where plaintiffs challenged a New York law that prohibited "a firearm without a license, whether inside or outside the home." *Bruen,* at *7-8. The Court reviewed the regulation and concluded that it violated the Second Amendment and the Fourteenth Amendment. *Id.*

In reviewing the New York law, the Supreme Court noted that recent Second Amendment cases under *Heller* and its progeny require a "two-step" analysis to determine whether a regulation of firearms violates the Second Amendment and concluded that the analysis was one step too many. *Id.* at 15 By dispensing of the two-step approach, the Court effectively ended the "means-end scrutiny" (i.e., strict, intermediate, rational basis scrutiny) review of Second Amendment questions. *Id.* Under the Court's new test, the single step inquiry/burden falls squarely on the government to prove that the regulation was "consistent with this Nation's historical tradition of firearm regulation." *Id.* To summarize the new/present Second Amendment constitutionality test, the Court held:

> To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 20
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.,* at * 20 citing: *Konigsberg v. State Bar of Cal.,* 366 U. S. 36, 50, n. 10 (1961).

Thus, this Court's inquiry will be limited to a single-step inquiry, which hinges on the question of whether ESSB 5078 "is consistent with this Nation's historical tradition."

    1. The "historical tradition" of Protecting United States Gun Ownership under the Second Amendment or the Washington State Constitution.

Important to the Court is the notion that "the Founders created a Constitution—and a Second Amendment— 'intended to endure for ages to come, and consequently, to be adapted to the various crises of human affairs.'" *Id.* at *19, citing *McCulloch* v. *Maryland*, 4 Wheat. 316, 415 (1819) (emphasis deleted).  Under this view, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, at *15 (June 23, 2022). Moreover, under this view, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.*, at *20 Citing *Konigsberg*,366 U.S., at 50, n. 10. Thus, inherent in the Second Amendment is the right to bear arms, and inherent in the Washington constitution is the right to defend oneself.  These two statements clearly grant individual rights to possess, purchase, and sell high capacity magazines without government interference.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

a.  *Bruen* Did Away with Analyzing the Question Under a Level of Scrutiny.

The Ninth Circuit presently applies the two-step approach to Second Amendment questions that the US Supreme Court employed prior to *Bruen*. See *Jones v. Bonta*, 2022 US Appl LEXIS 12657 (9th Cir. 2022). As discussed in Section IV(B), *supra*, this two-step evaluation was employed to challenge a municipal ordinance that banned "large capacity" (10 rounds or more). *Fyock*, at 996. See also: *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021). This analysis hinged on the connection between the right to bear arms and the right to use them. In *Jones v. Bonta*, the court held that the "right to obtain arms" and ammunition are implicit in "the right to keep and bear arms," which would become "meaningless" as these actions (bearing arms and possessing ammunition to use such arms) are "intimately connected." *Jones v. Bonta*, at citing *Jackson v. City of San Francisco*, 746 F.3d 966, 967 (9th Cir. 2014), which upheld the right to obtain ammunition as implicit within the Second Amendment "without bullets, the right to bear arms would be meaningless…Thus 'the right to possess firearms for protection implies a corresponding right'" to obtain the bullets necessary to use them.'") See also: *Luis v. United States,* 136 S.Ct. 1083, 1097: "There comes a point . . . at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." (Thomas, J., concurring in the judgment). The Court concluded: "[f]or this reason, the right to keep and bear arms includes the right to purchase them. And thus laws that burden

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

the ability to purchase arms burden Second Amendment rights." *Jones v. Bonta*, No. 20-56174, at *19-20 (9th Cir. May 11, 2022)

Notwithstanding the strong language regarding the intertwined nature of the gun and the ammunition, the Ninth Circuit applied intermediate scrutiny under the two-step Second Amendment review regime in *Fyock* as the regulation would be found if it "does not implicate the core Second Amendment right *or* does not place a substantial burden on that right." *Fyock*, at 998-99 citing *Jackson v. City and Cnty. of San Francisco,* 746 F.3d 953, 970 (9th Cir.2014). The Ninth Circuit concluded that while the regulation of high capacity magazines "likely reaches the core Second Amendment right, [] its resulting impact on that right is not severe." *Id.*, at 999.

More recently, the Ninth Circuit held that "large-capacity magazines provide significant benefit to soldiers and criminals who wish to kill many people rapidly. But the magazines provide at most a minimal benefit for civilian, lawful purposes." Under this analysis, the Court applied intermediate scrutiny. *Duncan v. Bonta*, 19 F.4th 1087, 1106 (9th Cir. 2021). Of course, Plaintiff's expert notes that this is not the case; rather, the ability to quickly reload can be life preserving in a matter of seconds. McKnight Aff., ¶¶ 10-4; 35-7. Such protection may be required at any time, but especially in time of calamity or other mass disaster as Mr. Brumback stated in his declaration. See Brumback Decl., ¶¶ 37-40 (discussing Cascadia Subduction Zone event where a mass earthquake event occurs at the Cascadia Subduction Zone, resulting in mass chaos and a potential scenario replete with criminal activity while

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

the police presence no longer exists). A need for such magazines is also supported by the history cited in *Heller* and *Bruen*, which dictates that the civilian need not only protect itself from harmful intruders, but that the civilian may find itself defending against government overreach: "The importance of [the Second Amendment] will scarcely be doubted by any persons who have duly reflected upon the subject. The militia is the natural defence of a free country against sudden foreign invasions, domestic insurrections, and domestic usurpations of power by rulers..." (*Heller*, at 667 quoting 2 J. Story, *Commentaries on the Constitution of the United States* § 1897, pp. 620–621 (4th ed. 1873)).

With the standard set forth in *Bruen*, the Ninth Circuit's analysis will be modified to review Second Amendment cases applying the *Bruen* single question analysis; this will be true, too, for the Washington Supreme Court in analyzing the question under the Washington Constitution, which is more individual-oriented. Analyzing the questions before this Court under *Bruen* will provide the Court with the basis for issuing the preliminary or permanent injunctive relief requested by Plaintiffs and demanded by the United States and Washington Constitutions.

## V. CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Plaintiff respectfully requests this Court to enter an order of temporary injunction to prevent Defendants from enforcing ESSB 5078 as implemented through RCW 9.41 and declare the same invalid as unconstitutional.

PLAINTIFFS' MOTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF- 24
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

**DATED** this 3rd day of October, 2022.

**SILENT MAJORITY FOUNDATION**

*/s/ Simon Peter Serrano*_____
Simon Peter Serrano, WSBA No. 54769
5238 Outlet Dr.
Pasco, WA 99301
(530) 906-9666
pete@silentmajorityfoundation.org

Counsel for Plaintiffs

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October 2022, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF system.

DATED this 3rd day of October 2022.

*/s/Madeline Johnson*
Madeline Johnson

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301