1  R. JULY SIMPSON, WSBA #45869
   WILLIAM MCGINTY, WSBA #41868
2  ANDREW HUGHES, WSBA #49515
   BRIAN HUNT ROWE, WSBA #56817
3  Assistant Attorneys General
   JEFFREY T. EVEN, WSBA #20367
4  Deputy Solicitor General
   KRISTIN BENESKI, WSBA #45478
5  First Assistant Attorney General
   Washington State Office of the Attorney General
6  7141 Cleanwater Dr. SW
   PO Box 40111
7  Olympia, WA 98504-0111
   (360) 709-6470

8

9                **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**
10                      **AT YAKIMA**

11   MICHAEL SCOTT BRUMBACK,          NO. 1:22-cv-03093-MKD
     an individual, et al.,

12                                    STATE DEFENDANTS'
                    Plaintiffs,       OPPOSITION TO PLAINTIFFS'
13                                    MOTION FOR INJUNCTIVE
            v.                        AND DECLARATORY RELIEF

14   ROBERT W. FERGUSON, in his       NOVEMBER 23, 2022
     official capacity as Washington  With Oral Argument: 11:00 a.m.
15   State Attorney General, et al.,

16                  Defendants,

17   ALLIANCE FOR GUN
     RESPONSIBILITY,

18
                    Defendant-Intervenor.
19

20

21

22

STATE DEFENDANTS'                          ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO PLAINTIFFS'                         Complex Litigation Division
MOTION FOR INJUNCTIVE AND                           7141 Cleanwater Dr. SW
DECLARATORY RELIEF                                       PO Box 40111
NO. 1:22-cv-03093-MKD                                Olympia, WA 98504-0111
                                                        (360) 709-6470

1

## TABLE OF CONTENTS

2    I.    INTRODUCTION ................................................................................. 1

3    II.   BACKGROUND ................................................................................. 1

4    III.  ARGUMENT...................................................................................... 3

5          A.   Preliminary Injunction Standard ................................................... 3

6          B.   Plaintiffs Are Unlikely to Succeed on the Merits ......................... 4

7                1.   LCMs do not fall within the Second Amendment's text ........ 5

8                     a.   LCMs are not "arms," and limiting their manufacture and
                          sale does not infringe on any protected conduct .............. 5
9
                     b.   The Second Amendment does not protect military-style
10                        weapons, such as firearms equipped with LCMs............. 7

11               2.   SB 5078 is part of a robust historical tradition of regulating
                      weapons commonly used in lawless interpersonal violence 14
12
                     a.   States have long regulated weapons that contribute to
13                        lawless violence............................................................ 15

14                   b.   SB 5078 resembles historical and traditional analogues 16

15               3.   Plaintiffs' state constitutional claim lacks merit ................. 19

16         C.   Plaintiffs Face No Irreparable Harm ........................................... 21

17         D.   The Equities and Public Interest Weigh Heavily Against an
                Injunction .................................................................................... 23
18
     IV.   CONCLUSION ................................................................................ 24
19

20

21

22

STATE DEFENDANTS'                              i              ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO PLAINTIFFS'                                             Complex Litigation Division
MOTION FOR INJUNCTIVE AND                                              7141 Cleanwater Dr. SW
                                                                            PO Box 40111
DECLARATORY RELIEF                                                      Olympia, WA 98504-0111
NO. 1:22-cv-03093-MKD                                                      (360) 709-6470

1

# I.    INTRODUCTION

2        Responding to a nationwide epidemic of gun violence, the Washington

3   Legislature enacted SB 5078 to limit the manufacture and sale of one particular

4   firearm accessory with a disproportionate role in mass shootings: large capacity

5   magazines (LCMs). Plaintiffs Michael Brumback and Gimme Guns, LLC seek

6   to overturn this common-sense law, and belatedly seek the extraordinary remedy

7   of a preliminary injunction, but their challenges lack merit. LCMs are not covered

8   by the Second Amendment because they are not "arms," nor are they necessary

9   for self-defense purposes; rather, they are non-essential accessories that enhance

10   the killing power of offensive or military-style weapons. And preliminary

11   research indicates that the regulation of LCMs fits comfortably within the long

12   history and tradition of regulating dangerous and unusual weapons to promote

13   public safety. Further, having slept on their asserted rights for months after SB

14   5078 went into effect, Plaintiffs are not entitled to an injunction because they fail

15   to demonstrate irreparable harm: Mr. Brumback's collection of LCMs is

16   untouched by Washington's law, which does not prohibit possessing these items,

17   and as a seller Gimme Guns stands to suffer reparable monetary injury at best.

18   Finally, Plaintiffs' wildly overbroad request to enjoin the law in its entirety is

19   inequitable and contrary to the public interest. Their Motion should be denied.

20

# II.    BACKGROUND

21        The Legislature passed Senate Bill 5078 (SB 5078) to address the epidemic

22   of gun violence and mass shootings that "threat[ens] . . . the public health and

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

safety of Washingtonians." Engrossed Substitute S.B. 5078, § 1, 67th Leg., Reg. Sess. (Wash. 2022). The Legislature found that LCMs—ammunition feeding devices capable of holding more than ten rounds—in particular contributed to "increase[d] casualties by allowing a shooter to keep firing for longer periods of time without reloading." *Id.* Citing the use of LCMs in "all 10 of the deadliest mass shootings since 2009," the Legislature noted that from 2009 to 2018 the use of LCMs in mass shooting events "caused twice as many deaths and 14 times as many injuries," whereas mass-shooting casualties declined while a federal ban was in effect. *Id.* Accordingly, the Legislature found that "restricting the sale, manufacture, and distribution of [LCMs] is likely to reduce gun deaths and injuries," without interfering with "responsible, lawful self-defense." *Id.*

To achieve this goal, SB 5078 prohibits LCMs' manufacture, distribution, import, and sale, with exemptions for military and law enforcement. The law does this while "allowing existing legal owners to retain the large capacity magazines they currently own." *Id.* No firearm is rendered inoperable due to SB 5078, because all guns capable of accepting LCMs—even AR-15s and the like—can fully function with magazines that hold 10 rounds or fewer. Busse Decl. ¶¶ 4–6.

