Simon Peter Serrano, WSBA No. 54769
Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301
(509) 567-7083
pete@silentmajorityfoundation.org
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### AT YAKIMA

| | |
|---|---|
| MICHAEL SCOTT BRUMBACK, an individual, and GIMME GUNS, a sole proprietorship, | NO. 1:22-cv-03093-MKD |
| Plaintiffs, | |
| v. | PLAINTIFFS' REPLY TO DEFENDANTS' AND INTEVENOR'S RESPONSE TO PLAINTIFFS' MOTION FOR INJUNCTIVE AND DECLARATORY RELIEF |
| ROBERT W. FERGUSON, in his official capacity as Washington State Attorney General, *et al.,* | |
| Defendants, | November 23, 2022 |
| ALLIANCE FOR GUN RESPONSIBILITY, | With Oral Arguments 11:00 AM |
| Defendant-Intervenor | |

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................... 1

   A.  Failed Policy Should Not be Replicated as it is with SB 5078. ......................1

   B.  US History does not support magazine bans....................................................3

II.   ARGUMENT.......................................................................................... 4

   A.  Recent United States Supreme Court Cases Have Readily Addressed the Reach of the Second Amendment. ..........................................................................4

   B.  Historical Analysis of the Second Amendment. .............................................5

   C.  The State and Intervenor have mislabeled the Magazines as Uncommon, Dangerous/Military Weapons that pose Extreme Hazards. ..................................8

III. CONCLUSION AND RELIEF SOUGHT................................................................ 12

PLAINTIFF'S REPLY MOTION
FOR INJUNCTIVE AND
DECLARATORY RELIEF
1:22-cv-03093-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

# I.  <u>INTRODUCTION</u>

Notwithstanding the deployment of creative terminology for commonly owned firearm magazines, Defendants' and Defendant-Intervenor's Responses suffer from the same fundamental defects and will be addressed in one Reply to spare the Court duplicative filings. Neither party successfully showed that United States Constitutional history allows for the ban on firearms magazines sales, and neither party showed that the risk of harm associated with granting Plaintiffs' request balances in the public's favor. For those reasons, this Court should GRANT Plaintiffs' Motion.

### A.    Failed Policy Should Not be Replicated as it is with SB 5078.

"A law's existence can't be the source of its own constitutional validity." *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015). Plaintiffs request to enjoin the State of Washington's Engrossed Substitute Senate Bill 5078 ("SB 5078"), which modifies Revised Code of Washington ("RCW") Section 9.41, serves the public interest. This interest is evidenced by the Supreme Court order vacating decisions from federal courts of appeals that had upheld bans on common rifles or magazines in Maryland, California, and New Jersey, as well as a ban on open carry in Hawaii following its decision in *New York State Rifle & Pistol Association v. Bruen*.[1]

─────────────

1 *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). U.S.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

The only historical tradition Defendants and Defendant-Intervenor cite to is the *Public Safety and Recreational Firearms Use Protection Act* of 1994 ("Firearms Act"). The Firearms Act treated Large Capacity Magazines as firearms:

> Large Capacity Ammunition Feeding Devices Treated as Firearms.-- Section 921(a)(3) of such title is amended in the first sentence by striking 'or (D) any destructive device.' and inserting '(D) any destructive device; or (E) any large capacity ammunition feeding device.' *Id.*, at Section 4(c).

Significantly, the Act treated magazines as firearms, undermining the State's and Intervenor's claims that magazines are not covered by the Second Amendment. The ban was limited to 10 years and had little effect in curbing gun violence.[2]

Supreme Court, Order List, June 30, 2022, https://bit.ly/3OBdFd7. *Bianchi v. Frosh*, 858 Fed. Appx. 645 (4th Cir. 2021), (Maryland ban on common semiautomatic rifles); *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen. N.J.*, 974 F.3d 237 (3d Cir. 2020) (upholding confiscation of magazines over 10 rounds); *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) (upholding magazine confiscation); *Young v. State of Hawaii*, 992 F.3d 765 (9th Cir. 2021) (en banc), (ban on open carry). See also: *Rocky Mountain Gun Owners, et al. v. Town of Superior*, 22-cv-01685-RM-NRN, Dkt. No.: 37 (Order on TRO, restraining a Colorado Town from banning such magazines) (August 9, 2022).

