1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | EASTERN DISTRICT OF WASHINGTON |
| 3 | MICHAEL SCOTT BRUMBACK, an ) Case No. 1:22-CV-03093-MKD |

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF WASHINGTON
 2

 3   MICHAEL SCOTT BRUMBACK, an    ) Case No. 1:22-CV-03093-MKD
     individual; and GIMME GUNS, a )
 4   sole proprietorship,          ) November 23, 2022; 11:09 am
                                   )
 5                    Plaintiffs,  ) Yakima, Washington/
                                   ) Videoconference
 6   v.                            )
                                   ) Motion for Injunctive and
 7   ROBERT W. FERGUSON, in his    ) Declaratory Relief Hearing
     official capacity as Washington)
 8   State Attorney General; JOHN R.)
     BATISTE, in his official      ) Pages 1 to 53
 9   capacity as Chief of the      )
     Washington State Patrol; ROBERT)
10   UDELL, in his official capacity)
     as Sheriff for Yakima County,  )
11   Washington; and JOSEPH A.      )
     BRUSIC, in his official capacity)
12   as County Prosecutor for Yakima )
     County,                        )
13                                  )
                      Defendants,   )
14                                  )
     ALLIANCE FOR GUN RESPONSIBILITY,)
15                                  )
                 Intervenor-Defendant. )
16

17

18              BEFORE THE HONORABLE MARY K. DIMKE
                UNITED STATES DISTRICT COURT JUDGE
19

20

21
     Official Court Reporter:      Marilynn S. McMartin, CCR #2515
22                                 United States District Courthouse
                                   P.O. Box 2706
23                                 Yakima, Washington 98907
                                   509-573-6613
24
     Proceedings reported by mechanical stenography; transcript
25   produced by computer-aided transcription.
```

11:09:55

2

1                          APPEARANCES:

2    For the              MR. SIMON PETER SERRANO (IN PERSON)
     Plaintiffs:          pete@silentmajorityfoundation.org
3                         Silent Majority Foundation
                          5426 N Road 68, Suite D-105
4                         Pasco, Washington 99301
                          530-906-9666
5
                          MR. AUSTIN HATCHER (VIA VIDEOCONFERENCE)
6                         austin@hatcherlawpllc.com
                          Hatcher Law
7                         11616 N. Market Street, Suite 1090
                          Mead, Washington 99021
8                         509-220-5732

9
     For the State       MS. R. JULY SIMPSON (VIA VIDEOCONFERENCE)
10   Defendants:         july.simpson@atg.wa.gov
                         Office of the Attorney General
11                       7141 Cleanwater Drive SW
                         Olympia, Washington 98504-0111
12                       360-586-3151

13                       MS. KRISTIN BENESKI (VIA VIDEOCONFERENCE)
                         kristin.beneski@atg.wa.gov
14                       MR. ANDREW W. HUGHES (VIA VIDEOCONFERENCE)
                         andrew.hughes@atg.wa.gov
15                       Office of the Attorney General
                         800 Fifth Avenue, Suite 2000
16                       Seattle, Washington 98104
                         206-464-7744
17

18   For the Defendants  MS. CALLIE A. CASTILLO (IN PERSON)
     Udell and Brusic:   castilloc@lanepowell.com
19                       Lane Powell
                         1420 Fifth Avenue, Suite 4200
20                       Seattle, Washington 98111-9402
                         206-223-7145
21

22   For the Intervenor- MR. ZACHARY J. PEKELIS (VIA VIDEOCONFERENCE)
     Defendant:          zach.pekelis@pacificalawgroup.com
23                       Pacifica Law Group
                         1191 Second Avenue, Suite 2000
24                       Seattle, Washington 98101
                         206-602-1229
25

3

1                          <u>INDEX</u>

2    <u>Proceedings</u>:                                    <u>Page</u>

3         Motion for Injunctive and Declaratory Relief      4
            Hearing - November 23, 2022
4         Argument by Mr. Serrano                           5
          Argument by Ms. Simpson                          24
5         Argument by Mr. Pekelis                          35
          Reply by Mr. Serrano                             48
6         Court's Oral Comments                            51

7


8                      <u>WITNESS INDEX</u>

9    <u>Plaintiff Witnesses</u>:                             <u>Page</u>

10
            (None)
11                              * * * * *

12
     <u>Defense Witnesses</u>:                               <u>Page</u>
13

14          (None)

15


16                    <u>EXHIBITS ADMITTED</u>

17   <u>Plaintiff</u>
      <u>Number</u>         <u>Description</u>                    <u>Page</u>
18          (None)

19

20   <u>Defense</u>
      <u>Number</u>         <u>Description</u>                    <u>Page</u>
21          (None)

22


23
                      <u>GENERAL INDEX</u>
24                                                      <u>Page</u>

25   Reporter's Certificate................................  53

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*

1  (November 23, 2022; 11:09 am)

2      THE COURTROOM DEPUTY:  The matter before the court is

3  *Michael Scott Brumback; et al., v. Robert Ferguson; et al.,*

4  Cause No. 1:22-CV-3093-MKD, time set for motion hearing.

11:10:12  5      Counsel, please state your presence for the record.  And

6  we'll begin with plaintiffs' counsel, and then we will do

7  counsel that is here in person, and then we will go to counsel

8  on Zoom and we will begin with Mr. Hatcher.

9      MR. HATCHER:  Austin Hatcher, plaintiff, also with the

11:10:38  10  Silent Majority Foundation.

11      MR. SERRANO:  Pete Serrano on behalf of plaintiffs,

12  Silent Majority Foundation.

13      THE COURT:  All right.  Good morning to counsel for

14  plaintiffs.

11:10:48  15      MS. CASTILLO:  Callie Castillo on behalf of the

16  defendants Robert Udell and Joseph Brusic.

17      THE COURT:  Good morning.

18      All right.  Counsel on video for the State defendants.

19      MS. SIMPSON:  July Simpson on behalf of the Washington

11:11:07  20  State defendants.

21      MS. BENESKI:  Kristin Beneski for the State defendants.

22      MR. HUGHES:  Good morning, Your Honor.  Andrew Hughes

23  for the State defendants.

24      THE COURT:  All right.  Good morning to counsel.

11:11:18  25      And then those on behalf of Alliance for Gun

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

1    Responsibility?

2    MR. PEKELIS:  Good morning, Your Honor.  Zach Pekelis

3    for Intervenor-Defendant, Alliance for Gun Responsibility.

4    THE COURT:  Good morning.

11:11:32   5    All right.  Today we're here on plaintiffs' motion for

6    preliminary injunction related to the statute.  I intend to hear

7    first from plaintiff.  I'll give everyone an opportunity to be

8    heard, and then I'll hear from the plaintiff again unless

9    there's issues that require additional argument.  So we'll begin

11:11:49  10    with counsel for plaintiff.

11    MR. SERRANO:  Good morning, Your Honor.

12    THE COURT:  Good morning.

13    MR. SERRANO:  May it please the court, Pete Serrano on

14    behalf of plaintiffs, Mr. Brumback and Gimme Guns.  We're here,

11:12:08  15    as you mentioned, on a preliminary injunction motion.  This is a

16    pretty straightforward case and question that's before the

17    court.

18    The question that we're addressing today -- and I'd like

19    to pause for one second to say I am extremely grateful that

11:12:21  20    we're here this day before Thanksgiving; that we have the

21    opportunity to litigate these important constitutional issues.

22    So we are founded on the Constitution.  We are a great

23    nation of laws.  And today we're here to address one of those

24    laws, which is does the -- the question before the court is

11:12:36  25    whether or not the Second Amendment of the United States

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

6

1    Constitution and whether or not Article I, Section 24 of the

2    Washington State Constitution protect the ability to

3    manufacture, to distribute, to sell or offer for sales magazines

4    that are deemed by the legislature as large-capacity magazines,

11:12:59  5    meaning they hold more than 10 rounds.

6            Under the Washington Constitution, the right of an

7    individual citizen to bear arms in defense of himself, or the

8    state, shall not be impaired.

9            Under the United States Constitution, under the Second

11:13:15  10   Amendment, the issue is whether or not -- is that a

11   well-regulated militia, being necessary for the security of a

12   free state, the right of the people to bear and keep arms, shall

13   not be infringed.

14           So here we have a question of whether or not this type

11:13:30  15   of regulation under Senate Bill 5078 and its impending -- and

16   its adoption of modifications to Revised Code of Washington

17   9.41, again, which prohibit the manufacture, distribution,

18   sales, or offering for sale of these 10-round magazines,

19   infringe or impair these rights.

11:13:52  20          Under the United States Supreme Court's decision in the

21   *Bruen* case this year, we found that when the Second Amendment's

22   plain text covers an individual's conduct, the Constitution

23   presumptively protects that conduct.  So when the constitutional

24   language protects the conduct, the Constitution presumptively

11:14:16  25   protects that conduct.

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD    7
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Serrano

1        And when such a finding is made to justify the

2   regulation, the State must demonstrate that its regulation is

3   consistent with the nation's historical tradition of firearms

4   regulation.  Here, no such offering's been made.  There is no

11:14:32   5   fair or adequate firearms regulation history, not under the

6   Constitution.  And the limited information that's been provided

7   by the State as well as the intervenors is recent history at

8   best.

