FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 25, 2023

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL SCOTT BRUMBACK, an individual, and GIMME GUNS, a sole proprietorship,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROBERT W. FERGUSON, in his official capacity as Washington State Attorney General; JOHN R. BATISTE, in his official capacity as Chief of the Washington State Patrol; ROBERT UDELL, in his official capacity as the Sheriff for Yakima County, Washington; and JOSEPH A. BRUSIC, in his official capacity as County Prosecutor for Yakima County,<br><br>        Defendants,<br><br>ALLIANCE FOR GUN RESPONSIBILITY,<br><br>        Defendant-Intervenor. | No. 1:22-cv-03093-MKD<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTIVE AND DECLARATORY RELIEF<br><br>**ECF No. 20** |

ORDER - 1

Before the Court is Plaintiffs Michael Scott Brumback's and Gimme Guns' Motion for Injunctive and Declaratory Relief.  ECF No. 20.  On November 23, 2022, the Court held a hearing on the motion.  ECF No. 37.  Simon Peter Serrano and Austin Hatcher appeared on behalf of Plaintiffs.  Kristin Beneski, R. July Simpson, and Andrew W. Hughes appeared on behalf of Defendants Robert W. Ferguson, in his official capacity as Washington State Attorney General, and John R. Batiste, in his official capacity as the Chief of the Washington State Patrol ("State Defendants").  Callie A. Castillo appeared on behalf of Defendants Joseph A. Brusic, in his official capacity as Yakima County Prosecuting Attorney, and Robert Udell, in his official capacity as Yakima County Sheriff ("Yakima County Defendants").  Zachary J. Pekelis appeared on behalf of Defendant-Intervenor Alliance for Gun Responsibility ("Alliance").

Plaintiffs' instant motion seeks a preliminary injunction enjoining enforcement of Engrossed State Senate Bill 5078 ("ESSB 5078") and its effective amendments to RCW 9.41 *et seq*, and declaring ESSB 5078 unconstitutional.  ECF No. 20 at 2, 11.  For the reasons set forth below, the Court denies Plaintiffs' motion.

## BACKGROUND

Plaintiff Brumback is a United States citizen, resident of Washington, and retired armed services member who has never been convicted of a crime.  ECF No.

1-8 at 1-3 ¶¶ 1-7.  He owns a number of different firearms.  ECF No. 1-8 at 2 ¶ 2.

Brumback has, for many years, owned and used ten-, fifteen-, twenty-, and thirty-

round ammunition magazines for his firearms.  ECF No. 1-8 at 10 ¶ 31.

Plaintiff Gimme Guns is a sole proprietorship located in Selah, Washington,

owned and operated by Charles Gilroy since January 2015.  ECF No. 1-9 at 1-2

¶¶ 2-3.  Gimme Guns is a federally licensed firearms dealer.  ECF No. 1-9 at 1-2

¶ 2.  Gimme Guns sells handguns, rifles, magazines, and other gun accessories.

ECF No. 1-9 at 2 ¶¶ 5-6.  Gimme Guns sells on average 4,500 firearms every year.

ECF No. 1-9 at 2 ¶ 5.

On March 23, 2022, Washington Governor Jay Inslee signed ESSB 5078

into law.  2022 Wash. Sess. Laws, ch. 104, § 6.  ESSB 5078 amended RCW 9.41

to add a new section that provides, "[n]o person in this state may manufacture,

import, distribute, sell, or offer for sale any large capacity magazine, except as

authorized in this section."  *Id.* § 3; RCW 9.41.370(1).  A "large capacity

magazine" is defined as follows:

> an ammunition feeding device with the capacity to accept
> more than 10 rounds of ammunition, or any conversion kit,
> part, or combination of parts, from which such a device
> can be assembled if those parts are in possession of or
> under the control of the same person, but shall not be
> construed to include any of the following:
>
> (a) An ammunition feeding device that has been
> permanently altered so that it cannot accommodate more
> than 10 rounds of ammunition;

ORDER - 3

(b) A 22 caliber tube ammunition feeding device; or

(c) A tubular magazine that is contained in a lever-action firearm.

RCW 9.41.010(25).  ESSB 5078 went into effect on July 1, 2022.  2022 Wash. Sess. Laws, ch. 104 § 6.

Brumback avers that it is his intent and desire to purchase an ammunition magazine with the capacity to hold more than ten rounds.  ECF No. 1-8 at 5 ¶ 14. On July 1, 2022, Brumback was refused a sale of a thirty-round rifle magazine at two different gun stores.  ECF No. 1-8 at 6-8 ¶¶ 23-26.  On July 9, 2022, Brumback went to Gimme Guns to purchase a thirty-round rifle magazine and was denied.  ECF No. 1-8 at 8 ¶ 27.  Prior to ESSB 5078, Gimme Guns had sold, on average, "a couple dozen" magazines with the capacity to hold more than ten rounds every week.  ECF No. 1-9 at 2 ¶ 8.  Gimme Guns has denied sales of such magazines since the passage of ESSB 5078.  ECF No. 1-9 at 2 ¶ 9.