In regulating LCMs, the Legislature was responding to the relatively recent, and increasingly salient, phenomenon of shooting deaths tied to the proliferation of these firearm accessories. SB 5078, § 1; *see also* Busse Decl. ¶ 3. While Plaintiffs point to a small number of historical weapons they contend are analogous to modern LCMs, in truth these lethal accessories did not become

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    popular with civilians until after 2004, when the Federal Assault Weapons Ban—

2    which also banned LCMs—lapsed. *See* Violent Crime Control and Law

3    Enforcement Act of 1994, Pub. L. No. 103-322, § 110103, 108 Stat. 1796; Busse

4    Decl. ¶ 3; *see also infra* at 18 n.6. Assault rifles and LCMs failed to gain

5    popularity with the civilian public until around 2007, when the gun industry

6    began aggressively marketing them as "tactical" weapons. *Id.* As assault weapons

7    and LCMs spread through the commercial market, their use in high-profile

8    shootings became increasingly common, as the Legislature found. SB 5078, § 1.

9        In response, Washington joined a growing list of states that have limited

10    the manufacture and sale of these deadly firearm accessories. *See* Giffords Law

11    Center, *Large Capacity Magazines*, https://giffords.org/lawcenter/gun-laws/poli

12    cy-areas/hardware-ammunition/large-capacity-magazines/ (last visited Oct. 20,

13    2022) (summarizing LCM laws from 12 states and D.C.). SB 5078 went into

14    effect on July 1, 2022. SB 5078, § 6. Plaintiffs filed the instant Motion three

15    months later, on October 3, 2022.

16                    **III.    ARGUMENT**

17    **A.    Preliminary Injunction Standard**

18        "A preliminary injunction is an extraordinary remedy never awarded as of

19    right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Its purpose

20    is "to preserve the status quo ante litem," and "it is not usually proper to grant the

21    moving party the full relief to which he might be entitled if successful at the

22    conclusion of a trial." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD                     3                     ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    (9th Cir. 1963). Plaintiffs seeking a preliminary injunction must establish that:

2    (1) their claims are likely to succeed on the merits; (2) they will likely suffer

3    irreparable harm in the absence of preliminary relief; (3) the balance of equities

4    tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S.

5    at 20. To succeed, Plaintiffs must satisfy all four *Winter* factors, even under the

6    Ninth Circuit's alternative sliding scale test. *All. for the Wild Rockies v. Cottrell*,

7    632 F.3d 1127, 1132, 1135 (9th Cir. 2011).

8    **B.    Plaintiffs Are Unlikely to Succeed on the Merits**

9           In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme

10   Court announced a new test for evaluating state firearm regulations under the

11   Second Amendment. __ U.S. __, 142 S. Ct. 2111 (2022). *Bruen* rejected the

12   intermediate-scrutiny analysis adopted by nearly every Circuit (including the

13   Ninth Circuit), in lieu of a text-and-history analysis. *Id.* at 2126. Under the new

14   test, a plaintiff challenging a firearm regulation must first show that "the Second

15   Amendment's plain text covers an individual's conduct" as relevant to the

16   regulation. *Id.* If a plaintiff can make this showing, the burden then shifts to the

17   defendant to "justify its regulation by demonstrating that it is consistent with the

18   Nation's historical tradition of firearm regulation." *Id.* at 2130.

19          Plaintiffs cannot prove a likelihood of success on the merits of their Second

20   Amendment claim because it fails at both steps. First, LCMs are not "arms"

21   within the meaning of the Second Amendment. Rather, LCMs are detachable

22   accessories that are not themselves "arms" or necessary for the functioning of

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    "arms." Moreover, the Second Amendment does not guarantee the right to keep

2    or bear military-style weapons that are not appropriate for lawful self-defense.

3    Second, Washington's law is part of a robust historical tradition of states and the

4    federal government limiting the manufacture and sale of the weapons most

5    commonly and destructively used for lawless interpersonal violence.

6          **1.**      **LCMs do not fall within the Second Amendment's text**

7              **a.**      **LCMs are not "arms," and limiting their manufacture**

8                        **and sale does not infringe on any protected conduct**

9         The initial inquiry under *Bruen* is whether the "plain text" of the Second

10   Amendment "covers an individual's conduct." 142 S. Ct. at 2126. Plaintiffs

11   largely skip this textual step, apparently assuming that the Second Amendment

12   guarantees Mr. Brumback the right to purchase, and Gimme Guns the right to

13   sell, as many LCMs as they want without restriction. *See* ECF No. 20 (Mot.) at

14   7–8; *see also id.* at 18 (incorrectly stating that the "lone inquiry" under *Bruen* is

15   a historical one). Plaintiffs' assumption is wrong: the plain text of the Second

16   Amendment does not cover LCMs, so Plaintiffs' claim fails at *Bruen*'s first step.

17        The Second Amendment provides: "A well regulated militia, being

18   necessary to the security of a free state, the right of the people to keep and bear

19   arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v.*

20   *Heller*, the Supreme Court defined "arms" as "'[w]eapons of offence, or armour

21   of defence'" or "'any thing that a man wears for his defence, or takes into his

22   hands, or useth in wrath to cast at or strike another.'" 554 U.S. 570, 581 (2008)

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    (quoting Founding-era sources). LCMs are not themselves "weapons of offence,

2    or armour of defence," nor are they used "to cast at or strike another." Instead,

3    they are merely a subclass of "ammunition feeding device[s]"—accessories that,

4    when added to weapons, make them more capable of mass murder. *See* Mot. at

5    21 (admitting that LCMs are "firearms accessories"). LCMs have no function

6    independent of a firearm, nor are they necessary components of firearms—in fact,

7    any firearm capable of accepting an LCM is also capable of accepting a magazine

8    that can hold 10 rounds or fewer. Busse Decl. ¶ 4. For this reason, LCMs do not

9    fit the Supreme Court's definition of "arms." *Cf. United States v. Cox*, 906 F.3d

10   1170, 1186 (10th Cir. 2018) ("A silencer is a firearm accessory; it's not a weapon

11   in itself (nor is it 'armour of defense'). Accordingly, it can't be a 'bearable arm'

12   protected by the Second Amendment.").