2 National Institute of Justice Research in Brief, *Impacts of the 1994 Assault Weapons Ban: 1994-96.* Available at: https://www.ojp.gov/pdffiles1/173405.pdf.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

## B.    US History does not support magazine bans.

Pursuant to the analysis in *Bruen*, the defining question for firearms regulations is whether the regulation is "consistent with the Second Amendment's text and historical understanding." *Bruen*, at 2118. SB 5078 is not "consistent with the Second Amendment's text and historical understanding," and therefore SB 5078 and its amendments to RCW 9.41 must be declared invalid. Before 1900, there were no ammunition capacity limit laws in any state; the first such laws were enacted by six states during Prohibition in the 1920s. All were later repealed.[3]

The United States Supreme Court held: "Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in *Heller,* we held that individual self-defense is 'the *central component*' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) citing *District of Columbia et al. v. Heller,* 554 U.S. 570, 597 (2008). The Supreme Court continued, concluding that the right to bear arms is "fundamental to our scheme of ordered liberty." *Id.* at 767. The Ninth Circuit has held that:

> One cannot truly enjoy a constitutionally protected right when the State is permitted to snuff out the means by which he exercises it; one cannot keep arms when the State prevents him from purchasing them. *Cf. Jackson,* 746 F.3d at 967 ('[W]ithout bullets, the right to bear

Last Accessed: November 7, 2022.

3 David B. Kopel, *The History of Firearms Magazines and of Magazine Prohibition*, 78 Albany L. Rev. 849 (2015).

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

arms would be meaningless.'); *Ezell v. City of Chicago,* 651 F.3d 684, 704 (7th Cir. 2011) ('The right to possess firearms for protection implies a corresponding right to ... maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective."). Thus, the Second Amendment 'right must also include the right to *acquire* a firearm.' *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F.Supp.2d 928, 930 (N.D.Ill. 2014).

*Teixeira v. Cnty. of Alameda*, 822 F.3d 1047, 1055 (9th Cir. 2016). In *Teixeira*, the Court held: "Alameda County has offered nothing to undermine our conclusion that the right to purchase and to sell firearms is part and parcel of the historically recognized right to keep and to bear arms." *Id.*, at 1056.

## II.    <u>ARGUMENT</u>

### A.    Recent United States Supreme Court Cases Have Readily Addressed the Reach of the Second Amendment.

The question before the court is not whether modern academics believe that gun magazines ought to be regulated, but whether regulation of such items is aligned with the history of the Second Amendment. Because SB 5078 and its modifications to RCW Section 9.41 are not aligned with the history of the Second Amendment, they fail as a matter of law under the United States Supreme Court's analysis announced in *Bruen*.

> **We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'**

PLAINTIFFS' REPLY MOTION
FOR INJUNCTIVE AND
DECLARATORY RELIEF- 4
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

*Bruen,* 142 S. Ct. at 2130-31, citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961). (Emphasis added.) Under such a view, SB 5078 must be enjoined and declared unconstitutional.

**B.    Historical Analysis of the Second Amendment.**

"We have never held that a provision of the Bill of Rights applies to the States only if there is a 'popular consensus' that the right is fundamental, and we see no basis for such a rule." *McDonald*, at 789.

In reviewing the historical analysis required to determine the validity of state action against the individual right to bear arms, the Supreme Court noted that the "regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868" and further concluded that, "even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen,* at 2132. Citing *Caetano v. Massachusetts,* 577 U. S. 411, 411-412 (2016) (*per curiam*). Thus, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.*

Relevant to this matter is the definition of "arms," which the Supreme Court addressed in *District of Columbia et al. v. Heller*, as follows: "Timothy

PLAINTIFFS' REPLY MOTION
FOR INJUNCTIVE AND
DECLARATORY RELIEF- 5
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Cunningham's important 1771 legal dictionary defined 'arms' as 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *District of Columbia et al. v. Heller,* 554 U.S. 570, 581 (2008) (Citations omitted.) *Heller* further held that the term "carry" indicates "'wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person,'" and that "[a]lthough the phrase implies that the carrying of the weapon is for the purpose of 'offensive or defensive action,' it in no way connotes participation in a structured military organization." *Id.*, at 584. Clearly, the Right is not limited by the purpose of the action, *i.e.*, offensive or defensive, and it is not limited to an individual's participation in "a structured military organization," truly enshrining the <u>individual</u> Right. The Court was clear that the Second Amendment protects a myriad of weapons an individual might possess as "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty." *Id.*, at 627. *Heller* focused on the position that "[small-arms] weapons used by militiamen and weapons used in defense of person and home were one and the same," and protecting the right to keep and bear such arms "is precisely the way in which the Second Amendment's operative clause furthers the purpose announced in its preface. *Id.*, at 624-25.

The Ninth Circuit similarly protects the Individual Right under the Second

PLAINTIFFS' REPLY MOTION
FOR INJUNCTIVE AND
DECLARATORY RELIEF- 6
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

Amendment, including the commerce of firearms, as "the Founders were aware of the need to preserve citizen *access* to firearms in light of the risk that a strong government would use its power to disarm the people." *Teixeira*, 873 F.3d at 686. *Teixeira* further notes that "a total prohibition would severely limit the ability of citizens to *acquire* firearms. *Id.*, at 688.