9        For example, there were citations to a 1994 firearms ban

11:14:54  10   that occurred through the United States.  When you look at the

11   *Bruen* analysis, *Bruen* was very clear that post-ratification

12   history of constitutional texts and analysis is sketchy at best.

13        The court specifically stated -- and I'll cite to the

14   court here -- that post-Civil War discussions of the right to

11:15:18  15   keep and bear arms that took place 75 years after the

16   ratification of the Second Amendment do not provide as much

17   insight into its original meaning as earlier sources.

18        And then it further stated that regulations that are

19   historically consistent with the nation's tradition of firearm

11:15:39  20   regulations, specifically anything -- late-19th-century evidence

21   cannot provide much insight into the meaning of the Second

22   Amendment when it contradicts earlier evidence.

23        Again, the evidence presented by the State and the

24   intervenors were from Tommy guns, machine guns that occurred in

11:15:58  25   the Prohibition era of the 1920s, over 150 years after the

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*                                                    8

1    ratification -- or nearly 150 years after the ratification of

2    the Second Amendment; also citing to, again, a 1994 which was

3    203 years after the ratification of the Second Amendment.

4           So we're not talking, you know, post-Civil, Civil War.

11:16:16    5    We're talking 20th century and near 21st century regulations

6    that address these types of, these types of magazines and the

7    weapons that utilize them.

8           So, again, looking at the *Bruen* analysis, the simple

9    fact is we're looking at, as *Bruen* stated, we have a modern-day

11:16:37    10    question.  And the Second Amendment protects modern-day firearms

11    equally as the First Amendment protects free speech Internet

12    based as well as the Fourth Amendment protects search and

13    seizures that are utilizing newer technologies.

14           And *Bruen* was very clear on that.  Again, it's not a

11:16:58    15    snapshot.  It's not a prospective looking.  We look at the

16    history and the tradition of the regulation of firearms under

17    the Second Amendment, and where no such history exists or it's

18    limited and it's newer in its face, that doesn't bear the same

19    weight as historical actual regulation.

11:17:17    20           And there are a handful of elements here, as we know;

21    that under a preliminary injunction there are four elements:

22    the likelihood of success, the irreparable harm, and then the

23    question of the balance of the harm to the individuals who are

24    challenging the regulation as well as the public good.

11:17:33    25           And when a government regulation's challenged, those

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*                                                      9

1    last two factors are combined into a third factor, so

2    fundamentally we have the question of whether or not there's a

3    potential success on the -- a likelihood of success on the

4    merits.

11:17:46   5         Because this is a constitutional question that impacts a

6    fundamental right, the likelihood of success is extremely high

7    here.  Moreover, the irreparable harm, as many courts have held,

8    is also -- it's natural when a constitutional right is infringed

9    that irreparable harm's immediate.  And I'll address these

11:18:05   10    issues as well as the third, combined factors here.

11         As I mentioned and *Bruen* noted, that just as the First

12    Amendment protects modern-day free speech and the Fourth

13    Amendment protects against modern-day searches and seizures, so

14    does the Second Amendment protect against modern-day weapons.

11:18:23   15         There are a couple of really important cases that have

16    come both out of the United States Supreme Court and various

17    courts of appeals, including the Ninth Circuit as well as other

18    sister district courts in Southern and Northern California.

19         That would be the *Fyock v. Sunnyvale* case, which

11:18:38   20    addressed actual banning of magazines, and the court found that

21    magazines having the capacity to accept more than 10 rounds are

22    in common use and are therefore not dangerous, unusual.

23         Again, I think it's critical that the court used the

24    term that it finds -- that it found.  This wasn't just something

11:18:58   25    in dicta.  If a court states "we find," that's -- the court is

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Serrano

10

1    actually issuing some type of factual or legal basis.

2         So the important thing that *Sunnyvale* relied on was the

3    fact that 40 percent -- 47 percent of all magazines were of this

4    type, that it held more than 10 rounds of magazines, 10 rounds

5    of ammunition.

6         So in looking to *Fyock* -- again, that's out of the

7    Northern District of California, it's about a decade old -- it

8    also further stated that no court has found that such magazines

9    do not qualify as arms under the Second Amendment.

10        Again, these are really critical factual findings and

11   decisions by the court because they offer protection, you know.

12   The claims that we've seen are that these aren't arms.  No.  In

13   fact, courts have determined that -- starting with *Heller* --

14   that the ammunition itself, that the magazines constitute arms.

15        You know, I love some of these cases that came out of

16   the Ninth Circuit.  For example, you know, in *McDougall v.*

17   *County of Ventura* -- and we cited to that in our reply brief --

18   a complete ban on the ability to acquire arms and ammunition and

19   the closure of all firing ranges renders the right to keep and

20   bear arms hardly worth the paper it's consumed.

21        THE COURT:  But this is different, at least according to

22   the defense's evidence.  They're drawing a distinction between

23   magazines that hold less than 10 or more than 10, and under

24   their -- the evidence that they proffered, at least, that there

25   is no firearm that would not operate with a magazine containing

11:19:20
11:19:39
11:20:00
11:20:25
11:20:42

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD    11
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Serrano

1    10 rounds of ammunition or less.

2         So it doesn't -- the regulation does not render any

3    firearm inoperable which is, I think, different than the

4    situation that you're presenting when you're talking about

11:20:56  5    closing down firing ranges and things like that; that that is

6    something that would render firearms unable to be used.  Isn't,

7    isn't there a distinction there, and how should the court treat

8    that distinction?

9         MR. SERRANO:  I'd say that there is a distinction, but,

11:21:09  10   you know, when you look at the broad swath of the Second

11   Amendment and the Washington Constitution, it's very clear that

12   the right to bear arms is to not be infringed or impaired.

13        You know, infringement, as we addressed, is any type of

14   regulation that limits your ability to use.  It's not whether or

11:21:25  15   not it renders it inoperable.  It's whether or not it limits or

16   inhibits the utilization of such.  So whether or not it's a

17   6-round magazine, a 24-round, a 30-round, whatever the number

18   is, the limitation placed on the ability to use one's firearm in

19   one's defense has been upheld for years long.

11:21:45  20        Again, in looking at whether or not there's a

21   constitutional history of regulating these types of magazines

22   that it's been clear, *Heller* held that these constitute arms.

23   *Fyock* has rendered these as arms.  The common use of these is

24   what the court has consistently relied upon to determine that

11:22:07  25   these are arms.  So the limitation on these magazines therefore

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD    12
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Serrano

1   impacts the rights -- one's right to bear arms and to keep and

2   maintain those arms in one's self-defense.

3       THE COURT:  With respect to evaluating dangerousness --

4   because I think the Supreme Court both in *Heller* and *Bruen*

5   recognized that there is the ability to regulate firearms that

6   are dangerous or military style -- what is your position on what

7   the court should look to to make that determination?

8       MR. SERRANO:  I think, quite frankly, it goes beyond the

9   scope of a question.  In looking at dangerousness, you know,

10  there are folks who carry firearms, handguns.  You know, I

11  personally have one that's got 15 rounds and 18 rounds.  I do

12  that in a manner of self-defense.

13      The ability to declare this as dangerous -- again,

14  they're not unusual.  They're commonplace.  As we saw in *Heller*,

15  it indicated that there are, I think it was 14 million of these

16  magazines, and then there's another case in *Fyock* that addresses

17  it as 39 million of these types of magazines that are in place.

18      We cited to another statistical analysis, the National

19  Firearms Survey -- this was in the complaint at paragraph 45 --

20  that estimates that 81.4 million Americans own these types of

21  magazines.

22      So, again, looking at the common usage, I think that

23  then goes to the question of whether or not these are

24  specifically dangerous.  It's, a firearm is -- unquestionably

25  promotes -- or, no, not "promotes" -- has the opportunity or

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Serrano                                        13

1    ability to injure a person.

2          But when you look at it, there's no question that when --

3    the information that we provided, you know, there were about 179

4    deaths due to homicides -- right? -- due to firearms in the

11:24:01  5    state of Washington, yet 517 vehicular deaths.

6          We don't regulate the size of the engine of the car or

7    its weight or its gross vehicle weight or whether or not it has

8    all-traction tires to say that a specific vehicle is dangerous

9    and another vehicle's not.

11:24:17  10          I find it ironic that the State here posits that these

11   are dangerous, yet that same state legislature passed several

12   bills over the past several years to allow for the utilization

13   of what they're terming recreational drugs, and there were 1789

14   drug overdose deaths, which is almost tenfold in 2019 the

11:24:41  15   homicides that occurred from guns.

16          So to claim that it's regulating something dangerous, I

17   think the legislature has absolutely failed in that argument,

18   and whether or not the State can recover, I don't know.

19          But at a minimum, insofar as we're talking about

11:24:54  20   dangerous, I see that -- I don't believe that's a fair argument.

21   I believe, if anything -- and *Heller* was very clear about that,

22   that these aren't dangerous because they are in common use, and

23   they're commonly deployed for self-defense.