On July 14, 2022, Plaintiffs filed their Complaint for Injunctive and Declaratory Relief in Yakima County Superior Court.  ECF No. 1-4.  On July 21, 2022, the State Defendants filed a Notice of Removal.  ECF No. 1.  On July 27, 2022, the State Defendants filed an Amended Notice of Removal.  ECF No. 3.  The same day, the Alliance filed a Motion to Intervene, ECF No. 4, which the Court

ORDER - 4

granted on September 27, 2022, ECF No. 19.  Plaintiffs filed the instant motion on

October 3, 2022.  ECF No. 20.

## LEGAL STANDARD

Fed. R. Civ. P. 65(a) provides for preliminary injunctions.  "A preliminary

injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat.*

*Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  To obtain a

preliminary injunction, a movant must establish "that (1) he is likely to succeed on

the merits of his claim, (2) he is likely to suffer irreparable harm absent the

preliminary injunction, (3) the balance of equities tips in his favor, and (4) a

preliminary injunction is in the public interest."  *Baird v. Bonta*, No. 23-15016,

2023 WL 5763345, at *2 (9th Cir. Sept. 7, 2023) (citing *Winter*, 555 U.S. at 20).

"When . . . the nonmovant is the government, the last two *Winter* factors 'merge.'"

*Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The first factor is considered "a threshold inquiry" and "the most important

factor."  *Id.* (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir.

2020)).  "As a general matter, district courts must consider all four *Winter* factors,"

although "a court need not consider the other factors if a movant fails to show a

likelihood of success on the merits."  *Id.* (internal quotation marks, alterations, and

citations omitted).  Further, the Ninth Circuit applies a "sliding scale" approach to

these factors.  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd.*

*of Educ.*, No. 22-15827, 2023 WL 5946036, at *13 (9th Cir. Sept. 13, 2023)

(citation omitted).  "[A] stronger showing of one element may offset a weaker

showing of another."  *Id.* (citation omitted).  If a plaintiff demonstrates that the

"balance of equities 'tips sharply in [his] favor,' the plaintiff must raise only

'serious questions' on the merits—a lesser showing than likelihood of success."

*Id.* (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir.

2011)).

Where a plaintiff alleges a constitutional injury, "the first factor is especially

important."  *Baird*, 2023 WL 5763345, at *3.  "If a plaintiff in such a case shows

he is likely to prevail on the merits, that showing usually demonstrates he is

suffering irreparable harm no matter how brief the violation."  *Id*. (citation

omitted).  "And his likelihood of succeeding on the merits also tips the public

interest sharply in his favor because it is 'always in the public interest to prevent

the violation of a party's constitutional rights.'"  *Id*. (quoting *Riley's Am. Heritage*

*Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).  The district court should

"pay particular regard for the public consequences in employing the extraordinary

remedy of injunction."  *Winter*, 555 U.S. at 24.

## DISCUSSION

The question before the Court at this stage is not, as Plaintiffs assert,

"whether [ESSB 5078] and its effective amendments to [RCW 9.41 *et seq.*]

ORDER - 6

impairs and/or infringes upon the right of Washington citizens to keep and/or bear arms." ECF No. 20 at 2. The question before the Court is whether Plaintiffs have made the requisite showing under the relevant standard. Here, the relevant standard is that governing preliminary injunctions, and the relevant showing is (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of relief, and (3) that equity, balanced between Plaintiffs' interests and the public's interest, favors the Plaintiffs. *See Baird*, 2023 WL 5763345, at *2.

**A. Likelihood of Success on the Merits**

As explained above, the first *Winter* factor is "the most important" and is "especially important when a plaintiff alleges a constitutional violation and injury." *Baird*, 2023 WL 5763345, at *3. The Complaint asks the Court to declare ESSB 5078 unconstitutional pursuant to the Second Amendment of the United States Constitution and Article I, section 24 of the Washington Constitution, and to enjoin its enforcement. ECF No. 1-4 at 2.

*1. The Second Amendment*

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the United States Supreme Court clarified that the Second Amendment right is "an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). The Court noted that self-defense is "the *central*

*component* of the right" and that the right is "not unlimited." *Id.* at 599, 626

(emphasis in original). In *McDonald v. City of Chicago*, the Court held that the

Due Process Clause of the Fourteenth Amendment prohibits state infringement of

this Second Amendment right. 561 U.S. 742, 791 (2010).

In *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Court articulated a test

for Second Amendment challenges to firearm regulations. 142 S. Ct. 2111, 2126

(2022). The Ninth Circuit, in *United States v. Alaniz*, articulated the *Bruen* test as

follows:

> [W]hen the Second Amendment's plain text covers an
> individual's conduct, the Constitution presumptively
> protects that conduct. To justify its regulation, . . . the
> government must demonstrate that the regulation is
> consistent with this Nation's historical tradition of firearm
> regulation. Only if a firearm regulation is consistent with
> this Nation's historical tradition may a court conclude that
> the individual's conduct falls outside the Second
> Amendment's "unqualified command."

69 F.4th 1124, 1128 (2023) (quoting 142 S. Ct. at 2126); *see also Baird*, 2023 WL

5763345, at *5; *Teter v. Lopez*, 76 F.4th 938, 948 (9th Cir. 2023).