13        Thus, to succeed on their claim, Plaintiffs must show SB 5078 otherwise

14   interferes with their "right . . . to keep and bear arms." To be sure, restrictions on

15   the possession of parts and products that are necessary in order to use firearms

16   for lawful self-defense *may* implicate the Second Amendment. For example, in

17   *Jackson v. City and County of San Francisco*, the Ninth Circuit explained that

18   although the Second Amendment "does not explicitly protect ammunition, . . .

19   without bullets, the right to bear arms would be meaningless," and thus "[a]

20   regulation eliminating a person's ability to obtain or use ammunition" would

21   infringe upon the Second Amendment right by "mak[ing] it impossible to use

22   firearms for their core purpose." 746 F.3d 953, 967–68 (9th Cir. 2014). SB 5078,

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    however, does no such thing. While a magazine may be required for some

2    firearms to operate, a *large capacity* magazine is not. Busse Decl. ¶ 4. SB 5078

3    prohibits the manufacture and sale of one subclass of magazines commonly

4    associated with mass shootings and other violent crime, but leaves untouched

5    individuals' abilities to buy and sell ordinary magazines for use with any lawfully

6    possessed firearm. SB 5078 also leaves individuals (including Mr. Brumback)

7    free to possess and use the LCMs they already own. SB 5078 therefore does not

8    meaningfully limit any individual's ability to use firearms for any lawful

9    purposes. And although Mr. Brumback professes his "desire to purchase

10   additional 'high capacity magazines,'" Mot. at 14, he does not and cannot

11   demonstrate that any firearm he may own or choose to purchase in the future will

12   be rendered inoperable if he is limited to purchasing only standard-capacity

13   magazines—which remain widely available in Washington—going forward.[1]

### b. The Second Amendment does not protect military-style weapons, such as firearms equipped with LCMs

14
15   Plaintiffs' Second Amendment claim fails at *Bruen*'s first step for a

16   second, independent reason: the Second Amendment does not afford a right to

17   keep and bear military-style weapons, including firearms equipped with LCMs.

18

---

19   [1] As explained below, Gimme Guns cannot show any infringement of its

20   rights because "the Second Amendment does not independently protect a

21   proprietor's right to sell firearms." *Teixeira v. County of Alameda*, 873 F.3d 670,

22   690 (9th Cir. 2017).

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    "'[L]ike most rights, the right secured by the Second Amendment is not

2    unlimited . . . [it] was not a right to keep and carry any weapon whatsoever in any

3    manner whatsoever and for whatever purpose.'" *Bruen*, 142 S. Ct. at 2128

4    (quoting *Heller*, 554 U.S. at 626); *see also id.* at 2157 (Alito, J., concurring)

5    (*Bruen* does not call into question restrictions on "the kinds of weapons that

6    people may possess"). *Bruen* embraced the "historical tradition of prohibiting the

7    carrying of 'dangerous and unusual weapons.'" 142 S. Ct. at 2128 (quoting

8    *Heller*, 554 U.S. at 627). As the *Heller* Court explained, at the time of the

9    Founding, "[t]he traditional militia was formed from a pool of men bringing arms

10   'in common use at the time' for lawful purposes like self-defense." 554 U.S. at

11   624. It was "these kinds of weapons (which have changed over the years) [that]

12   are protected by the Second Amendment in private hands, while military-grade

13   weapons (the sort that would be in a militia's armory), such as machine guns, and

14   weapons especially attractive to criminals, such as short-barreled shotguns, are

15   not." *Friedman v. City of Highland Park, Ill.*, 784 F.3d 406, 408 (7th Cir. 2015)

16   (citing *Heller*, 554 U.S. at 624–25); *see also Heller*, 554 U.S. at 627 (stating that

17   "weapons that are most useful in military service—M–16 rifles and the like—

18   may be banned"); *Kolbe v. Hogan*, 849 F.3d 114, 131 (4th Cir. 2017) (same).

19   This textual-historical limitation is fatal to Plaintiffs' argument, as the Fourth and

20   Seventh Circuits have recognized. *See Kolbe*, 849 F.3d at 135; *Friedman*, 784

21

22

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1 | F.3d at 412.[2]

2 |      Notably, in *Kolbe*, the Fourth Circuit held that LCMs are not protected by

3 | the Second Amendment, relying on uncontroverted evidence to conclude that

4 | LCMs "are designed to enhance a shooter's capacity to shoot multiple human

5 | targets very rapidly"—a consummately, and uniquely, military function. 849

6 | F.3d at 125 (quotation omitted). LCMs "are particularly designed and most

7 | suitable for military and law enforcement applications." *Id.* The federal Bureau

8 | of Alcohol, Tobacco, Firearms and Explosives (ATF) has made this

9 | determination repeatedly, over decades, in reports on the importability of certain

10 | weapons. *See* ATF, *Report and Recommendation of the Importability of Certain*

11 | *Semiautomatic Rifles*, 6 (July 6, 1989), https://www.atf.gov/file/61761/downloa

12 | d ("[L]arge detachable magazines . . . provide[] . . . soldier[s] with a fairly large

13 | ammunition supply and the ability to rapidly reload. Thus, large capacity

14 | magazines are indicative of military firearms."); ATF, *Study on the Sporting*

15 | *Suitability of Modified Semiautomatic Assault Rifles* (Apr. 2018),

16 | https://www.atf.gov/resource-center/docs/guide/department-treasury-study-

17 |

18 |      [2] *Kolbe* and *Friedman* were both decided before *Bruen* abrogated the use

19 | of means–end scrutiny for Second Amendment claims. But because both decided

20 | that weapons equipped with LCMs are not protected under the Second

21 | Amendment's plain text, as informed by its history, their analysis on this point is

22 | consistent with and thus survives *Bruen*.