The United States Supreme Court and the Ninth Circuit clearly protect individual rights to bear and keep arms, including those used by the military; under the *Bruen*, standard, where there is "no such tradition in the historical materials that respondents and their *amici* have brought to bear on that question," this Court should grant Plaintiffs' Request for a Preliminary Injunction.  *Bruen*, at 2132.

That magazines are not addressed in the text of the Second Amendment is no surprise as the technology was not there, but that fact does not preclude these magazines from protection under the Second Amendment. SB 5078 clearly impairs and/or infringes upon the constitutionally protected rights of Washingtonians to bear arms. The prohibition of the sales of "high capacity magazines" is arbitrary, and it violates Plaintiffs' constitutional rights. Of note, there is no such thing as a high capacity magazine as it is a regulatory term created by the legislature limited by the amount of ammunition the legislature decides to regulate under the name of "safety." The only way the government can rebut the presumption that the Second Amendment protects individual conduct is proof of the historical tradition of regulation; the State and Intervenor cannot provide this non-existent proof.

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

**C.    The State and Intervenor have mislabeled the Magazines as Uncommon, Dangerous/Military Weapons that pose Extreme Hazards.**

Less than a decade ago, the Northern District of California, under the *Heller* two-prong analysis, declined to enjoin an ordinance banning the possession of magazines having a capacity to accept more than ten rounds, but found "that magazines having a capacity to accept more than ten rounds are in common use, and are therefore not dangerous and unusual" and further held that the "ban on possession of magazines having a capacity to accept more than ten rounds implicates the Second Amendment's protections." *Fyock v. City of Sunnyvale,* 25 F. Supp. 3d 1267, 1276-77 (N.D. Cal. 2014). Under *Bruen*, a finding by this Court that SB 5078 usurps Plaintiffs' Second Amendment rights requires granting the Plaintiffs' requested relief, especially in light of the inability to show that the regulation of such magazines is supported in the United States Constitutional history.

The Seventh Circuit held in *Friedman* that "the evidentiary record is unequivocal: a statistically significant amount of gun owners such as Friedman use semiautomatic weapons and high-capacity magazines for lawful purposes," noting that "that an estimated 11,976,702 million persons participated in target shooting with an AR-type rifle in 2012." *Friedman*, 784 F.3d at 409 n.3 (7th Cir. 2015). Additionally, the United States District Court For the District of Columbia in *Heller v. District of Columbia* ("*Heller II*") noted that "[a]pproximately 1.6 million AR-15s alone have

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

been manufactured since 1986, and in 2007 this one popular model accounted for 5.5 percent of all firearms, and 14.4 percent of all rifles, produced in the U.S. for the domestic market.  As for magazines, fully 18 percent of all firearms owned by civilians in 1994 were equipped with magazines holding more than ten rounds, and approximately 4.7 million more such magazines were imported into the United States between 1995 and 2000." *Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244, 1261 (D.C. Cir. 2011).  The State cited *Kolbe v. Hogan*, in which the Dissent noted that it is "unequivocal[ ] that magazines with a capacity of greater than 10 rounds are commonly kept by American citizens, as there are more than 75 million such magazines owned by them in the United States. These magazines are so common that they are standard on many firearms[.]" *Kolbe v. Hogan*, 849 F.3d 114, 154-55 (4th Cir. 2017) (Traxler, J., dissenting). Clearly, the regulated magazines are common, defeating the Oppositions' claim otherwise.

### (1) The Violation of Constitutional Rights Constitutes Irreparable Harm Balancing in Plaintiffs' Favor.

The fact that Brumback could not buy, and Gimme Guns could not sell, the regulated magazines violated their constitutionally protected rights. Constitutional violations are routinely recognized as triggering irreparable harm unless they are promptly remedied; the United States Supreme Court spoke clearly on this point, stating that "freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). *Elrod* has been

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

extended in the Ninth Circuit to protect Second Amendment Rights and has been extended to other constitutionally protected rights.[4] In noting that extension, the Ninth Circuit held: "'If the underlying constitutional question is close ... we should uphold the injunction and remand for trial on the merits.' The same is true for Second Amendment rights. Their loss constitutes irreparable injury." *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1135 (S.D. Cal. 2017) (Citations omitted.) The Tenth Circuit stated that most courts "consider the infringement of a constitutional right enough and require no further showing of irreparable injury … [w]hat makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial. Any deprivation of any constitutional right fits that bill." *Free The Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805-06 (10th Cir. 2019) citing *Awad v. Ziriax*, 670 F.3d 111, 1131(10th Cir. 2012). **Any deprivation of any constitutional right fits that bill.**[5]

---

4 *Jones v. Bonta*, 34 F.4th 704, 732 (9th Cir. 2022) and *Duncan v. Becerra,* 265 F. Supp. 3d 1106 (S.D. Cal. 2017). See also: *ACLU of KY v. McCreary County, Kentucky*, 354 F.3d 438, 445 (6th Cir. 2003) (if Court finds a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) (*Elrod* application to Fourth Amendment).