24          THE COURT:  Well, I think under *Heller* and *Bruen*, the

11:25:12  25   court has recognized that certain issues related to certain

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

1    dangerous firearms -- Tommy guns is the regular example -- can

2    be regulated.  And so my question to you is:  What should the

3    court look to to make the evaluation of whether large-capacity

4    magazines fall into a dangerousness category, such as a Tommy

11:25:32    5    gun, or a nondangerous, that it doesn't fall into that category?

6    What is the plaintiffs' position that courts should look to to

7    make that evaluation?

8         MR. SERRANO:  Well, again, I think when you look at the

9    actual impact -- right? -- the fact that if there are 81.4

11:25:47   10    million or more of these types of magazines out and there are,

11    albeit hundreds of actual instances where these implements are

12    utilized to carry out evil, I think that's a disproportionate

13    number.

14         I mean, people are -- you know, again, I want to turn

11:26:06   15    back to those homicides, the 197 that are cited from 2019 in

16    Gun.  It doesn't address the caliber.  It doesn't address the

17    magazine capacity.  So to claim that having more ammunition is

18    in and of itself dangerous I think actually misses the point.

19         Certainly -- again, I look at Mr. Brumback.  We brought

11:26:27   20    him because he's carried firearms for quite some time.  I don't

21    need to date him, but, you know, he's carried firearms and

22    utilized them in self-defense for quite some time, yet, you

23    know, he's not utilized them in an offensive mechanism.

24         The dangerousness question to me strays into the

11:26:46   25    individual's intent.  It strays into the individual's personal

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

1  capacity, not whether or not the individual can fire 15 rounds

2  or five.

3       So in looking at that, you know, again, just -- I think

4  simply put, going back to *Heller* it says, you know, we think it

11:27:04  5  clear enough in the record that semiautomatic rifles and

6  magazines holding more than 10 rounds are, indeed, in common

7  use, as the plaintiffs contend.

8       You know, I look at these, and the courts consistently

9  go to is this commonly used in a self-defense way, and there's

11:27:21  10  no question that it is.  You know, as I mentioned in our

11  complaint at page -- or paragraph 45, we cite to the National

12  Firearms Survey which talks about the number of magazines, the

13  81.4 million that hold greater than 10 rounds.

14       Digging deeper into that -- and I'm happy to brief up on

11:27:41  15  this -- it talks about the number of utilizations for

16  self-defense of these types of magazines.

17       And now, of course -- and this is where I think we go a

18  bit astray -- when we look at -- backwards looking, historical

19  analysis, we're gonna have individuals -- and I think it was the

11:28:01  20  State's expert, Mr. Cornell, that addressed this and said that,

21  you know, fundamentally when we have these experts testifying,

22  they're gonna have a cause.  You know, they're gonna -- they're

23  positing.  It's fundamentally their own opinion on this; right?

24       When we have this research that's conducted, we look at

11:28:20  25  whether or not these people can actually provide us an unbiased

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Serrano                                         16

1    statement.  And, again, the ownership of at least 81 million of

2    these magazines, and looking at the number of actual incidents

3    where they're utilized for the wrong or for bad as compared to

4    where they're used in self-defense -- which is what the

11:28:37    5    Constitution protects.

6            You know, I want to be clear.  We're not here arguing

7    that anyone and everyone should have the right to own this for

8    any purpose.  The Constitution protects the right of one's

9    self-defense, and the state Constitution protects that right for

11:28:51    10    the individual to protect themself and the state.

11            So when these, these magazines are utilized in their

12    proper purpose, I believe they're constitutionally protected.

13    And to claim the absolute danger, I think it misplaced -- it

14    misplaces the argument.

11:29:13    15            I'm just trying to think.  You know, again, looking at

16    our reply, on pages 8 and 9 we address the common use of these,

17    and, again, this really goes into the irreparable harm.  When

18    you're infringing on an individual's constitutional right -- and

19    this is, this is longstanding caselaw from *Elrod,* and then it's

11:29:35    20    been extended to Second Amendment context -- when you infringe

21    on the individual's individual right, that is immediate

22    irreparable harm.

23            Again, back at our reply brief it looks at -- you know,

24    the Seventh Circuit in *Friedman* talks about the evidentiary

11:29:49    25    record is unequivocal:  a statistically significant amount of

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

1    gun owners such as Friedman use semiautomatic weapons and

2    high-capacity magazines for lawful purposes.

3        I don't think anyone's placed before the court any

4    argument that high-capacity magazines are exclusively used for

11:30:09  5    nefarious purposes.  I certainly would welcome that briefing.

6        Again, Mr. Brumback, our other expert, and Gimme Guns,

7    our other plaintiff, have all stated that they have these.

8    Gimme Guns transfers these to on-duty and off-duty police

9    officers.  Not to say that police officers can't do bad things

11:30:32  10   but, again, very clearly, these serve a purpose.  These

11   magazines serve a purpose, and that purpose is for the

12   individual's self-defense as well as the defense of one's own

13   country and one's own, one's own state.

14       So with that -- and I apologize.  I'm not tracking time.

11:30:51  15   I know we kind of limited it to 15 minutes.  I'm not sure --

16       THE COURT:  I have nothing else scheduled the rest of

17   the day, so I am not going to keep you to a 15-minute clock.

18       MR. SERRANO:  Okay.  Okay.

19       THE COURT:  I didn't, I didn't mean that to say that you

11:31:02  20   should take the next two hours --

21       MR. SERRANO:  No, no, no, no.

22       THE COURT:  -- but I am not -- I do not have a clock

23   running today.

24       MR. SERRANO:  Okay.  No.  I just -- you know, I wanted

11:31:09  25   to be aware.  And, you know, it still is Thanksgiving Eve even

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

18

1    though we're here; right?

2            THE COURT:  We're open till 5:00.

3            MR. SERRANO:  So again, you know -- have I answered that

4    question sufficiently or would you like me to address that a

11:31:24    5    little bit more?

6            THE COURT:  No.  That's fine.

7            MR. SERRANO:  Okay.  So, again, in looking at the four

8    elements of the injunctive relief, the actual injury here is

9    infringing or impairing this constitutional right.  And, again,

11:31:38    10   that starts from almost 50 years of Supreme Court precedent,

11   *Elrod*, that was related to a First Amendment case, but it's been

12   extended to the Second Amendment.

13           And that actually came out of -- that was cited in *Jones*

14   *v. Bonta*, and we've got that in our reply brief at 10 and

11:31:58    15   footnote 4 -- *Jones v. Bonta* and *Duncan v. Becerra,* which are

16   both Ninth Circuit and Southern District of California cases.

17           So when any constitutional right is infringed or

18   impaired, you know, that is the irreparable harm.  And, again,

19   here limiting the ability to utilize one's own arms, if you

11:32:14    20   will, in self-defense is a constitutional infringement.  And

21   then --

22           THE COURT:  Here in this particular case, your client,

23   the plaintiff, already owns magazines that are at issue, and the

24   statute at issue does not prohibit the use of -- the use or

11:32:32    25   possession of those.  So what is the harm in denying an

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

1    injunction pending the outcome of this given that he has access

2    to the very items at issue and there's no prohibition on his

3    utilization or possession of those?

4         MR. SERRANO:  So I'd say it's twofold.  One is the

11:32:51    5    ability to acquire more, and the caselaw on that has kind of

6    bounced around.  I believe it was *McDougall* that indicated that

7    owning a second gun wasn't tantamount to procuring a first one;

8    right?

9         Nonetheless, *McDougall* also held that an 11-day wait on

11:33:07   10    receiving a firearm was unconstitutional, because that

11    limitation of the ability to bear and carry one's arms in

12    self-defense wasn't in and of itself a limitation.  So there's

13    the ability to acquire more.

14         Then there's also the inability, and Mr. -- you know,

11:33:29   15    our plaintiff Gimme Guns, Mr. Gilroy, indicated that his

16    inability to sell not just the magazines but the guns themselves

17    that accompany some of these magazines.

18         For example, you see a lot of the AR-style rifles,

19    sporting rifles that can be used in home defense.  Those guns

11:33:48   20    are -- actually, the manufacturer's not sending them here, so

21    there's the inability to acquire a firearm in and of itself, not

22    just the magazine.

23         So there's the inability to acquire and utilize on

24    behalf of oneself and on behalf of one's state the additional or

11:34:07   25    an actual new firearm.  And so that certainly's prohibitive

20

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

1    because, again, in looking at the plaintiffs, we intentionally

2    brought both Mr. Brumback, who has experience using these -- as

3    someone who owns guns it's, you know, I'd say an enthusiast to

4    a degree -- and then we brought the company that was selling

11:34:27    5    these.  And certainly the prohibition of selling them has,

6    unquestionably, impacted Gimme Guns.

7            THE COURT:  But hasn't the Ninth Circuit said economic

8    harm in the commercial context is not -- can't be irreparable

9    harm or injury pending a preliminary injunction?

11:34:46    10            MR. SERRANO:  So there's the economic harm element, but

11    there's also, again, just simply prohibiting the ability to sell

12    the guns that accompany these magazines.

13            And, again, that fundamentally is prohibiting the

14    ability for any individual to obtain a firearm that would

11:35:01    15    otherwise be, you know, free floating, if you will, that would

16    be protected under the Second Amendment right.  So it's not

17    simply the economic harm.  It's the infringement on the ability

18    for an individual to sell or transfer.