Following *Bruen*, courts must ask two questions when considering a Second

Amendment challenge. First, whether the Second Amendment's "plain text"

covers the conduct targeted by regulation. *Alaniz*, 69 F.4th at 1128. Second, if the

conduct is covered, whether the government has demonstrated that the regulation

"is consistent with the Nation's historical tradition of firearm regulation." *Alaniz*,

69 F.4th at 1128 (citing 142 S. Ct. at 2130, 2134-35).  The "burdens at the preliminary injunction stage track the burdens at trial."  *Baird*, 2023 WL 5763345, at *2.  Here, if Plaintiffs demonstrate that the Second Amendment's plain text covers the conduct prohibited by ESSB 5078, "the regulation will stand only if the government can 'affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms' in the United States."  *Id.* at *5 (quoting *Bruen*, 142 S. Ct. at 2127).

> i. Whether the Second Amendment's Plain Text Covers the Regulated Conduct

The plain text of the Second Amendment gives the Court three points of inquiry to contend with: "the right of [1] the people [2] to keep and bear [3] Arms . . . ."  U.S. Const. amend. II; *Bruen*, 142 S. Ct. at 2134-35; *Teter*, 76 F.4th at 948-50; *Alaniz*, 69 F.4th at 1128.  To determine the meaning of "constitutional text," a court should "rel[y] on history."  *Bruen*, 142 S. Ct. 2130.  Although the meaning of the Second Amendment is "historically fixed," its protections "appl[y] to new circumstances."  *Id.* at 2132.

A district court is "entitled to decide a case based on the historical record compiled by the parties."  *Id.* at 2130 n.6.  It is Plaintiffs who seek a preliminary injunction.  Therefore, it is Plaintiffs' burden to demonstrate the plain text of the Second Amendment covers conduct prohibited by ESSB 5078.  *See Baird*, 2023 WL 5763345, at *2.

ORDER - 9

a.   The People

In *Bruen*, it was "undisputed that petitioners . . . —two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."  142 S. Ct. at 2134 (citing *Heller*, 554 U.S. at 580).  Similarly here, Defendants do not dispute that Brumback, the individual plaintiff, is one of "the people" with a right to keep and bear arms protected the Second Amendment.  *See* ECF No. 22; ECF No. 23 at 6-7; ECF No. 32 at 10-12.

The State Defendants and Alliance argue that Gimme Guns' right to sell firearms is not protected under the Second Amendment.  ECF No. 23 at 24 ("Gimme Guns' rights as a seller are nonexistent . . . ."); ECF No. 32 at 28 ("[T]he Second Amendment does not protect Gimme Guns' ability to sell firearm accessories.").  However, no party addresses whether Gimme Guns is among "the people" for Second Amendment purposes.[1]

---

[1] Legal persons share in certain constitutional liberties afforded to individuals.  *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 342 (2010) (First Amendment); *Physicians' Servs. Med. Grp., Inc. v. San Bernadino Cnty.*, 825 F.2d 1404, 1407 (9th Cir. 1987) (Fourteenth Amendment due process rights); *Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 283 (9th Cir. 1974) (same).  Legal persons do not share in others, and for certain rights, their extension to legal

ORDER - 10

The Court need not resolve the question, here, because in Washington, "[a] sole proprietorship does not have legal standing to sue or be sued in its own right." *Dolby v. Worthy*, 173 P.3d 946, 947 (Wash. Ct. App. 2007). Federal courts apply state law to determine whether a sole proprietorship is a separate legal entity. *See Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 473 (9th Cir. 2023). "A sole proprietorship is legally indistinguishable from its owner." *Mikolajczak v. Mann*, 406 P.3d 670, 673 (Wash. Ct. App. 2017). Gilroy, in his affidavit, identifies Gimme Guns as a sole proprietorship. ECF No. 1-9 at 1 ¶ 2. Although the State Defendants refer to Gimme Guns as an LLC in their brief, there is no evidence in the record disputing Gilroy's assertion. *See* ECF No. 23 at 3.

The Court construes the Complaint as asserting Gilroy's rights, rather than asserting the rights of Gimme Guns as a legal person. Insofar as the Second

---

persons is circumstantially attenuated. *See, e.g.*, *W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 656 (1981) (noting "the Privileges and Immunities Clause is inapplicable to corporations"); *Braswell v. United States*, 487 U.S. 99, 109-10 (1988) (holding that neither a corporation nor its representatives have a Fifth Amendment privilege); *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (holding that holding corporations, but not individuals, liable for ad valorem taxes did not "transcend the requirements of equal protection").

Amendment concerns Gilroy, the Court is satisfied that he is an "ordinary, law-abiding, adult citizen" and is "part of 'the people' whom the Second Amendment protects." *See Bruen*, 142 S. Ct. at 2134.

### b. To Keep and Bear

ESSB 5078 declared that "[n]o person in this state may manufacture, import, distribute, sell, or offer for sale any large capacity magazine, except as authorized in this section." RCW 9.41.370(1). The section authorizes sales to the armed forces, the state, law enforcement, or out-of-state persons. RCW 9.41.370(2). Plaintiffs acknowledge that ESSB 5078 does not prohibit mere ownership or possession. ECF No. 20 at 17. Plaintiffs invoke the body of pre-*Bruen* case law tying the right to keep and bear arms to a right to procure them. ECF No. 20 at 17, 24-26; ECF No. 34 at 5-6, 13.