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    sporting-suitability-modified-semiautomatic/download (it is a "military feature

2    . . . to accept a large capacity military magazine"); ATF, *ATF Study on the*

3    *Importability of Certain Shotguns* (Jan. 2011), https://www.atf.gov/resource-

4    center/docs/january-2011-importability-certain-shotgunspdf/download  (quoted

5    in *Kolbe*, *supra*). The inherently military nature of LCMs was also a central

6    concern of Congress when it banned the transfer or possession of new LCMs

7    nationwide as part of the 1994 Assault Weapons Ban. As the House Report on

8    the bill explained, "the expert evidence is that the features that characterize a

9    semiautomatic weapon," including use of LCMs, "are not merely cosmetic, but

10   do serve specific, combat-functional ends." H.R. Rep. No. 103-489 (1994),

11   *reprinted in* 1994 U.S.C.C.A.N. 1820. "High-capability magazines, for example,

12   make it possible to fire a large number of rounds without re-loading, then to

13   reload quickly when those rounds are spent." *Id.* "Furthermore, expended

14   magazines can be quickly replaced, so that a single person with a single assault

15   weapon can easily fire literally hundreds of rounds within minutes." *Id*.

16        Befitting their role as tools of war, designed to kill as many enemies as

17   possible, LCMs have limited—if any—utility for self-defense. *See Duncan v.*

18   *Bonta*, 19 F.4th 1087, 1104–05 (9th Cir. 2021), *cert. granted, judgment vacated*

19   *on other grounds*, 142 S. Ct. 2895 (2022), and *vacated and remanded*, 49 F.4th

20   1228 (9th Cir. 2022). Indeed, "[s]tudies of 'armed citizen' stories collected by

21   the National Rifle Association"—stories collected to highlight the supposed need

22   for more guns—show that "that the average number of shots fired in self-defense

STATE DEFENDANTS'                    10              ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO PLAINTIFFS'                                  Complex Litigation Division
MOTION FOR INJUNCTIVE AND                                     7141 Cleanwater Dr. SW
                                                                  PO Box 40111
DECLARATORY RELIEF                                           Olympia, WA 98504-0111
NO. 1:22-cv-03093-MKD                                           (360) 709-6470

1    was [between] 2.2 and 2.1." *Kolbe*, 849 F.3d at 127; *see also* Allen Decl. ¶¶ 9-10,

2    16. According to Seattle Police Chief Adrian Diaz, while LCMs may be

3    appropriate for certain law enforcement functions in "extremely rare" cases,

4    "there is no place for large-capacity magazines in civilian self-defense." Diaz

5    Decl. ¶¶ 11–15; *see also id.* at ¶ 18 ("In fact, firing more than a handful of rounds

6    in self-defense may be dangerous because it increases the odds of a bystander

7    being hit by a stray bullet[.]"); *see also* National Law Enforcement Partnership

8    to End Gun Violence, *Partnership Report* (July 2021) at 70–71,

9    https://www.policinginstitute.org/publication/national-law-enforcement-

10   partnership-to-prevent-gun-violence-nleppgv-2010-2021-partnership-report/.

11   Indeed, in 25 years with the Seattle Police Department, Chief Diaz could recall

12   only *one* instance in which a civilian fired more than three rounds in what was

13   even arguably self-defense. Diaz Decl. ¶ 16.

14          By contrast, LCMs are routinely used in mass shootings and other high-

15   profile criminal activity to devastating effect, as the Legislature found. SB 5078,

16   § 1; *see also* H.R. Rep. 117-346 (2022) at 21–22 (discussing, in detail, how

17   "[l]arge capacity magazines have been used in many high-profile mass

18   shootings"); *see also* Klarevas Decl., Table 2. According to Dr. Klarevas, one of

19   the foremost experts on mass shootings, LCMs are "force multipliers when it

20   comes to kill potential." *Id.* at ¶ 15. LCMs have been used in at least two-thirds

21   of gun massacres since 1990, "result[ing] in a 58 percent increase in average

22   fatalities per incident" compared to mass shootings that did not involve LCMs.

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    *Id.* at ¶ 16.

2            In short, consistent with their purpose of "enhanc[ing] a shooter's capacity

3    to shoot multiple human targets very rapidly," *Kolbe*, 849 F.3d at 125, LCMs are

4    dangerous accessories "that are most useful in military service," *Heller*, 554 U.S.

5    at 627, and therefore not protected by the Second Amendment.

6            Plaintiffs nonetheless suggest LCMs should be protected by the Second

7    Amendment simply because there are a lot of them in the United States. Mot. at

8    6. Yet Plaintiffs' own complaint alleges that just 15% of all American adults have

9    ever owned an LCM. ECF No. 1-4 ¶ 45. And almost a third of Americans live in

10   states that restrict these items. Klarevas Decl. ¶ 20. In any case, whether LCMs

11   are commonly *possessed* is irrelevant. The question under *Heller* is whether

12   LCMs are in "common *use . . .* for lawful purposes like self-defense." *Heller*, 554

13   U.S. at 625. Here, the evidence shows they are not. Allen Decl. ¶¶ 9–10, 16.

14           Plaintiffs' popularity-contest argument also fails as a legal matter. As the

15   Seventh Circuit pointed out in *Friedman*, Tommy guns were "all too common"

16   during the Prohibition era, but this "popularity d[oes]n't give" dangerous military

17   weapons "constitutional immunity." 784 F.3d at 408. Indeed, *Heller* makes clear

18   that "[t]here is no Second Amendment protection for . . . 'weapons that are most

19   useful in military service'"; it does not "make[] an exception for such weapons if

20   they are sufficiently popular." *Kolbe*, 849 F.3d at 142 (quoting *Heller*, 554 U.S.