5 *See Adams ex rel. Adams v. Baker*, 919 F.Supp. 1496, 1504–05 (D. Kan. 1996). *See also, Ezell v. Chicago*, 651 F.3d 684 (7th Cir. 2011), (money damages   do not

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

In January 2022 (pre-*Bruen*), the Ninth Circuit said of COVID-19 ordinances that mandated the closure of gun shops, ammunition shops, and firing ranges for 48 days: "[t]hese blanket prohibitions on access and practice clearly burden conduct protected by the Second Amendment and fail under both strict and intermediate scrutiny." *McDougall v. Cnty. of Ventura*, 23 F.4th 1095 (9th Cir. 2022).[6] Thus, "even minimal" impairments on the Second Amendment, including a delay of 48 days to acquire a firearm, ammunition, or the ability to train with such a firearm, constitutes irreparable harm as "a complete ban on the ability to acquire arms and ammunition, and the closure of all firing ranges, renders the right to keep and bear arms 'hardly ... worth the paper it consumed.'" *McDougall*, at 1106 citing *Heller*, at 609. SB 5078's prohibition on obtaining firearms magazines of the Legislature's choosing constitutes harm that warrants Plaintiffs' requested relief.

**(2) Protecting Constitutional Rights is in the Public Interest.**

Plaintiffs previously cited *Fyock*, as follows: "because constitutional rights are at

---

compensate infringements of the Second Amendment as it "protects similarly intangible and unquantifiable interests as those secured by the First Amendment.").

6 Shortly after deciding *McDougall*, the Ninth Circuit held that an "11-day total ban on law-abiding citizens' ability to practice with firearms at firing ranges or acquire firearms and ammunitions…severely burdens the core of the Second Amendment right at a time of crisis." *Martinez v. Villanueva,* No. 20-56233, *1-2 (9th Cir. 2022).

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

issue, any infringement on the Second Amendment naturally harms the public." *Fyock*, at 1282. *McDougall* held that "[d]enying the ability to acquire a firearm and ammunition *at all* is fundamentally different from waiting a short time to receive an *additional* firearm," noting the "very real difference between a short, defined waiting period to purchase an *additional* firearm, versus a two-month ban on purchasing any firearm, ammunition, or otherwise exercising your Second Amendment rights." *McDougall*, at 1111-12. The Court further held that the:

> The governments' designation of 'essential' businesses and activities reflects a government-imposed devaluation of Second Amendment conduct in relation to various other non-Constitutionally protected activities during times of crises, irrespective of any of the unique dangers presented by firearms, ammunition, or firing ranges. Such devaluation directly undermines the strong protections the Constitution was designed to protect, even *through* the 'various crises of human affairs.' *Id.* citing *McCulloch v. Maryland*, 17 U.S. 316 (1819).

Because SB 5078 implicates the Second Amendment "this case involves serious questions going to the merits, a temporary stay is in the public interest."[7]

## III.    CONCLUSION AND RELIEF SOUGHT

Plaintiffs respectfully requests this Court to enjoin SB 5078 for its lack of "historical precedent that would permit a governmental entity to entirely ban a type of weapon that is commonly used by law-abiding citizens for lawful purposes, whether in an individual's home or in public."[8]

---

7 *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1069 (S.D. Cal. 2021).

8 *Rocky Mountain*, *Supra,* Dkt. No.: 18, Order Granting TRO, at 10.

PLAINTIFFS' REPLY MOTION
FOR INJUNCTIVE AND
DECLARATORY RELIEF- 12
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

1

**DATED** this 7th day of November, 2022.

2

3

4                              **SILENT MAJORITY FOUNDATION**

5                              */s/ Simon Peter Serrano*

6                              Simon Peter Serrano, WSBA No. 54769

7                              5238 Outlet Dr.
                               Pasco, WA 99301

8                              (509)567-7083
                               pete@silentmajorityfoundation.org

9

10                             Counsel for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November 2022, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF system.

DATED this 7th day of November, 2022.

*/s/Madeline Johnson*

Madeline Johnson

PLAINTIFFS' REPLY MOTION
FOR INJUNCTIVE AND
DECLARATORY RELIEF- 14
1:22-cv-03903-MKD

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301