19            Again, in this case, Mr. Gilroy, Gimme Guns, has the

11:35:19    20    ability to transfer -- well, prior to July 1 had the ability to

21    sell or transfer, market these.  He's no longer -- he's lost

22    that ability.  And, again, it's not simply the magazines, but

23    there are manufacturers who're no longer offering the actual

24    firearms themselves for future sale -- right? -- for

11:35:39    25    distribution throughout the state of Washington.

21

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Serrano

1       And we've had that experience where he just has not had

2   the ability to sell a firearm because it traditionally comes

3   with, say, a 30-round magazine, and it's just not offered for

4   sale here.

5       So kind of dovetailing into that fourth element of

6   protecting the public interest, because this is against the

7   government, that dovetails into the third question of the

8   irreparable harm.

9       But, again, I want to go back to *Fyock* which states --

10  well, again, there are a couple elements in *Martinez v.*

11  *Villanueva,* so I actually miscited that case.  That was the one

12  on the 11-day ban where it stated that the inability to practice

13  with firearms at a firing range or acquire firearms and

14  ammunitions for 11 days severely burdened the core of the Second

15  Amendment.  And that is a Ninth Circuit case, and it's from this

16  year.  And then any infringement on the Second Amendment

17  naturally harms the public.  That comes from *Fyock*.

18      And so, again, what we're looking at is not just an

19  economic harm question.  It's whether or not the Second

20  Amendment has been infringed on these individuals.  And in so

21  viewing it, just -- again, *McDougall* was very clear:  Denying

22  the ability to acquire firearms and ammunition at all, at all,

23  is fundamentally different from waiting a short time to receive

24  an additional firearm.

25      Again, here we have the inability to obtain these

11:35:58 (line 5)
11:36:18 (line 10)
11:36:39 (line 15)
11:36:57 (line 20)
11:37:15 (line 25)

22

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

1   magazines and in some cases the firearms that accompany them.

2   It's an all-out prohibition.  So under the McDonald standard --

3   or *McDougall* standard -- excuse me -- that denial is -- it's a

4   fundamental violation of that right, and that harms the public.

11:37:36   5   That was the conclusion there.  It wasn't just that it harmed

6   the individual, but it harmed the public.

7        Let me just -- I do want to be mindful of your time

8   while we're here till -- you're here till 5:00.

9        You know, again, just simply put, these, these are not

11:37:57   10  extraordinary weapons.  Those are holdings, findings, decisions

11  by courts.  Whether it's from *Heller*, whether it's from *Fyock*,

12  whether it's from *McDougall*, all of these cases point to the

13  fact that these magazines and the firearms utilized with them

14  are in commonplace, in common use.  They're not quote/unquote

11:38:19   15  "military."  They're not dangerous.  They're not unusual.  They

16  are commonplace magazines and firearms that have been defined as

17  firearms by these cases, and that comes both from *Heller*, and it

18  comes from *Fyock*.

19        Fundamentally deciding that these types of magazines are

11:38:39   20  prohibited because they're dangerous, that was an arbitrary

21  decision by our legislature.  Again, if they're really concerned

22  about safety, it seems that there are plenty of other things

23  that could be regulated.

24        Threefold -- or three times the amount of deaths from

11:38:58   25  vehicles as opposed to homicides due to handguns -- which,

23
*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Serrano*

1   again, I want to be very clear there, did not address caliber or

2   magazine style.  Simply stated, it was lump summed into -- and

3   this is the 2019 data that we've cited in our motion for

4   preliminary injunction -- 179 deaths.  There were 114 flu deaths

11:39:25   5   that same year; 150 cancer deaths.  I'm not trying to belittle

6   anyone that's been harmed or killed due to a firearm, but the

7   same legislature turned a blind eye to 1789 drug deaths and made

8   that more accessible to the people.

9          So we don't have a problem here with magazines that hold

11:39:50   10   more than 10 rounds.  We have a problem here of people that

11   misuse, that don't use for the constitutional purposes for

12   protection of oneself and one's state these firearms.  And so

13   fundamentally we're here to ensure that these rights for those

14   who are going to utilize these magazines for constitutionally

11:40:12   15   protected purposes are not infringed nor impaired.

16          And that's what we're asking you to do with the

17   preliminary injunction today; by enjoining this, allow proper

18   gun-owning, gun-purchasing, and magazine-purchasing individuals

19   the ability to do so and exercise their United States and

11:40:34   20   Washington constitutionally protected rights.

21          So that's why we're asking for an injunction here.  We

22   believe that harm has been done by prohibiting any sales,

23   distribution, or offering for sales or manufacturing of these.

24   Whether it's Mr. Brumback, whether it's Mr. Gilroy, Gimme Guns,

11:40:54   25   individuals' rights have already been infringed or impaired.

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Ms. Simpson*

1   It's happened, and the only way to make it right is to enjoin

2   that type of activity.

3          So we're asking for a preliminary injunction for further

4   discovery, for further briefing.  I know one of the State's

11:41:11  5   experts -- again, I think it was Mr. Cornell -- indicated that

6   it might take six to nine months to write a sufficient brief on

7   the historical analysis.  If that's what it takes, that's what

8   it takes.  We ought to take this as a very serious question,

9   because any infringement of a constitutional right is a serious

11:41:29  10  question.

11          And so we ask that you grant this preliminary injunction

12  and enjoin any enforcement of Senate Bill 5078 and its impacts

13  on Revised Code of Washington 9.41.010 as well as .370 and .375.

14          Do you have any further questions, Your Honor?

11:41:48  15          THE COURT:  I do not at this time.

16          MR. SERRANO:  Okay.  Thank you.

17          THE COURT:  Thank you, Mr. Serrano.

18          All right.  Ms. Simpson on behalf of the State

19  defendants.

11:42:03  20          MS. SIMPSON:  Thank you.

21          May it please the court, July Simpson on behalf of the

22  Washington State defendants.

23          We woke up this morning to another mass shooting, this

24  time at a Walmart in Chesapeake, Virginia.  Earlier this week it

11:42:11  25  was a bar --

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Ms. Simpson*

25

1    (Interruption by court reporter)

2        THE COURT:  Ms. Simpson, we're gonna need you to slow

3    down substantially for the court reporter, please.

4    (Court reporter replied)

11:42:37  5        THE COURT:  Ms. Simpson, when we're operating through

6    video, it can be more difficult for the court reporter to take

7    down what you're saying.  So if you could just slow down,

8    please, for Ms. McMartin, we'd appreciate it.

9        MS. SIMPSON:  Yes, of course.  My apologies.

11:42:50  10        THE COURT:  Thank you.

11        MS. SIMPSON:  We woke up this morning to another mass

12    shooting, and this time it was at a Walmart in Chesapeake,

13    Virginia; and earlier this week it was at a bar in Colorado

14    Springs.  In fact, in the past seven days, there have been seven

11:43:12  15    mass shootings.  And since the 9/11 terrorist attacks, the 10

16    deadliest acts of criminal violence are all mass shootings

17    involving large-capacity magazines, and this is no coincidence.

18        Large-capacity magazines are firearm accessories

19    uniquely designed to enable shooters to kill as many people as

11:43:33  20    possible.  They are also, like mass shootings, unique to our

21    time.  They only became popular in the late aughts when

22    manufacturers made a concerted effort to market them to

23    civilians as tactical accessories, and the rise in popularity

24    has contributed to the rise in mass shootings from Sandy Hook to

11:43:53  25    Orlando to Las Vegas to Uvalde.

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Ms. Simpson*

1      And it's to prevent these kinds of tragedies that the

2  Washington legislature made a decision to regulate this one

3  particular type of firearm accessory that has an outsized role

4  in increasing the lethality of mass shooting events.

11:44:13   5      Plaintiffs have not met a single one of the *Winter*

6  factors, and they have to meet all of them to obtain the

7  extraordinary remedy of a preliminary injunction.  This court

8  should deny the plaintiffs' motion.

9      I'd like to focus on three main points today.  First,

11:44:26  10  the plaintiffs cannot succeed on the merits of this case because

11  large-capacity magazines are not arms protected by the Second

12  Amendment.  They're military accessories that are most useful in

13  military service and not useful in self-defense.

14      Second, the United States has a robust historical

11:44:45  15  tradition of regulating weapons after they become associated

16  with interpersonal violence.

17      And, third, plaintiffs face no irreparable harm while

18  this litigation is pending.

19      Turning to my first point, plaintiffs fail initially to

11:45:00  20  establish that large-capacity magazines are arms under the

21  Second Amendment, because large-capacity magazines are firearm

22  accessories not necessary to the functioning of a firearm and

23  because they are most useful in military service.  Large-capacity

24  magazines are just like silencers, scopes, bump stocks, or

11:45:20  25  barrel shrouds.

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Ms. Simpson*

1    The declaration of Ryan Busse makes clear that any

2    firearm that's capable of accepting a large-capacity magazine is

3    also capable of fully functioning with a smaller magazine, and

4    this is undisputed by the plaintiffs.