In one such pre-*Bruen* case, the Ninth Circuit explained that "the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)). More broadly, "the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense." *Id.* The Ninth Circuit previously presumed that "the right to possess a firearm includes the right to purchase one." *Jones v. Bonta*, 34 F.4th 704, 715-16 (9th Cir.

2022) *vacated and remanded*, 47 F.4th 1124 (9th Cir. 2022) (citation omitted). The Ninth Circuit has separately explained that "the Second Amendment does not independently protect a proprietor's right to sell firearms." *Teixeira*, 873 F.3d at 690.

It appears facially true and supported by pre-*Bruen* Ninth Circuit case law that, should the Second Amendment right protect citizens' ability to keep and bear large capacity magazines, the right extends to the ability to buy, import, and sell them in Washington. *See Luis v. United States*, 578 U.S. 5, 26 (2016) ("Constitutional rights thus implicitly protect those closely related acts necessary to their exercise.") (Thomas, J., concurring).  Indeed, the State Defendants and Alliance do not spend much of their briefs disputing the conclusion.  They advance arguments on this point only to dispute that Plaintiffs' showing of harm necessitates a preliminary injunction.  *See* ECF No. 23 at 23-24; ECF No. 32 at 26-28.

But given the lack of post-*Bruen* authority, and *Bruen*'s instruction that a court must interpret the text of the Second Amendment through the lens of history, the Court must insist upon a historical record demonstrating that the Second Amendment right to the manufacture, import, distribute, sell, or offer for sale of arms.  142 S. Ct. at 2130.  The current record lacks such evidence; therefore, the Court cannot reach a conclusion on the subject.  As the burden belongs to the

1    Plaintiffs, the Court must find that the insufficiency of evidence and authority

2    weighs against a preliminary injunction.  At a future trial on the merits, a sufficient

3    demonstration as to the intent of the Framers of the Second Amendment, rooted in

4    history, may warrant a contrary finding.  *Bruen*, 142 S. Ct. at 2130 n.6 (a court is

5    "entitled to decide a case based on the historical record compiled by the parties.").

6             c.  Arms

7          The weapon, or part of a weapon, at issue in this case is "an ammunition

8    feeding device with the capacity to accept more than 10 rounds of ammunition,"

9    including conversion kits or modifications made to enable capacity in excess of ten

10   rounds while excluding tubular ammunition feeding devices.  RCW 9.41.010(25).

11   The question presented is whether the Second Amendment right was meant to

12   encompass magazines that can carry more than ten rounds.

13         There is little authority post-*Bruen* as to which modern instruments

14   constitute "arms" for Second Amendment purposes.  It is well-established that

15   handguns, the target of regulation in *Heller*, 554 U.S. at 628, *McDonald*, 561 U.S.

16   at 750, and *Bruen*, 142 S. Ct. at 2122, are well within the ambit of the Second

17   Amendment right.  The Supreme Court heavily implied in *Caetano v.*

18   *Massachusetts* that stun guns are covered as well.  577 U.S. 411, 411-12 (2016)

19   (per curiam).  The only post-*Bruen* Ninth Circuit opinion concerning the definition

20   of "arms," so far, is *Teter*, 76 F.4th at 948-49.  In *Teter*, the Ninth Circuit found

ORDER - 14

1  that "bladed weapons facially constitute 'arms' within the meaning of the Second

2  Amendment." *Id.* at 949.

3       In a pre-*Bruen* opinion,[2] the Ninth Circuit found that the Northern District of

4  California "did not clearly err in finding, based on the record before it, that a

5  regulation restricting possession of certain types of magazines burdens conduct

6  falling within the scope of the Second Amendment." *Fyock v. City of Sunnyvale*,

7

8  [2] Before *Bruen*, the Ninth Circuit's test for Second Amendment challenges first

9  asked "whether the challenged law burdens conduct protected by the Second

10 Amendment," then sought to determine the appropriate level of scrutiny to review

11 the challenged regulation. *See Jones v. Bonta*, 34 F.4th 704, 714 (9th Cir. 2022),

12 *vacated and remanded*, 47 F.4th 1124 (9th Cir. 2022).  The *Bruen* Court referred to

13 this first step as "broadly consistent with *Heller*." 142 S. Ct. at 2127.  Although

14 "broadly consistent," the Ninth Circuit in *Alaniz* did not precisely retain the first

15 step of its pre-*Bruen* test and instead found that *Bruen* demanded "a textual

16 analysis" as part of the initial showing of whether the Second Amendment

17 concerns the given conduct.  69 F.4th at 1128.  The Court, here, cites to pre-*Bruen*

18 cases as informative of whether the Ninth Circuit may consider certain pieces of

19 machinery as "arms" for Second Amendment purposes, but it is unclear whether

20 the Ninth Circuit will reach the same conclusions post-*Bruen*.