21   at 627). Plaintiffs' argument leads to the absurd conclusion that a firearm

22   accessory's constitutionality turns on whether the gun industry chooses to engage

STATE DEFENDANTS'                                    12                    ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO PLAINTIFFS'                                                        Complex Litigation Division
                                                                                  7141 Cleanwater Dr. SW
MOTION FOR INJUNCTIVE AND                                                              PO Box 40111
DECLARATORY RELIEF                                                                Olympia, WA 98504-0111
NO. 1:22-cv-03093-MKD                                                                 (360) 709-6470

1    in mass campaigns to flood the market. *See* Busse Decl. ¶¶ 3, 6–7. Moreover,

2    "relying on how common a weapon is at the time of litigation would be circular"

3    because a weapon's popularity (or not) often depends on whether it is banned or

4    not. *Friedman*, 784 F.3d at 409; *see also Kolbe*, 849 F.3d at 141.[3]

5        *Fyock v. Sunnyvale* is not to the contrary. *Contra* Mot. at 17–18. There, the

6    court—while upholding a ban on LCMs—noted that "to the extent that certain

7    firearms capable of use with a magazine . . . are commonly possessed by law-

8    abiding citizens for lawful purposes, . . . there must also be some corollary, albeit

9    not unfettered, right to possess the magazines necessary to render those firearms

10   operable." *Fyock*, 779 F.3d at 998. Here, though, Plaintiffs do not allege that *any*

11   firearms are rendered inoperable by SB 5078's restrictions. Nor could they, for

12   the reasons discussed above. Further, *Fyock* explicitly notes that any right to

13   possess magazines is "not unfettered." *Id.* at 998 (echoing *Heller*, 554 U.S. 626).

14   By limiting only the manufacture and sale of only the most dangerous magazines,

15   while otherwise leaving individuals free to possess as many standard-capacity

16   magazines and as much ammunition as they desire, Washington's law plainly

17   does not infringe any right to keep or bear arms.

18   _____

19        [3] Plaintiffs rely on the district court's opinion in *Fyock* to support their

20   "common use" argument (Mot. at 17–18), but on review, the Ninth Circuit

21   expressly cast doubt on this portion of the district court's opinion. *See Fyock v.*

22   *Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015).

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

### 2.    SB 5078 is part of a robust historical tradition of regulating weapons commonly used in lawless interpersonal violence

SB 5078 is consistent with a long history and tradition in the United States of regulating weapons associated with interpersonal violence. Thus, even if the manufacture and sale of LCMs were arguably protected under the Second Amendment's text (and they are not), the law still satisfies *Bruen*'s second step.

If a regulation falls within the Second Amendment's text, *Bruen*'s second step requires courts to examine whether the regulation "is consistent with the Nation's historical tradition of firearms regulation." 142 S. Ct. at 2126. This analysis requires a "nuanced approach," focusing on "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2132–33. The "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.*

This analysis requires extensive and novel historical research and analysis. Rivas Decl. ¶¶ 4–7; Spitzer Decl. ¶¶ 4–5; Cornell Decl. ¶¶ 7–12. Defendants have engaged expert historians to provide evidence on precisely this issue, and those experts have begun (but not completed) the work required to place SB 5078 in historical context. *Id.* But even at this early stage, the available information shows that Plaintiffs are unlikely to prevail on the merits because SB 5078 is consistent with the nation's history and tradition of weapons regulations.

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### a. States have long regulated weapons that contribute to lawless violence

SB 5078 follows a long American tradition of regulating weapons that contribute to interpersonal violence when they proliferate. Since the Founding, the same basic pattern has repeated itself. First, someone invents a firearm or firearm accessory. Spitzer Decl. ¶ 6. At first, there is no impact on society. And for weapons such as the Puckle Gun, which never make it beyond a prototype, or the 1891 Browning .45 cited by Plaintiffs (*see* Mot. at 4) that also never saw production, their impact remains negligible. *Id.* However, if the technology can be readily manufactured and works as intended, the military will often adopt it. *Id.* at ¶ 7. Afterward, military-style weapons often wind up on the commercial market and pass into civilian use. If so, they sometimes (though not always) contribute to criminal violence that terrorizes the public. Here is where, time and again, states decide to regulate the weapons. *Id.* at ¶ 8.

This three-phase pattern shows how, throughout history, weapons have typically been regulated if their spread leads to widespread societal problems. Weapons regulations that follow this pattern are useful analogues because they are "comparably justified" as a response to changing technology and new threats of violence and terror, and they "impose a comparable burden on the right of armed self-defense" by leaving law-abiding citizens free to access and use other weapons appropriate for that purpose. *Bruen*, 142 S. Ct. at 2133.

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1         **b.**     **SB 5078 resembles historical and traditional analogues**

2         Regulations of revolvers in the 19th century and machine guns in the early

3 20th century follow the same pattern, emerging as analogues to SB 5078.[4]

4         The first practical and reliable multi-shot revolver pistol was invented by

5 Samuel Colt in the 1830s. Rivas Decl. ¶ 10; Spitzer Decl. ¶ 8. But it was not until

6 several decades later that government patronage gave him a market for his pistol,

7 first from Southern states in the lead-up to secession, and then from the Union

8 after the Civil War began. Spitzer Decl. ¶¶ 8–9; Rivas Decl. ¶ 10. The war

9 prompted the creation of the infrastructure necessary to manufacture staggeringly

10 large quantities of pistols. *Id*. This, in turn, ultimately made these weapons

11 available to and affordable for American consumers. *Id*.