11:45:35  5    A good example of the -- sort of a part versus an

6    accessory contrast is a stock versus a bump stock.  While a

7    stock may -- is necessary for certain firearms to function, a

8    bump stock is an accessory that increases the lethality of a

9    gun, and it's not necessary to the functioning of that gun.  A

11:45:56  10    large-capacity magazine is, similarly, a military-style

11    accessory that increases the lethality of a gun, making it

12    easier to kill multiple targets quickly.

13    This court can deny the motion solely based on this;

14    but, additionally, the Second Amendment doesn't protect weapons

11:46:15  15    that are useful in military service.  *Heller* holds that the

16    Second Amendment is not a right to keep and carry any weapon

17    whatsoever, and plaintiffs conceded this in their argument

18    earlier.  Specifically, *Heller* also states that weapons most

19    useful in military service are not protected by the Second

11:46:33  20    Amendment.

21    Large-capacity magazines are designed to enhance a

22    shooter's capacity to shoot multiple human targets rapidly.

23    This is a military feature as demonstrated by the ATF findings

24    that we cite to in our brief as well as in the declaration of

11:46:51  25    Chief Diaz, none of which has been controverted by -- none of

28

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Ms. Simpson*

1    this evidence is controverted by the plaintiffs.

2           The Klarevas declaration, which is also uncontroverted,

3    states that large-capacity magazines are force multipliers when

4    it comes to kill potential.

11:47:08   5           Further, again, regarding -- turning to the declaration

6    of Chief Diaz, large-capacity magazines have little to no use in

7    genuine self-defense.  When we're talking about genuine

8    self-defense, we're talking about driving away an attacker, and

9    plaintiffs have put forth zero evidence of actual use in

11:47:28  10    self-defense.

11           Here, again, none of this evidence has been disputed by

12    the plaintiffs.  The plaintiffs only argue that there's a lot of

13    large-capacity magazines, but this isn't enough to meet their

14    burden.

11:47:41  15           The en banc panel in the Fourth Circuit in the *Kolbe*

16    case rejected a commonality test in favor of *Heller*'s clearer

17    most useful in military service standard.  And the court can and

18    should apply the military service standard, and there's no need

19    to separately decide whether large-capacity magazines are in

11:47:59  20    common use for self-defense as *Kolbe* did.  But even if there

21    were some sort of common use test, again, we're looking at

22    common use for self-defense, not whether or not there's a lot of

23    large-capacity magazines in the US.

24           Plaintiffs, again, they provide zero evidence that there

11:48:18  25    is any usage of large-capacity magazines in self-defensive

29
Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Ms. Simpson

1    situations; and, in fact, there's actually more people living in

2    the US who are under a large-capacity magazine restriction than

3    there are people who own large-capacity magazines according to

4    the statistic that plaintiffs cite to in their complaint, which

11:48:38  5    we do not concede is accurate.  However, even if it were, there

6    are more people living under large-capacity magazine

7    restriction.

8         Further, the uncontroverted testimony of the State

9    expert Lucy Allen shows large-capacity magazines are not

11:48:55 10    necessary, because the average number of shots fired in a

11    defensive situation is 2.2 and often no shots are fired.

12         Further, the uncontroverted testimony of Chief Diaz is

13    it only takes a few shots to drive away an aggressor, and,

14    again, that's the court -- that's when we're looking at true

11:49:14 15    self-defense is driving away an aggressor.  And, in fact, he

16    stated that he would question whether or not it's true

17    self-defense if more rounds were fired than a few.

18         Thus, further, you know, finding that large-capacity

19    magazines are in common use just because there's a lot of them

11:49:30 20    would -- frankly, it would allow the gun industry to control and

21    dictate what is constitutional under the Second Amendment, and

22    that's not how the Second Amendment works.

23         Imagine, just for example, if bump stocks had been

24    marketed as heavily as assault weapons and large-capacity

11:49:48 25    magazines were by the gun industry before the Las Vegas shooting

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Ms. Simpson

30

1    and before the subsequent banning of that technology.

2          And, finally, regarding the common use test, Judge

3    Easterbrook in the *Friedman* case points out just how circular

4    this test is.  Tommy guns were actually very common before they

5    were regulated and then ultimately banned; and now, because

6    they're banned, they're uncommon.

7          And, finally, on this point, Counsel referred repeatedly

8    to the *Fyock* v. *Sunnyvale* case, and it's important to note that

9    that case doesn't actually help them; and, additionally, it's

10   not binding precedent where he cites to the Southern District

11   case as opposed to the Ninth Circuit case.  He's, frankly,

12   citing to the wrong opinion.

13         There, the Ninth Circuit upheld a denial of the PI, and

14   it didn't weigh in on the merits, and it also declined to find

15   that large-capacity magazines are common.  It merely stated that

16   there has to be some sort of corollary right, albeit not

17   unfettered, to possess the magazines that are necessary to

18   render firearms operable.

19         And here, Washington's law does not affect the large

20   magazines that are necessary to render firearms operable.  All

21   it does is it limits large-capacity magazines that are not

22   necessary to make the firearms operable.  And, frankly, there's

23   no Ninth Circuit test or case that has held that large-capacity

24   magazines are arms.

25         Based on this, the plaintiffs have failed to meet their

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Ms. Simpson                                            31

 1   burden of showing that large-capacity magazines are arms under

 2   that first initial inquiry under *Bruen* where we're looking at

 3   the text of the Second Amendment.  And based on this alone, the

 4   court can deny the plaintiffs' motion.

11:51:33   5        But there's also the additional basis that the State has

 6   put forth ample and undisputed evidence that there is a

 7   historical tradition of regulating firearms and weapons in a

 8   manner that addresses criminal violence without burdening the

 9   right of self-defense.

11:51:50  10        At this stage, it is still the plaintiffs' burden to

11   establish a likelihood of success on the merits.  And by failing

12   to even engage in any of the three declarations set forth by the

13   three experts that the State defendants have put forth, the

14   plaintiffs fail to meet their burden.

11:52:08  15        Instead, the plaintiffs wrongly argue that the only

16   tradition put forth is the assault weapons ban of 1994.  But

17   then in their brief they cite to something that actually isn't

18   even in that bill, and they completely ignore our experts'

19   historical analysis from reconstruction onward, and they ignored

11:52:27  20   that again today in their oral argument.

21        *Bruen* actually spoke approvingly of this era, this time

22   after the adoption of the Fourteenth Amendment, and the

23   plaintiffs completely ignored the three experts' showing of this

24   pattern and tradition throughout time of this sort of three-step

11:52:45  25   test where initially a firearm, you know, is invented.  It

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Ms. Simpson*

1   takes, you know, perhaps several decades for, you know, for that

2   technology to be adopted.  And once it starts to sort of

3   saturate the civilian population, that's when it begins to start

4   to cause harm, and that's when states start to regulate those

5   firearms.

6          And, you know, the plaintiffs' reply brief and argument

7   today really sort of demonstrates that they fundamentally

8   misunderstand the analysis required under *Bruen* by arguing that

9   there's no tradition of regulating large-capacity magazines

10  because it's a new technology.

11         But, as *Bruen* says, we're not looking for a historical

12  twin.  What we're looking for is a comparable burden on the

13  right of self-defense and whether or not that burden is

14  comparably justified.

15         And here the State has submitted declarations from three

16  different historians showing a historical pattern in the United

17  States of regulating weapons in a manner that addresses criminal

18  violence without burdening the right of self-defense.

19         And large-capacity magazines follow this pattern.  It's

20  a narrow limitation on a particular type of hardware that's

21  associated with high-profile violence, with a limited, if any,

22  burden on self-defense.  And based on this alone, the plaintiff

23  [*sic*] can and should deny the plaintiffs' motion for preliminary

24  injunction.

25         But, turning to my third point, another reason to deny

MARILYNN S. McMARTIN, RDR, CRR, CCR #2515
OFFICIAL COURT REPORTER

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Ms. Simpson*

1   the plaintiffs' motion is that they fail to establish any kind

2   of irreparable harm.  The Second Amendment is a right to keep

3   and bear arms for self-defense.  It's not the right to keep and

4   bear any arms for whatever purpose or to purchase as many

11:54:32   5   firearms or large-capacity magazines as an individual can

6   possibly afford.

7         Here, Brumback already owns multiple large-capacity

8   magazines and firearms, and all of those remain unaffected by

9   this law.  He can use any of these guns for self-defense while

11:54:48   10   this litigation is pending.

11         And regarding Plaintiff Gimme Guns, as Your Honor

12   pointed out, they only show a monetary damage which is not

13   irreparable; and, further, the *Teixeira* Ninth Circuit case holds

14   there is no independent right to sell firearms.  Plaintiffs

11:55:08   15   quote in their reply and quote today to the wrong opinion under

16   the *Teixeira* case, but the Ninth Circuit has specifically said

17   there is no independent right to sell firearms.

18         And, you know, plaintiffs' own actions show that they're

19   not being irreparably harmed.  The plaintiffs waited several

11:55:28   20   months after this law went into effect to file their case and to

21   bring their motion, and this lack of urgency really connotes an

22   absence of irreparable harm.