779 F.3d 991, 998 (9th Cir. 2015).  The magazines at issue in *Fyock* were also

those capable of accepting more than ten rounds.  *Id.* at 994-95.  The Ninth Circuit

again considered a ban of magazines capable of accepting more than ten rounds in

a November 2021 opinion, which has since been vacated by the Supreme Court in

light of *Bruen* and remanded to the Southern District of California.  *See Duncan v.*

*Bonta*, 19 F.4th 1087, 1098 (9th Cir. 2021) (en banc) *vacated and remanded,* 49

F.4th 1228 (9th Cir. 2022).  In *Duncan*, the Ninth Circuit "assum[ed], without

deciding, that [the large capacity magazine ban] implicates the Second

Amendment."  19 F.4th at 1103.[3]  The Ninth Circuit had elsewhere found that

"without bullets, the right to bear arms would be meaningless.  A regulation

eliminating a person's ability to obtain or use ammunition could thereby make it

impossible to use firearms for their core purpose."  *Jackson v. City & County of*

*San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), *abrogated by Alaniz*, 69 F.4th at

1127-28.

    With no higher court having decided that large capacity magazines are or are

not "arms," the Court must discern an analytical framework to answer the question.

---

[3] The Southern District of California, on remand, granted an injunction against

California's large capacity magazine ban.  ECF No. 149, *Duncan v. Bonta*, No. 17-

CV-01017-BEN (S.D. Cal. Sept. 22, 2023).

To begin, it is clear that the heart of the analysis is whether the instrument is a "weapon[] of offence, or armour of defence," or "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (citing 18th-century dictionaries).  The Second Amendment "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."  *Bruen*, 142 S. Ct. at 2132 (quoting *Heller*, 554 U.S. at 582).

The State Defendants and the Alliance urge the Court to find that large capacity magazines fall outside of the Second Amendment's plain text because they are "military-style weapons," ECF No. 23 at 9, and "dangerous and unusual," ECF No. 32 at 18.  After submission of the parties' briefs, the Ninth Circuit, in *Teter*, squarely rejected that argument.  *See* 76 F.4th at 949-50.  Interpreting *Heller*, the court explained that "it is irrelevant whether the particular type of firearm at issue has military value[.]"  *Id.* at 949 (citing 554 U.S. at 581).  Nor does a weapon's purported association with criminality render it outside of the definition of "arms."  *Id.*  The Ninth Circuit found that *Heller* "did not say that dangerous and unusual weapons are not arms."  *Id.* at 950.  Rather, "the historical tradition of prohibiting the carrying of dangerous and unusual weapons" should be considered during *Bruen* step two, with the burden on the government to demonstrate that the target of regulation is dangerous or unusual.  *Id.*

ORDER - 17

1    The State Defendants and the Alliance also argue that large capacity

2    magazines are not commonly used for self-defense and therefore are not covered

3    by the Second Amendment.  ECF No. 23 at 3, 14; ECF No 32 at 16.  Case law

4    suggests that commonality and self-defense matter, to some degree, for *Bruen* step

5    one.  The *Bruen* Court explained that "the Second Amendment's definition of

6    'arms' is fixed according to its historical understanding," but "that general

7    definition covers modern instruments that facilitate armed self-defense."  142 S.

8    Ct. at 2132 (citing *Caetano*, 577 U.S. at 411-12).  Further, the *Bruen* Court,

9    applying the standard it created for the first time, noted in step one that that

10   handguns are "weapons 'in common use' today for self-defense."  *Id.* at 2134.  The

11   *Alaniz* court quoted that language when articulating *Bruen* step one.  69 F.4th at

12   1128.  The *Teter* court concluded that bladed weapons were "arms" after

13   consulting a 1774 dictionary definition, but also found no genuine dispute of

14   material fact that butterfly knives are commonly owned for lawful purposes

15   including self-defense, before moving on to *Bruen* step two.[4]  76 F.4th at 949-50.

16

---

17   [4] Although the *Teter* court appeared to place the burden of this common-use-for-

18   self-defense inquiry onto the government, it is perhaps instructive that the Ninth

19   Circuit addressed the question as part of *Bruen* step one, before moving on to

20   *Bruen* step two.  76 F.4th at 950.

ORDER - 18

Justice Alito's concurrence in *Caetano*, joined by *Bruen*'s eventual author Justice Thomas, explained that "the pertinent Second Amendment inquiry is whether [the weapon is] commonly possessed by law-abiding citizens for lawful purposes *today*." 577 U.S. at 420 (emphasis in original). Justice Alito explained that the stun gun was within the Second Amendment right because hundreds of thousands of them have been sold to private citizens, and they "are widely owned and accepted as a legitimate means of self-defense across the country." *Id.*

*Heller* further indicates that the Second Amendment's reference to "arms" is not entirely divorced from common use or self-defense. The *Heller* Court explained that an earlier decision, *United States v. Miller*, stood for the proposition that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." 554 U.S. at 625 (citing 307 U.S. 174, 179 (1939)). That proposition was "in 'accord[ance] with the historical understanding of the scope of the right[.]'" *Id.* The Court explained that "the sorts of weapons protected were those 'in common use at the time.'" 554 U.S. at 627 (quoting *Miller*, 307 U.S. at 179). *Heller* explains that handguns fall within the Second Amendment's protection because they "are the most popular weapon chosen by Americans for self-defense in the home . . . ." *Id.* at 629. Two years later in *McDonald*, the Court reaffirmed

that "individual self-defense is 'the *central component*' of the Second Amendment right."  561 U.S. at 767 (emphasis in original).