12         The spread of cheaper pistols through the country introduced, for the first

13 time in U.S. history, rampant gun violence. Rivas Decl. ¶¶ 10–11; Spitzer Decl.

14 ¶ 9. In response, states enacted laws barring concealed carry, open carry, and the

15 brandishing or display of weapons, as well as deterrent measures such as high

16 occupation and sales taxes. Spitzer Decl. ¶ 9; Rivas Decl. ¶ 13. In the 1880s, some

17 states specifically regulated "pocket pistols"—a subclass of the Colt

18 six-shooter—in a way closely resembling SB 5078. Rivas Decl. ¶¶ 18–20. Pocket

19 pistols were small firearms designed to be concealed from public view and, like

20 _____

21       [4] These are by no means the only two analogues; they are used here for

22 illustrative purposes at this early stage of the litigation. Spitzer Decl. ¶¶ 19–20.

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    LCMs, were often used to commit lawless interpersonal violence and create a

2    climate of increased public fear. *Id.* at ¶ 19. In response, state legislatures singled

3    out these particular weapons for stricter regulation. For example, sales of pocket

4    pistols to the general public were prohibited by both Tennessee and Arkansas in

5    1881, even as these states continued to allow the sale of the larger, less

6    concealable versions of the Colt pistol that did not present the same danger or

7    pose the same threat to public safety and well-being. *See id.* at ¶¶ 15–20. By

8    preserving access to other types of firearms, the restrictions on pocket pistols

9    imposed a minimal burden on the right of armed self-defense. These laws

10    remained in force well into the 20th century. *Id.* at ¶ 19.

11    This same pattern repeated itself in the regulation of machine guns.

12    Weapons capable of firing rounds in rapid succession can be traced to guns of the

13    late 19th and early 20th centuries. Spitzer Decl. ¶ 10. The modern-day machine

14    gun was initially used solely by the military. *Id.* at ¶ 7. But at the conclusion of

15    World War I, manufacturers of machine guns needed a new market for their

16    invention and began to market the machine gun to civilians. *Id.* The most famous

17    of these was the Tommy gun, capable of holding up to 100 rounds. *Id.* These guns

18    were advertised to the public as the "ideal weapon for the protection of large

19    estates, ranches, plantations, etc." *Id.* at Ex. A. Instead, however, these guns

20    caused fear and public outcry due to their use in high-profile robberies and

21    gangland shootings. *Id.* at ¶ 10. Ultimately, 30 states banned machine guns, and

22    the 1934 National Firearms Act sharply limited their circulation by imposing a

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   $200 tax, at a time when the average annual income was $1780.[5] *Id.* This resulted

2   in sales virtually ceasing by 1937. *Id*. Subsequently, in 1968, Congress banned

3   the import of machine guns into the United States, and in 1986, Congress banned

4   the transfer or possession of any machine gun unless it was lawfully possessed

5   before 1986. Pub. L. Nos. 90-618 and 99-308 (1968). These restrictions are

6   wholly consistent with the Second Amendment. *See Heller*, 554 U.S. at 624.

7        These examples highlight that the regulation of new and dangerous firearm

8   technology is a *repeating* pattern throughout our history, from the adoption of the

9   Fourteenth Amendment to the twentieth century and beyond. SB 5078 continues

10  this tradition: it follows the same basic historical pattern, responds to the same

11  essential concerns, and creates a comparably minimal burden on the right to self-

12  defense. Although LCMs in their modern form first emerged as military items

13  several decades ago, they did not begin to cause widespread social harm until

14  much later.[6] In the late 1980s, LCMs first became linked to crime and mass

15  shootings, leading to their inclusion in the Federal Assault Weapons Ban in 1994.

16  

---

17       [5] https://www.washingtonpost.com/history/2019/08/09/they-were-killers-

18  with-machine-guns-then-president-went-after-their-weapons/.

19       [6] Plaintiffs cite to weapons predating this period, Mot. at 4–5, but all were

20  either lever or bolt action (*i.e.*, did not involve magazines); held ten or fewer

21  rounds; or, in the case of the supposed "[p]istols" with "20 round magazines as

22  early as 1893," are factually inaccurate. *See id.* and sources cited therein.

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    Spitzer Decl. ¶¶ 14–15; H.R. Rep. 103-489 (discussing high-profile shootings

2    involving LCMs). Following the lapse of that ban in 2004, LCMs reemerged as

3    a social threat—and in particular, starting in 2007, the gun industry made a

4    concerted push to aggressively market and sell LCMs and assault weapons to the

5    civilian public. Busse Decl. ¶ 3. Since then, as LCMs have become more common

6    and more civilians have obtained the military capability to fire more than 10

7    rounds without reloading, their use in mass shootings and other heinous crimes

8    has had devastating results. Klarevas Decl. ¶¶ 8–18. Although mass murder is as

9    old as time, gun massacres are a modern phenomenon that is getting worse—

10   driven by the proliferation of military-style weapons and accessories. *Id*. From

11   Newtown to Las Vegas, Parkland to Tucson, Orlando to Uvalde, over and over

12   again, LCMs have enabled the most horrific mass shootings of our time. *Id.*,

13   Table 2; H.R. Rep.117-346 at 21–22.

14        Like the revolver bans of the Reconstruction era and the machine gun bans

15   a few decades later, SB 5078 is a narrow limitation on a particular type of

16   hardware associated with high-profile violence and public terror, and it imposes

17   a minimal (if any) burden on legitimate self-defense. Because SB 5078 is

18   analogous to historical weapons regulation in the United States, Plaintiffs cannot

19   meet their burden to show a likelihood of success on their Second Amendment

20   claim, and their request for a preliminary injunction should be denied.