23         And, finally, specifically regarding their

24   constitutional harm, this argument really falls flat because

11:55:48   25   they haven't established a constitutional harm, as we've argued,

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Ms. Simpson*

 1  because they're not likely to prevail on the merits.  And

 2  certainly there's no constitutional right to have more

 3  large-capacity magazines than you could possibly need for

 4  self-defense.

 5          And the three cases that, you know, that counsel cites

 6  to today -- you know, *Fyock*, the district court opinion;

 7  *McDougall*, that was vacated for an en banc hearing before the

 8  Ninth Circuit; and *Jones v. Bonta*, that was vacated for a

 9  rehearing -- their three best cases in support of their argument

10  today, none of those are good law.

11          And just finally, briefly, Your Honor, I'd like to just

12  briefly address the balance of equities and public interest.

13  The plaintiffs fail this factor as well, and it's yet another

14  basis to deny their motion.

15          This law addresses a threat to public health and safety,

16  and the evidence put forth in our declarations shows the

17  large-capacity magazine regulations are effective.  States that

18  have a large-capacity magazine regulation have a 50 percent

19  decrease in gun massacres.  They also have a 60 percent decrease

20  in gun massacre fatality rates.

21          And, again, their argument that they're protecting a

22  constitutional harm falls flat where they fail to establish a

23  constitutional injury; and, again, their asserted injury of not

24  being able to buy or sell unlimited large-capacity magazines, it

25  pales in comparison to the public safety interests of

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Pekelis*

1  Washingtonians that the legislature is seeking to protect by

2  passing this law.

3        To conclude, Washington's law regulates one particular

4  type of firearm accessory that vastly increases the lethality of

11:57:43  5  mass shooting events.  Plaintiffs fail to meet any of the *Winter*

6  factors, and this court should deny the plaintiffs' motion for

7  preliminary injunction.

8        THE COURT:  Thank you, Ms. Simpson.

9        MS. SIMPSON:  Thank you.

11:58:01  10        THE COURT:  All right.  Ms. Castillo, do you want to be

11  heard today?

12        MS. CASTILLO:  No, Your Honor.

13        THE COURT:  All right.  Mr. -- is it Mr. Pekelis?  Am I

14  saying that right?

11:58:13  15        MR. PEKELIS:  You said it perfectly, Your Honor.  Thank

16  you.

17        THE COURT:  All right.

18        MR. PEKELIS:  Zach Pekelis for Alliance for Gun

19  Responsibility.

11:58:21  20        I'd like to begin at the legal standard that the court

21  must apply under *Bruen*.  And mindful that Ms. Simpson has

22  already addressed many of the points that we've briefed, I'll

23  try not to be duplicative.

24        So the legal standard is this:  When the Second

11:58:34  25  Amendment's plain text covers an individual's conduct, the

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Pekelis*

1  Constitution presumptively protects its conduct.  The government

2  must then justify its regulation by demonstrating that it's

3  consistent with the nation's historical tradition of firearm

4  regulation.

11:58:48  5      And although *Bruen* doesn't describe that as a two-part

6  test, in practice it is another two-part test.  And the

7  threshold inquiry is a textual one, where the plaintiff has the

8  burden to establish that the plain text of the Constitution, of

9  the Second Amendment -- and nothing else -- covers the

11:59:05  10  individual's conduct in light of the challenged law.

11      So as courts in this circuit have correctly identified,

12  the first step is for the court to determine whether the plain

13  text covers the individual's conduct.  And to do that, the court

14  has to first identify and delineate the specific course of

11:59:26  15  conduct at issue, which in *Bruen* was carrying handguns publicly

16  for self-defense.

17      So in that case it was undisputed that handguns were, of

18  course, arms protected by the Second Amendment.  The question

19  was the extent to which carrying was protected by the Second

11:59:42  20  Amendment, and that -- of course, carrying, bearing arms is

21  textually supported in the Second Amendment.  So the textual

22  inquiry in *Bruen* was not as meaningful as it is in this case

23  where, first of all, you have the common use question that

24  Ms. Simpson explored.

11:59:58  25      And then what I'd like to address today is just whether

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Pekelis

37

1    LCMs are even arms at all.  And I think it's important to note

2    like what LCMs really are, what an external, detachable magazine

3    really is.  It's a metal box that holds cartridges, which is a

4    collection of -- cartridges are rounds.

12:00:21    5         It's not the same as a clip.  A clip, Your Honor, is

6    something that goes into a magazine, although in the popular

7    lexicon those two terms are sometimes used interchangeably.  The

8    clip actually contains the bullets, or rounds, and that's

9    inserted into a magazine, which is a reusable metal box.

12:00:39    10         It rarely wears out, as Ms. Simpson noted, and it's easy

11   to refurbish if necessary although, again, it's very unusual.

12   You'd have to be an extremely frequent shooter in order to wear

13   out your magazines.

14         So it's also important to note that not all firearms

12:00:56    15   even use external, detachable magazines.  For example, hunting

16   rifles, revolvers, shotguns, those typically do not involve

17   external, detachable magazines.  And, as Ms. Simpson noted, no

18   firearm requires large-capacity magazines to operate, and they

19   accept all magazines regardless of size.

12:01:21    20         So in light of that, in light of what magazines actually

21   are, the question is whether magazines are arms.  In *Heller* the

22   court defined arms as weapons of offense or armor of defense,

23   and it's clear that a large-capacity magazine is neither a

24   weapon of offense nor armor of defense.

12:01:42    25         It's an accessory, as Ms. Simpson has explained, and

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Pekelis*

1   there's caselaw establishing that accessories, like silencers,

2   are not protectable weapons under the Second Amendment.  That's

3   the *Cox* case from the Tenth Circuit.

4           And what they said in *Cox* was a silencer is a firearm

5   accessory.  It's not a weapon in itself nor is it armor of

6   defense.  Accordingly, it can't be a bearable arm protected by

7   the Second Amendment.  Like silencers, lasers, bump stocks,

8   et cetera, LCMs are accessories, not protected arms.

9           And Ms. Simpson's also correct that there's no circuit

10  precedent, whether *Fyock* nor *Jackson*, that precludes holding

11  that large-capacity magazines are not protectable arms.  In

12  *Fyock*, again, the court didn't address this issue at all.  It

13  expressly bypassed the historical analysis step and assumed

14  without deciding that the city's large-capacity magazine

15  restriction burdened the Second Amendment.

16          And *Jackson* didn't involve large-capacity magazines at

17  all.  It involved hollow-pointed bullets, a type of ammunition

18  directly.  And the court reasoned, not based on the text of the

19  Second Amendment, didn't rely on -- didn't ask whether

20  hollow-tipped bullets were actually arms.  It took sort of a

21  penumbral approach and reasoned that, well, the right to possess

22  firearms for protection implies a corresponding right to obtain

23  the bullets necessary to use them.

24          But that's not what *Bruen* instructs the courts to do.

25  The textual question is whether the plain text -- not some

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Pekelis                    39

1  implication or penumbra -- whether the plain text protects the

2  conduct in question.

3       So *Jackson* went too far with respect to hollow-tipped

4  bullets, and certainly that reasoning shouldn't apply to an

5  entirely different question of whether the plain text covers

6  large-capacity magazines or other accessories.

7       And I'd point the court to a decision not cited in the

8  briefs but which contains a very helpful discussion of exactly

9  that textual versus penumbral point, and it's *Defense*

10 *Distributed v. Bonta* out of the Central District of California

11 this year, 2022, Westlaw 15524977.

12      In that case it rejected the plaintiffs' argument that

13 the right to keep and bear arms implicitly includes a right to

14 manufacture arms at home because that was not part of the plain

15 text -- "manufacture," that is, was not part of the plain text.

16      So I'd like to leave the textual point, the threshold

17 question, and turn to the history, and the question here is

18 whether the law is consistent with the nation's historical

19 tradition of firearm regulation.

20      And, you know, the key things to remember, the key

21 guideposts that *Bruen* gave the lower courts are that the modern

22 regulation need not be a dead ringer for historical precursors.

23 It's well-established -- it's looking only for a well-established

24 and representative historical analogue, not a historical twin,

25 and the laws need be relevantly similar, which means that they

12:03:43
12:04:00
12:04:24
12:04:42
12:05:01

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Pekelis*

1   impose a comparable burden on the exercise of the right to bear

2   arms that is comparably justified by social interests.

3           So Mr. Serrano was wrong that the defendants and the

4   intervenor-defendant have relied solely on 20th century

12:05:21   5   evidence.  We've cited evidence from the 18th century in terms

6   of regulations on trap guns and knives; we've cited evidence

7   from the 18th -- excuse me -- from the 19th century, pistols and

8   revolvers were regulated; as well as the early 20th century,

9   machine guns.  So those are all relevant to the court's inquiry,

12:05:40  10   and it's incorrect that *Bruen* prohibits inquiry into post-Second

11   Amendment ratification history.

12           *Heller*, in fact, which first discerned and delineated

13   the individual right to bear arms, looked at laws from all of

14   those time periods -- 18th century, 19th century, and 20th

12:06:01  15   century -- in understanding the scope of the Second Amendment

16   right.

17           And *Bruen* looked at the 18th and 19th century laws as

18   well.  What *Bruen* said was not that 19th and 20th century laws

19   weren't relevant but that when they conflict with earlier

12:06:16  20   evidence from around the Second Amendment's ratification that

21   they have less value.