These difficult and unsettled questions of law aside, Plaintiffs fail to demonstrate their likelihood of success on the merits for a far simpler reason.  A magazine is a part of a firearm, rather than a "weapon[] of offence, or armour of defence," or a "thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another."  *See Heller*, 554 U.S. at 581.  On its own, it cannot be used to attack or defend; a magazine with increased capacity simply reduces the frequency of reloads required when discharging a firearm.  *See* ECF No. 35 at 7-8 ¶¶ 30-38; ECF No. 26 at 3-4 ¶¶ 7-13; ECF No. 27 at 12 ¶¶ 13-14; ECF No. 33 at 4 ¶ 8.

Other district courts that have confronted this question are split.  *Compare Or. Firearms Fed'n v. Kotek*, No. 2:22-CV-1085-IM, 2023 WL 4541027, at *25-26 (D. Or. July 14, 2023) (concluding that large capacity magazines "are not 'bearable arms' as that term is used in Second Amendment jurisprudence") *and Ocean State Tactical, LLC v. Rhode Island*, No. 22-CV-246 JJM-PAS, 2022 WL 17721175, at *13 (D.R.I. Dec. 14, 2022) (holding that plaintiffs "failed to meet their burden of establishing that [large capacity magazines] are "Arms" within the textual meaning of the Second Amendment") *with* ECF No. 149, *Duncan v. Bonta*, No. 17-CV- 1017-BEN, at *20 (S.D. Cal. Sept. 22, 2023) (concluding that "a

magazine falls within the meaning of 'arms'"), *Hanson v. District of Columbia*, No. 22-2256 (RC), 2023 WL 3019777, at *6-7 (D.D.C. Apr. 20, 2023) ("[large capacity magazines] are 'arms' within the meaning of the Second Amendment[,]" and collecting pre-*Bruen* cases reaching the same conclusion), *and Barnett v. Raoul*, No. 3:23-CV-209-SPM, 2023 WL 3160285, at *8 (S.D. Ill. Apr. 2, 2023) ("magazines are 'arms' as used in the plain text of the Second Amendment.").

Those decisions are not binding, and as the Supreme Court has instructed, this Court is "entitled to decide a case based on the historical record compiled by the parties." *See Bruen*, 142 S. Ct. at 2130 n.6. "The principle of party presentation . . . requires the court to rely on the parties to frame the issues for decision." *Baird*, 2023 WL 5763345, at *3 (quotation and citation omitted). It remains Plaintiffs' burden to establish that the weapon at issue falls within the Second Amendment's purview. *See Baird*, 2023 WL 5763345, at *5. Plaintiffs have offered insufficient evidence suggesting that the text of the Second Amendment was meant to include large capacity magazines.

Plaintiffs' evidentiary submissions to date are (1) Brumback's Declaration, ECF No. 1-8; (2) Gilroy's Affidavit, ECF No. 1-9; and (3) the affidavit of William McKnight, an expert on Use of Force, ECF No. 35.

Brumback's Declaration offers little more than conclusory assertions that large capacity magazines fall within the right to bear arms. *See, e.g.*, ECF No. 1-8

at 4 ¶ 11, 5 ¶¶ 14-15, 10-12 ¶¶ 33-37.  Brumback offers that he is "familiar with

the types and general prevalence of firearms and their accessories in common use

within the United States and with the US Population in general" due to his personal

experience living in various states as a civilian and in the military.  ECF No. 1-8 at

23 ¶ 62.  As he explains:

> the United States has over 400 million firearms, with about
> 20 million of those being AR-15's.  At least 150 million
> pistol and rifle ammunition magazines exist that can hold
> over 10 rounds of ammunition.  That data confirms that
> semiauto[matic] rifles like the AR-15 and magazines over
> 10 rounds are in "common use" in the US, including
> Washington state.

ECF No. 1-8 at 26-27 ¶ 72 (footnotes omitted).  His source for these datapoints is

an internet article from a website called "www.guns.com."  ECF No. 1-8 at 26 ¶ 72

n.5.

McKnight's Affidavit explains that he is the proprietor of Gimme Guns, a

firearms store, and that he has often sold large capacity magazines and has a right

to do so.  *See* ECF No. 1-9.

McKnight's Affidavit explains the mechanics of firearms, physiological

reactions in self-defense scenarios, and opines that a limit on magazine capacity

limits an individual's ability to defend themselves.  *See* ECF No. 35.  While

McKnight avers that large capacity magazines are used to enhance the self-defense

capacity of firearms, he does not assist the Court in determining whether

ORDER - 22

magazines are "arms" according to the Framers of the Second and Fourteenth Amendments.

Plaintiffs assert in their brief that "[t]hese magazines have been legal since our nation and state's founding and have been in common use for a century or more." ECF No. 20 at 4.  In support, Plaintiffs point to a number of internet articles, including a Wikipedia page, which purport to offer facts on the history of firearm magazines.  ECF No. 20 at 4-5 nn.4-12.

The Court "is not strictly bound by all rules of evidence" when considering a preliminary injunction. *Ticketmaster LLC v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1103 n.2 (C.D. Cal. 2007).  Rather, evidentiary standards are relaxed to accommodate "[t]he urgency of obtaining a preliminary injunction" which "necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Id.* (citations omitted); *see also Republic of Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept this hearsay for purposes of deciding whether to issue the preliminary injunction.").  However, the Court declines to consider the internet articles as substantive evidence.  The untested hearsay articles

purport to offer historical facts and analysis without any basis for the Court to vet the accuracy of the assertions made within.