21        **3.    Plaintiffs' state constitutional claim lacks merit**

22        Plaintiffs also cannot show that the SB 5078 violates article I, section 24

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   of the Washington Constitution—nor do they make any attempt to do so in their

2   Motion. "[T]he firearm rights guaranteed by the Washington Constitution are

3   distinct from those guaranteed by the United States Constitution" and "should be

4   interpreted separately from the Second Amendment to the federal constitution."

5   *State v. Jorgenson*, 312 P.3d 960, 963 (Wash. 2013). The article I, section 24 test

6   asks, first, whether the regulation is "reasonably necessary to protect public

7   safety and substantially related to legitimate ends sought." *Id.* at 156. Courts then

8   "balance the public benefit from the regulation against the degree to which it

9   frustrates the purpose of the constitutional provision." *Id.*

10      Plaintiffs do not discuss or attempt to meet this standard, and so have failed

11   to carry their burden to demonstrate a likelihood of success. Nor could they. At

12   step one, SB 5078 is substantially related to its purpose of protecting the public

13   health and safety of Washingtonians, specifically from the well-established

14   dangers of LCMs used in mass shootings and other violent crime, by

15   prospectively limiting their sale. *See* SB 5078, § 1; Klarevas Decl. at ¶¶ 17–26.

16      At step two, SB 5078 has a clear public benefit and does not unduly

17   frustrate the purpose of article I, section 24 for at least three reasons. First,

18   SB 5078 only bars the manufacture and sale of a subset of particularly deadly

19   accessories, leaving Washingtonians free to choose any lawful firearm they want

20   to protect themselves so long as its magazine holds 10 rounds or fewer. Studies

21   of armed self-defense incidents show that the average number of shots fired is

22   around 2.2. Allen Decl. ¶ 9. Experienced law enforcement rarely use more than

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   10 rounds in their armed encounters. Diaz Decl. ¶13. By contrast, "there is no

2   place for large-capacity magazines in civilian self-defense" because it only takes

3   a few rounds to drive away an aggressor. *Id.* at ¶ 15. Second, SB 5078 does not

4   ban the possession of LCMs, so individuals who already lawfully possess LCMs,

5   including Mr. Brumback, may continue to do so. Third, LCMs are not "arms"

6   under the Washington Constitution, under which "arms" are "instruments that are

7   designed as weapons traditionally or commonly used by law abiding citizens for

8   the lawful purpose of self-defense." *City of Seattle v. Evans*, 366 P.3d 906, 913

9   (Wash. 2015) (holding straight-blade knives are not protected "arms"). Again,

10   detachable magazines are not weapons, they are accessories—and a firearm will

11   function perfectly well with a standard-capacity magazine. *Supra* at B.1.a.

12   **C.   Plaintiffs Face No Irreparable Harm**

13       Plaintiffs' Motion must also be denied because, regardless of the merits of

14   their claims, neither Mr. Brumback nor Gimme Guns will suffer any irreparable

15   harm while this litigation is pending. Plaintiff Brumback—a long-time owner of

16   multiple LCMs, *see* Mot. at 17; ECF No. 1-8 ¶¶ 13, 31—cannot be irreparably

17   harmed by a law that has no effect whatsoever on the LCMs he already possesses.

18   Even assuming for argument's sake that there were a constitutional right to "keep

19   and bear" LCMs, such a right is unaffected by SB 5078, which does not prohibit

20   or restrict the possession of LCMs. *See Heller*, 554 U.S. at 582 ("[T]he most

21   natural reading of 'keep arms' in the Second Amendment is to 'have weapons.'").

22   And Mr. Brumback does not assert that he requires additional LCMs to

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    adequately equip himself for lawful self-defense—nor could he credibly do so.

2    *See supra* at 10–11. Though Mr. Brumback may not sell his LCMs or add to his

3    collection, *see* Mot. at 17, those inconveniences pose no constitutional

4    emergency warranting the "extraordinary remedy" of a preliminary injunction.

5    *Winter*, 555 U.S. at 24.

6        Gimme Guns's only asserted injury is that it is "prohibited from selling"

7    LCMs. Mot. at 18–19. Such "monetary damages" are by definition not

8    irreparable. *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1073 (9th

9    Cir. 2014). Nor has Gimme Guns suffered any constitutional injury, because—

10    even if one assumes that LCMs are "arms," which they are not—the right to "keep

11    and bear" arms does not encompass the right to sell them. "Nothing in the specific

12    language of the [Second] Amendment suggests that sellers fall within the scope

13    of its protection," and "no historical authority suggests that the Second

14    Amendment protects an individual's right to *sell* a firearm unconnected to the

15    rights of citizens to 'keep and bear' arms." *Teixeira*, 873 F.3d at 687, 683, 686–

16    87. Because Gimme Guns's rights as a seller are nonexistent, or at least no greater

17    than its customers' rights as buyers, *id.* at 682, it fails to show irreparable harm.

18        Plaintiffs' long delay in filing their Motion further underscores the absence

19    of harm. SB 5078 was signed into law in March 2022 and went into effect on July

20    1. Though Plaintiffs could have moved for a preliminary injunction at that time,

21    they instead waited for more three months after SB 5078 went into effect, and

22    over two months after removal to this Court. Delays of two months, or waiting

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    until a challenged measure has gone into effect, connote a lack of urgency and

2    indicate an absence of irreparable harm. *See, e.g.*, *Smith v. Biden*, No. 1:21-cv-

3    19457, 2021 WL 5195688, at *9 (D.N.J. Nov. 8, 2021) ("the fact that Plaintiffs

4    waited nearly two (2) months to seek relief dispels any claim of irreparable

5    harm"); *Wise v. Inslee*, 2:21-cv-0288-TOR, 2021 WL 4951571, at *6 (E.D. Wash.