22           So we don't see a conflict here at all.  In fact, all

23   three sources of laws -- 18th, 19th, and 20th century -- tell us

24   the same thing as a historical point, which is that when a new

12:06:32  25   technology, new firearm technology is developed and is

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Pekelis*

1   widespread, becomes widespread and presents dangers to human

2   safety and health, legislatures historically have been free and

3   willing to regulate that new technology.

4          So I'd also want to say one more thing about the

5   relevant time period.  *Bruen* acknowledged the ongoing scholarly

6   debate over whether courts should primarily rely on the

7   prevailing understanding of an individual right when the

8   Fourteenth Amendment was ratified in 1868 or whether the Second

9   Amendment was ratified in 1791.

10          And *Bruen* didn't weigh in on that important question,

11   but from a just doctrinal standpoint it certainly makes sense to

12   consider historical evidence from around 1868 after this

13   ratification of the Fourteenth Amendment, particularly when

14   those histories don't conflict.

15          And without getting too deep into the constitutional

16   doctrine, "jot-for-jot incorporation" is the term typically

17   ascribed to when the meaning of the Bill of Rights, as

18   originally understood, is the same as when it's incorporated

19   against the states.

20          And there was some debate as to whether jot-for-jot

21   incorporation was the correct doctrine.  And since *Ramos v.*

22   *Louisiana* -- decided, I believe, in 2018 -- now we know.  The

23   Supreme Court has held that, yes, jot-for-jot incorporation is

24   the rule; meaning that when a right is incorporated -- when an

25   original Bill of Rights right is incorporated against the states

12:06:52   5
12:07:11   10
12:07:31   15
12:07:50   20
12:08:08   25

42
Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Pekelis

1   through the Fourteenth Amendment, it has the exact, same meaning

2   as it does against the federal government.

3          So the question then becomes is it the 1791 meaning or

4   is it the 1868 meaning, and the single article cited by *Bruen*

12:08:25  5   says it's the 1868 meaning.  That article, cited by Justice

6   Thomas's majority opinion, Kurt Lash, speaking of the local

7   rights, it says:  When the people adopted the Fourteenth

8   Amendment, they readopted the original Bill of Rights and did so

9   in a manner that invested those original 1791 texts with new

12:08:45  10   1868 meanings.

11          And although *Bruen* doesn't come down one way or the

12   other in that debate, as a logical matter, when you're thinking

13   about the people around the Fourteenth Amendment reincorporating

14   it, it makes much more sense that it would be a backwards

12:08:59  15   meaning rather than a -- incorporating the older 1789 meaning,

16   because there's been a whole new history, 60 years of -- 70

17   years of history that have developed in the intervening period.

18   And that's all I'll say about the constitutional doctrine.

19          Moving on to irreparable harm, unless the court has any

12:09:18  20   questions on the merits?

21          THE COURT:  I do not.

22          MR. PEKELIS:  So the plaintiffs are wrong that in the

23   Ninth Circuit there is a per se irreparable harm in

24   constitutional cases, and they're right that there is such a

12:09:30  25   thing in First Amendment cases.  And that does come from *Elrod*

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Pekelis*

1   *v. Burns*, but *Elrod* specifically says -- and they conveniently

2   omit this from their brief, plaintiffs do -- that it's the loss

3   of First Amendment freedoms constitutes an irreparable injury.

4          And this makes sense because the First Amendment has an

12:09:47   5   expressive and a dignitary interest attached to it.  If you're

6   prevented from speaking, then it's almost by definition a

7   noncompensable harm; whereas with other types of rights, such as

8   a commerce clause violation or a contracts clause violation,

9   it's less clear how it's noncompensable or dignitary interest's

12:10:07  10   at stake.

11          So as Ms. Simpson mentioned, *McDougall v. City of*

12   *Ventura* is a Ninth Circuit case.  It does hold, as plaintiffs

13   say, that any constitutional violation constitutes an

14   irreparable harm.  The problem for plaintiffs is it was vacated

12:10:23  15   upon grant of rehearing en banc, so that is not good law.

16          And there is no good law from the Ninth Circuit, the

17   court of appeals, holding that non-First-Amendment-type rights

18   automatically connote an irreparable harm.  In fact, the Ninth

19   Circuit has said just the opposite.

12:10:40  20          In *Cuviello v. City of Vallejo*, 944 F.3d 816, the Ninth

21   Circuit said while a colorable speech claim raises the specter

22   of irreparable harm, we must still examine the irreparable harm

23   factor independently.  And so that's what this court must do as

24   well.  I'd also point the court to a relatively recent District

12:11:03  25   of Oregon opinion that canvasses the caselaw, the Ninth Circuit

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Pekelis*

1    caselaw on this very issue, and that's *Great Northern v. Coba,*

2    2020, Westlaw 6820793.

3            So what are the other irreparable harm injuries that

4    plaintiffs posit beyond the per se constitutional theory?  The

5    first is easy to dismiss.  That's Gimme Guns's monetary

6    injury -- alleged monetary injury, I should say, as the court

7    correctly pointed out.  Almost by definition, a monetary injury

8    is not irreparable because it is compensable in damages.

9            I couldn't quite understand what plaintiffs meant when

10    they said that there's some sort of separate inability to sell

11    injury, but I agree with Ms. Simpson that that is, you know,

12    foreclosed by *Teixeira*.  There's not an individual right to sell

13    firearms under the Second Amendment.

14            I also heard plaintiff say something to the effect that

15    it isn't just LCMs that Gimme Guns is prevented from selling but

16    also other types of firearms, presumably some sort of rifle that

17    comes with LCMs.  And that's just not in the record, and the

18    court should disregard that.

19            It's, in fact, contrary to everything in the record

20    which shows that large-capacity magazines, while they do come

21    standard on some firearms, there's always or almost always an

22    option to have a smaller capacity magazine, a 10-round magazine

23    instead.  So that's simply not part of the record.  Gimme Guns

24    has no irreparable injury here.

25            It comes down to Brumback, who said that he owns

12:11:26
12:11:43
12:12:00
12:12:16
12:12:35

45

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Argument by Mr. Pekelis*

1    multiple -- excuse me -- several large-capacity magazines, so we

2    can assume three or more, and that he's also -- it also

3    establishes that he's built guns or manufactured guns or

4    repaired guns, so we can presume that Mr. Brumback is certainly

12:12:54    5    capable of repairing any magazines that develop any wear.

6          So as the Busse declaration establishes, it's very easy

7    to repair magazines that wear down, and such wear is extremely

8    unusual to the point where they wouldn't function.  So the

9    question is:  Does Mr. Brumback have an irreparable harm in not

12:13:17    10    being able to buy more than the at least three LCMs that he

11    already owns?

12          And the answer to that clearly is no, because we know

13    that there's been two instances, perhaps, of using more than

14    10 bullets in self-defense out of thousands, tens of thousands

12:13:37    15    of potential inquiries that expert witness Lucy Allen has

16    discerned.  That represents .3 percent of the NRA's own

17    database.

18          And it's also noteworthy that those two instances come

19    from the NRA's self-reported database which, of course, has an

12:13:56    20    interest in, in promoting using a lot of bullets in self-defense,

21    using a lot of rounds in self-defense.  And the other database

22    that's noteworthy, there's zero instances of using more than

23    10 rounds in self-defense.

24          So there's, there's an infinitesimally small chance that

12:14:15    25    Mr. Brumback would actually need one large-capacity magazine to

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Pekelis

46

 1   engage in lawful self-defense, let alone more than the three he

 2   already owns.

 3           I'd also point out that nothing prevents Mr. Brumback

 4   from buying 10-round magazines, as many as he wants, or other

 5   weapons, other firearms which he can load with either his -- the

 6   LCMs that he owns or new 10-round magazines that he wishes to buy.

 7           So it's just unfathomable that Mr. Brumback, as a

 8   practical matter, as a realistic matter, would suffer any

 9   injury, let alone an irreparable injury from not being able to

10   purchase new large-capacity magazines between now and the time

11   that this litigation concludes.

12           Finally, in the balance of equities, Mr. Brumback's

13   minimal interests pale in comparison to the public's interests

14   in reducing gun violence through this very targeted commonsense

15   measure of restricting purchase of large-capacity magazines.

16           The overwhelming evidence, as Ms. Simpson indicated, is

17   that the large-capacity magazine restriction in Washington will

18   be effective.  We know that they are used in 60 percent of mass

19   shootings where magazine capacity is known, including the 11

20   deadliest shootings including Vegas, Orlando, and Uvalde.

21           And it's no mystery why large-capacity magazines -- this

22   isn't like some anomalous statistic.  It's common sense.  We

23   know that large-capacity magazines enable the shooter to fire

24   more bullets in a shorter period of time and that that longer

25   period of time not only causes more injuries, more bullets being

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Argument by Mr. Pekelis

47

1   actually shot, but it deprives the victims and bystanders of

2   that crucial pause period where the, where the shooter has to

3   reload -- which can take several seconds -- giving them an

4   opportunity either to escape, to flee, or to disarm or intervene

12:16:10   5   against the attacker, as happened in the Colorado Springs

6   shooting tragically last week where an individual intervened.