The injunctive relief that Plaintiffs seek is significant. They ask "for the entry of an Order enjoining Defendants from enforcing ESSB 5078 . . . and declaring the same to be unconstitutional . . . ." ECF No. 20 at 11. ESSB 5078 is the product of the democratically elected Washington legislature. If the Court is to declare ESSB 5078 unconstitutional, it will not do so lightly. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citation omitted). The Court will not reduce the evidentiary rigor required for an injunction such that Plaintiffs may obtain one here by citing to articles found on the internet, without explaining their academic and scientific worth, or historic accuracy.

Further, Plaintiffs may not simply rely upon pre-*Bruen* case law to prove their case. *See* ECF No. 34 at 10-11 (citing cases from 2011 to 2017). While such authority may be of some persuasion, *Bruen* explicitly rejected the test applied by the circuit courts following *Heller*. *See Alaniz*, 69 F.4th at 1128. The gravity of the relief requested, and the uncertainty of prior authority in *Bruen*'s wake, demands a renewed analysis that rests upon a reliable evidentiary showing. The Court must insist that there be a historical record in order to make a determination on the meaning of the word "arms" as used in the Second Amendment.

ORDER - 24

Specifically, whether "arms" includes magazines, or large capacity magazines. *See* 142 S. Ct. at 2130 n.6.

At present, the evidence in the record is insufficient to establish that Plaintiffs are likely to prove that large capacity magazines fall within the Second Amendment right. The instant decision is primarily the result of Plaintiffs' insufficient evidentiary showing, and should not be read to preclude a contrary finding at a trial on the merits.[5] It is pertinent to note, however, that no party, at this stage, has demonstrated a historical record adequately supporting their respective positions on the question of whether the Second Amendment covers large capacity magazines.[6]

---

[5] Similarly, the Court requires reliable evidence to find that large capacity magazines are "in common use today for self-defense." *Alaniz*, 69 F.4th at 1128. Plaintiffs attempt to demonstrate the commonality of large capacity magazines for self-defense with tenuous evidence and citations to pre-*Bruen* authority. ECF No. 20 at 4; ECF No. 34 at 10-11. As discussed above, it remains unclear whether this finding is a factor in the *Bruen* test, at step one or two. However, the current state of authority suggests that it is at least worthwhile to consider.

[6] The State Defendants, for their part, have attempted to submit a historical record. *See* ECF Nos. 28, 29, 30. However, their history experts have unanimously

ORDER - 25

Having found that Plaintiffs have not met their burden, the Court declines to continue to *Bruen* step two, "at which the 'government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'"  *Alaniz*, 69 F.4th at 1128 (quoting *Bruen*, 142 S. Ct. at 2130).

---

concluded that more time is needed to render expert reports.  ECF No. 28 at 3 ¶ 5, 4 ¶ 8 (explaining that "[i]t will take some time for me to translate the information from the photos into usable data for this case" and that "[m]y work is not done"); ECF No. 29 at 15 ¶ 21 ("The account above summarizes my initial opinion in this case.  However, these are areas that I seek to explore in greater detail."); ECF No. 30 at 10 ¶ 12 (explaining that "it will take six to nine months to delve deeply enough into the areas outlined above to formulate an expert report").  The proposed reports would apparently address the question of whether there is a historical analogue for ESSB 5078.  *See, e.g.*, ECF No. 28 at 5 ¶ 9.  The Court would also require historical support to find that the Second Amendment did not refer to large capacity magazines when it codified a pre-existing right to keep and bear arms, should the State Defendants and the Alliance advance the same argument at a trial on the merits.

1    *2. The Washington Constitution*

2    Article I, section 24 of the Washington State Constitution provides as

3    follows:

> The right of the individual citizen to bear arms in defense
> of himself, or the state, shall not be impaired, but nothing
> in this section shall be construed as authorizing individuals
> or corporations to organize, maintain or employ an armed
> body of men.

7    Although repeatedly citing to it, Plaintiffs' motion largely treats the Washington

8    Constitution as an afterthought to its federal counterpart. *See, e.g.*, ECF No. 20 at

9    6, 23.  Plaintiffs argue, without explanation, that the Washington Constitution is

10    modified by the Supreme Court's Second Amendment jurisprudence.  ECF No. 20

11    at 26 ("With the standard set forth in *Bruen*, the Ninth Circuit's analysis will be

12    modified to review Second Amendment cases . . . this will be true, too, for the

13    Washington Supreme Court in analyzing the question under the Washington

14    Constitution . . . .").  Plaintiffs' argument runs contrary to unambiguous

15    Washington Supreme Court authority.  *See State v. Jorgenson*, 312 P.3d 960, 963

16    (Wash. 2013) (en banc) ("[T]he state and federal rights to bear arms have different

17    contours and mandate separate interpretation.").  Plaintiffs argue, without citing to

18    a single decision of a Washington court, that "inherent in the Washington

19    constitution is the right to defend oneself" and that this statement "clearly grant[s]

20

ORDER - 27

individual rights to possess, purchase, and sell high capacity magazines without government interference."  ECF No. 20 at 23.