6    Oct. 25, 2021) (no irreparable harm where Plaintiffs filed their complaint nearly

7    two months after the challenged measure was published and moved for a

8    preliminary injunction eleven days after the measure went into effect); *California*

9    *v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) ("Plaintiffs' long delay before seeking

10   a preliminary injunction implies a lack of urgency and irreparable harm")

11   (citation and internal quotation marks omitted). And while Plaintiffs filed *a*

12   motion for preliminary relief with the state court months after SB 5078 was

13   signed into law (ECF Nos. 1–5), they made no effort to re-note or re-file it in this

14   Court until August 31, 2022, more than a month after removal. Simpson Decl.,

15   Ex. A. A preliminary injunction would not preserve the status quo, but would

16   improperly and needlessly turn back the clock by several months.

17   **D.    The Equities and Public Interest Weigh Heavily Against an Injunction**

18       Plaintiffs agree that "[w]hen a party seeks a preliminary injunction against

19   the government, the balance of the equities and public interest factors merge."

20   Mot. at 16 (quoting *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th

21   Cir. 2014). But they fail to show that these factors weigh in their favor. First,

22   since Plaintiffs' constitutional claims lack merit, their assertion that "protecting

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    constitutional rights is in the public interest" falls flat. Mot. at 21–22. Second,

2    Plaintiffs ignore the Legislature's well-substantiated findings that LCMs are used

3    to commit mass shootings and other violent crimes, while callously minimizing

4    the deaths of gun-violence victims in Washington. *Id.* at 19–20. Plaintiffs attempt

5    to contrast gun deaths with traffic fatalities, drug overdoses, and disease, *id.*—

6    but all are significant social problems that the Legislature has appropriately acted

7    to address. *See, e.g.*, Wash. Rev. Code § 43.59 (traffic safety); S.B. 5380, ch. 314,

8    2022 Wash. Sess. Laws (opioid use disorder treatment and prevention); Wash.

9    Rev. Code § 70.26 (pandemic influenza preparedness). SB 5078, too, targets a

10   threat to public health and safety, and the equities and public interest weigh

11   strongly against enjoining it. While no single measure can "alone stop gun

12   violence," Mot. at 21, restrictions on LCMs are demonstrably effective, while

13   LCMs' proliferation has increased mass-shooting incidents, injuries, and deaths.

14   *Supra* at 11; Klarevas Decl. at 17–26. The equities and public interest also weigh

15   strongly against the sweeping injunction against *any* enforcement of SB 5078 that

16   the two Plaintiffs seek. *See E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832,

17   855–56 (9th Cir. 2020) (relief should be no broader "than necessary to provide

18   complete relief to the plaintiffs before the court"). Plaintiffs' failure to satisfy

19   these factors independently forecloses their request for injunctive relief.

20                          **IV.   CONCLUSION**

21        Plaintiffs' motion for preliminary injunction should be denied.

22

STATE DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTIVE AND
DECLARATORY RELIEF
NO. 1:22-cv-03093-MKD

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    DATED this 24th day of October 2022.

2                                    ROBERT W. FERGUSON
                                     Attorney General
3
                                     s/ Andrew Hughes
4                                    ANDREW HUGHES, WSBA #49515
                                     R. JULY SIMPSON, WSBA #45869
5                                    WILLIAM MCGINTY, WSBA #41868
                                     BRIAN HUNT ROWE, WSBA #56817
6                                    Assistant Attorneys General
                                     JEFFREY T. EVEN, WSBA #20367
7                                    Deputy Solicitor General
                                     KRISTIN BENESKI, WSBA #45478
8                                    First Assistant Attorney General
                                     Complex Litigation Division
9                                    7141 Cleanwater Dr. SW
                                     PO Box 40111
10                                   Olympia, WA 98504-0111
                                     (360) 709-6470
11                                   July.Simpson@atg.wa.gov
                                     William.McGinty@atg.wa.gov
12                                   Andrew.Hughes@atg.wa.gov
                                     Brian.Rowe@atg.wa.gov
13                                   Jeffrey.Even@atg.wa.gov
                                     Kristin.Beneski@atg.wa.gov
14                                   Attorneys for Defendants
                                     Robert W. Ferguson and John R. Batiste
15

16

17

18

19

20

21

22

STATE DEFENDANTS'                          25        ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO PLAINTIFFS'                                    Complex Litigation Division
                                                                 7141 Cleanwater Dr. SW
MOTION FOR INJUNCTIVE AND                                            PO Box 40111
DECLARATORY RELIEF                                             Olympia, WA 98504-0111
                                                                    (360) 709-6470
NO. 1:22-cv-03093-MKD

1

**PROOF OF SERVICE**

2          I hereby certify that I electronically filed the foregoing with the Clerk of

3    the Court using the CM/ECF System, which in turn automatically generated a

4    Notice of Electronic Filing (NEF) to all parties in the case who are registered

5    users of the CM/ECF system.

6          I declare under penalty of perjury under the laws of the United States of

7    America that the foregoing is true and correct.

8          DATED this 24th day of October 2022 at Seattle, Washington.

9

10                                        *s/ Andrew Hughes*
                                          ANDREW HUGHES, WSBA #49515

11

12

13

14

15

16

17

18

19

20

21

22

STATE DEFENDANTS'                    26        ATTORNEY GENERAL OF WASHINGTON
OPPOSITION TO PLAINTIFFS'                            Complex Litigation Division
MOTION FOR INJUNCTIVE AND                               7141 Cleanwater Dr. SW
                                                             PO Box 40111
DECLARATORY RELIEF                                       Olympia, WA 98504-0111
NO. 1:22-cv-03093-MKD                                       (360) 709-6470