7        So in the 12 states that have adopted large-capacity

8   magazine restrictions, we've seen the benefits of a 50 percent

9   decrease in gun massacres, and Washington should be entitled to

12:16:35   10   reap the benefits of that, of that regulation as well.

11        I'll just conclude by saying that this isn't just about

12   the raw abstract statistics.  These are real shootings, real

13   massacres, real victims, and impose real trauma on their

14   communities.

12:16:54   15        Since the briefing in this case closed just a few weeks

16   ago, November 7, 18 mass shootings have occurred in the United

17   States, including at the University of Virginia, in Colorado

18   Springs, and, most tragically, last night in Chesapeake,

19   Virginia, at a Walmart.  And that comes from the gun violence

12:17:11   20   statistics authority.

21        So the question is not if there's going to be another

22   mass shooting but when and where, and the people of Washington

23   have a powerful interest in making sure that the next mass

24   shooter, if he strikes here, will not be able to just go out and

12:17:28   25   purchase a 30-, 50-, or a 100-round magazine at his local gun

48
Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Reply by Mr. Serrano

1    shop.  It's a modest, commonsense measure, this law, that

2    reduces the risk of mass murder, gives victims a fighting chance

3    to escape or intervene, and saves lives.

4         If the court has no further questions, we ask -- we join

12:17:47    5    the State in asking that the court deny the motion for

6    preliminary injunction.

7         THE COURT:  Thank you, Mr. Pekelis.

8         Mr. Serrano.

9         MR. SERRANO:  Thank you, Your Honor.

12:18:00    10        I'm gonna pick up where Mr. Pekelis left off.  Here he's

11   citing to the fact that in the event that another mass shooting

12   occurs, that person will presumably or invariably utilize these

13   types of magazines.

14        I'd like to point to the inverse of that, which is

12:18:22    15   Mr. McKnight's declaration which we filed with our complaint.

16   It was supposed to be -- it would have been, I think, labeled

17   like 1-10, but I think it's now ECF No. 35.

18        And in this Mr. McKnight, you know, painstakingly goes

19   through what it would take for someone on the defensive side to

12:18:43    20   reload.  He talks about individuals who are highly trained and

21   capable, that it would require for them to utilize -- you know,

22   express all the bullets in their magazine and then to reload, it

23   could take up to 15 or 20 seconds.  These are highly trained

24   individuals.  And that's when you calculate out, you know, the

12:19:01    25   adrenaline, all the other emotions and everything that occurs

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Reply by Mr. Serrano
49

 1    when this type of attack occurs.  We've seen individuals who've

 2    been able to stop mass shootings earlier this year in the mall

 3    and I believe in Indiana because of their ability to utilize

 4    guns properly.

12:19:20   5        So this isn't just about the mass shootings.  That's,

 6    that's a misstatement.  The Constitution protects the individual

 7    right to bear his or her arms in defense of him or herself or,

 8    in the federal component, as a part of -- as a well-regulated

 9    militia, to protect the state interests.

12:19:43  10        I'd also like to address the irreparable harm.  Now, I

11    recognize that *Jones v. Bonta* is one of the many, many cases

12    that in light of *Bruen* has been vacated.  I, obviously, offer

13    that.  But it's very clear, the district court also erred in its

14    analysis of the irreparable harm preliminary injunction factor,

12:20:04  15    period.  The deprivation of constitutional rights unquestionably

16    constitutes irreparable injury.

17        *Jones v. Bonta* is a gun rights case.  This is the

18    text -- this is the context that they're utilizing this

19    statement in.  The district court offered three rationales that

12:20:22  20    fail.  First, the district court erred in holding that there was

21    no irreparable harm, because young adults could still obtain

22    firearms under exception.  As we discussed above, the exceptions

23    do not alleviate the ban's severe burden on the Second Amendment

24    rights.  They do not allow the plaintiffs to avoid irreparable

12:20:41  25    harm for the same reasons.

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Reply by Mr. Serrano*

1    Here, when there's a blanket prohibition on a type of

2    arms which both *Heller* and *Fyock* have addressed -- and I

3    understand that these cases, *Fyock* has been overturned, but the

4    circuit court -- or -- yeah -- the circuit court did not address

12:21:02  5    the merits of the case.  It overturned.  It did not address --

6    as I believe it was Mr. Jones indicated, it kind of bypassed

7    that analysis.  So when *Fyock* holds that these magazines are

8    arms, when *Heller* holds that these magazines are arms, you know,

9    that's what we have to go on.

12:21:19  10    I'd also like to note that in *Miller v. Bonta*,

11    addressing what Ms. Simpson said, one is to be forgiven if one

12    is persuaded by news media and others that the nation is awash

13    with murderous AR/assault rifles.  The facts, however, do not

14    support this hyperbole, and the facts matter.

12:21:40  15    Federal Bureau of Investigation murder statistics do not

16    attract -- do not track assault rifles, but they do show that

17    killing by knife attack is far more common than murder by any

18    kind of rifle.  In California, murder by knife occurs seven

19    times more often than murder by rifle.

12:21:58  20    According to the FBI statistics, California saw 252

21    people murdered with a knife while 34 were killed with some type

22    of rifle, not necessarily an AR-15.  A Californian is three

23    times more likely to be murdered by an attacker's bare hands,

24    fists, or feet than by his rifle.

12:22:17  25    I understand we're not in California, and I understand

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Reply by Mr. Serrano*

1    these mass shootings that the legislature has attempted to

2    cease, allegedly, through this, through Senate Bill 5078, I

3    understand that that's presumably the intent here.

4            Nonetheless, individual rights -- like Mr. Brumback,

12:22:37    5    whether he owns and possesses these magazines, they can fail.

6    They can wear out.  And whether or not they're the clip or the

7    magazine, they're certainly not silencers.  They're certainly

8    not scopes.  You know, those are things that allow an individual

9    to either hide what they're able to do or to see from afar.

12:23:01    10    These are the ability to feed ammunition into the tube, to fire

11    a projectile.

12            These are arms, and by limiting an individual like

13    Mr. Brumback, his ability to obtain them legally, or from

14    Mr. Gilroy/Gimme Guns' ability to sell them to desiring patrons,

12:23:27    15    Senate Bill 5078 has unquestionably infringed on individual

16    rights to bear arms in self-defense.

17            Do you have any further questions, Your Honor?

18            THE COURT:  I do not.

19            MR. SERRANO:  Okay.  With that, thank you.

12:23:40    20            THE COURT:  All right.  I'll just check in and see if

21    anyone else has any follow-up at this point.

22            Ms. Castillo?

23            MS. CASTILLO:  No, Your Honor.

24            THE COURT:  All right.  Ms. Simpson, anything further at

12:23:54    25    this time?

*Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD*    52
*Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022*
*Court's Oral Comments*

1          MS. SIMPSON:  Nothing further unless Your Honor has any

2    questions.

3          THE COURT:  I do not.

4          Mr. Pekelis, anything further?

12:24:01  5          MR. PEKELIS:  No, Your Honor.

6          THE COURT:  All right.  Thank you, folks, for making

7    yourselves available today, as Mr. Serrano noted, the day before

8    Thanksgiving.  Your arguments have been very helpful.  I

9    anticipate a ruling within approximately 30 days.

12:24:18  10         Is there anything else the parties would like me to take

11   up at this time?

12        Mr. Serrano?

13         MR. SERRANO:  No, ma'am.

14         THE COURT:  All right.  Ms. Simpson?

12:24:28  15         MS. SIMPSON:  No, Your Honor.

16         THE COURT:  Ms. Castillo?

17         MS. CASTILLO:  No, Your Honor.

18         THE COURT:  And, Mr. Pekelis?

19         MR. PEKELIS:  No, Your Honor.

12:24:41  20         THE COURT:  All right.  That concludes this hearing.

21   Thank you, folks.

22         Court's in recess.

23         THE COURTROOM DEPUTY:  All rise.

24         Court is adjourned.

12:25:05  25       (Hearing concluded at 12:25 pm)

Brumback; et al., v. Ferguson; et al./1:22-CV-03093-MKD
Motion for Injunctive and Declaratory Relief Hearing - November 23, 2022
Reporter's Certificate                                                      53

1              C E R T I F I C A T E

2

3        I, MARILYNN S. McMARTIN, Registered Diplomate Reporter and

4    Certified Realtime Reporter, do hereby certify:

5        That I am an Official Court Reporter for the United States

6    District Court for the Eastern District of Washington in Yakima,

7    Washington;

8        That the foregoing proceedings were taken on the date and

9    at the time and place as shown on the first page hereto; and

10       That the foregoing proceedings are a full, true and

11   accurate transcription of the requested proceedings, duly

12   transcribed by me or under my direction, to the best of my

13   ability.

14       I do further certify that I am not a relative of, employee

15   of, or counsel for any of said parties, or otherwise interested

16   in the event of said proceedings.

17       DATED this 3rd day of January, 2023.

18

19

20

21       Marilynn S. McMartin, RDR, CRR

22       Washington CCR #2515

23       Official Court Reporter

24       Yakima, Washington

25