Washington courts "presume that statutes are constitutional and place the burden to show unconstitutionality on the challenger."  *City of Seattle v. Evans*, 366 P.3d 906, 909 (Wash. 2015) (quotations and alterations omitted).  The Washington Supreme Court has "long held that the firearm rights guaranteed by the Washington Constitution are subject to reasonable regulation pursuant to the State's police power."  *Jorgenson*, 312 P.3d at 964.

In fact, the Washington Supreme Court has expressly distinguished the Washington Constitution from *Heller*'s analysis:  "[W]hile *Heller* rejected the use of a "freestanding 'interest-balancing' approach" to determine the scope of Second Amendment rights, we read the Washington Constitution's provisions independently of the Second Amendment . . . ."  312 P.3d at 964 (citations omitted).  In contrast to the *Bruen* test, a Washington court considering a challenge under the Washington constitution must first consider whether a regulation is "reasonably necessary to protect public safety or welfare, and substantially related to legitimate ends sought," then "balance the public benefit from the regulation against the degree to which it frustrates the purpose of the constitutional provision."  *Id.* (citations omitted).

Given the lack of briefing on article I, section 24, the Court finds it would be inappropriate to issue a preliminary injunction at this stage. It is Plaintiffs' burden to establish that ESSB 5078 violates the Washington Constitution. *See Evans*, 366 P.3d at 909. Plaintiffs failed to engage with the relevant standard for challenges under to article I, section 24. To grant Plaintiffs' requested relief at this stage would amount to a *sua sponte* injunction on a scant record. The Court declines to do so.

**B. The Remaining Preliminary Injunction Factors**

As explained above, the movant's likelihood of success on the merits is "a threshold inquiry" and "the most important factor," such that "a court need not consider the other factors if a movant fails to" show it. *Baird*, 2023 WL 5763345, at *2. But, the Ninth Circuit applies a "sliding scale" approach to these factors, "such 'that a stronger showing of one element may offset a weaker showing of another.'" *Fellowship of Christian Athletes*, 2023 WL 5946036, at *13. If a plaintiff demonstrates that the "balance of equities tips sharply in [his or her] favor, the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id.* (quoting *All. for the Wild Rockies*, 632 F.3d at 1135).

Although Plaintiffs have not demonstrated that they are likely to succeed on the merits, their claim plainly raises "serious questions" as to ESSB 5078's

ORDER - 29

constitutionality, particularly in light of the uncertainty of Second Amendment

jurisprudence following *Bruen*. *See id.* Still, the balance of the equities does not

favor a preliminary injunction.

First, to consider Plaintiffs' harm, "even a brief deprivation of a

constitutional right causes irreparable injury." *Baird*, 2023 WL 5763345, at *8;

*see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The Second

Amendment right is not "a second-class right." *Bruen*, 142 S. Ct. at 2156 (citing

*McDonald*, 561 U.S. at 780) (internal quotation marks omitted). However,

Plaintiffs' Second Amendment right is not so clearly infringed during the pendency

of this litigation to warrant the "extraordinary relief" of a preliminary injunction.

*See Winter*, 555 U.S. at 22. As the State Defendants and the Alliance highlight,

ESSB 5078 does not prohibit possession or use of large capacity magazines

already owned. ECF No. 23 at 23; ECF No. 32 at 26. Gilroy may be prohibited

from selling his existing inventory of large capacity magazines, but "monetary

injury is not normally considered irreparable." *Los Angeles Mem'l Coliseum*

*Comm'n. v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

On the other side of the balance, "[a]ny time a State is enjoined by a court

from effectuating statutes enacted by representatives of its people, it suffers a form

of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (quotations

omitted) (Roberts, C.J., in chambers). ESSB 5078 was passed in response to gun

violence in Washington.  *See* 2022 Wash. Sess. Laws, ch. 104, § 1.  The Washington Legislature found that large capacity magazines have been used in each of the deadliest mass shooting events since 2009, increase fatalities and injuries in such events, and are frequently employed in the commission of serious violent crimes.  *Id.*  The Washington Legislature explained that ESSB 5078 was aimed at reducing gun-related deaths and injuries.  *Id.*  Indeed, the State Defendants and the Alliance offer evidence indicating that large capacity magazines are often used to further crime and violence.  ECF No. 23 at 12-14; ECF No. 32 at 18-19.

Although the import of this evidence to constitutional analysis is in doubt under controlling authority, the Court must consider "the public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24.  The evidence offered by the State Defendants and the Alliance supports the denial of an injunction at this stage of litigation.

### CONCLUSION

For the reasons stated herein, Plaintiffs have failed to demonstrate a likelihood of success on the merits, and a balance of the equities disfavors a preliminary injunction while this litigation is pending.  Plaintiffs' Motion for Injunctive and Declaratory Relief is denied.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Plaintiffs' Motion for Injunctive and Declaratory Relief, **ECF No. 20,** is **DENIED**.

2.    The parties shall, **on or before October 13 2023,** file a joint status report including a proposed schedule for the remainder of this case and, if in dispute, the parties' respective positions on a proposed schedule.  The parties shall confer with each other and the Courtroom Deputy, at Cora_Vargas@waed.uscourts.gov, to find a mutually agreeable date for a scheduling conference.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order and provide copies to the parties.

DATED September 25, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 32